Admin and Translations.

208.    In later meetings between Ms. Loures and Ms. Mazzeo, Ms. Mazzeo attempted to justify

Mr. O'Grady's position by saying that the restructuring in October 2001 was really not

complete when Ms. Loures left on maternity leave, a comment which made little sense in

that Ms. Mazzeo had gone to the trouble of announcing the restructuring to hundreds of

people using a Power Point presentation.

209.    While Ms. Loures did not agree with the subsequent restructuring which adversely

affected her position, she continued to work on plans for the groups for which she

maintained responsibility.

210.    Thereafter, in or around June 2002, Ms. Loures' supervisory responsibility was further

diminished when the TREQ group was removed from her control.  At this point, Ms.

Loures had been back from her maternity leave for only four (4) months.

211.    On or about October 17, 2002, Ms. Mazzeo requested a meeting with Ms. Loures.  At this

meeting, Ms. Mazzeo stated that she was transferring the data license group portion of the

Data Licensing/Web Imaging Team to a "core product group" since it allegedly made

more structural sense.

212.    This resulted in eleven (11) fewer employees reporting to Ms. Loures.

213.    During this meeting, Ms. Loures disagreed with Ms. Mazzeo's decision, and stated that

she did not believe that any additional benefit would be gained from this switch, but did

not argue the point as Ms. Mazzeo had clearly been given absolute authority to make any

management changes she deemed necessary.

214.    On this occasion, Ms. Mazzeo again told Ms. Loures that she would be in line for other

33

opportunities down the road.

215.    Ms. Loures suffered various physical manifestations resulting from the stress associated

with her repeated unwarranted demotions.  Some of these physical manifestations were

very serious in nature.

216.    On or about February 19, 2003, one (1) year to the day from the date of Ms. Loures'

return from maternity leave, Mr. O'Grady and Ms. Loures' departments were officially

divided as follows:

    Mr. O'Grady's  Dept: Security Issuance:

        Groups:        Money Markets/Loans
                       Ratings/Corp. Actions
                       Structured Finance
                       New Issuance
                       Global Mkt. Debt

        Employees:    110

    Ms. Loures' Dept:    Data Resources:

        Groups:        Translations
                       Data License/Web/Imaging
                       TREQ Administration

        Employees:    60

217.    Accordingly, prior to her leaving on maternity leave, Ms. Loures was responsible for

supervising approximately four hundred (400) employees.  However, within one (1) year

of her return from maternity leave, this number had been reduced to sixty (60) for no

legitimate business reason.

218.    From the first day that Ms. Loures had returned from her maternity leave, she had been

forced to operate in a hostile work environment as she futilely attempted to make up

whatever ground the company perceived her to have lost during her maternity leave.

## Ms. Loures Was Discriminated Against Following
## Her Second Pregnancy and Maternity Leave

219.   Ms. Loures' second maternity leave occurred from October 20, 2003 through April 7, 2004.

220.   At the time Ms. Loures went on this maternity leave, through hard work she had somewhat resurrected her career at Bloomberg, and in March 2003 she was asked to take over additional management responsibility for the Quality Assurance Department, with a total of 112 employees reporting to her.  At the time, Ms. Loures was four (4) weeks pregnant with her second child, but had not yet announced this fact to the company.

221.   Ms. Loures was hospitalized for pre-term labor in September 2003.  Upon information and belief, the stress associated with working in such a hostile work environment was a contributing factor in her deteriorating health and pregnancy complications.

222.   During Ms. Loures' second maternity leave, Mark Zoldi served as Department Manager for Ms. Loures' department.

223.   However, when Ms. Loures returned from her leave on April 9, 2004, her responsibilities were immediately reduced, with Ms. Loures' department being divided between Ms. Loures and Mr. Zoldi as follows:

    Mr. Zoldi's Dept:

        Groups:      New Issues Quality Assurance; Dynamic Data Quality Assurance, Mutual Funds Quality Assurance, Creative Strategy

        Employees:  93

35

Ms. Loures' Dept:

    Groups:    Data Resources; Translations

    Employees:   20

224.   When dividing up the department, Ms. Mazzeo told Ms. Loures "Mark [Zoldi] just really got going with QA so I'm not going to take him out" and "you have already made your mark on QA and now I want to see where he can take it".

225.   Ms. Loures objected, saying that she had just had the group transferred over prior to her leave, and had not had time to implement any changes.

226.   However, Ms. Mazzeo citing a "restructuring" was unreceptive to any further conversation regarding this issue, other than to tell Ms. Loures not to "worry" about losing responsibility for Quality Assurance.

227.   Again, Ms. Mazzeo attempted to rationalize the restructuring by stating that Ms. Loures hadn't lost anything, which in actuality could not have been further from the truth.

228.   Simply put, Ms. Loures was not returned to a like position as mandated by Bloomberg's policy.

229.   On or about September 20, 2005, Ms. Loures attended the 9:30 AM weekly managers meeting.  At this meeting, Ms. Mazzeo informed the managers present that because of the departure of Kevin Iraca, another manager, she needed to redistribute some responsibilities as she had been instructed by Thomas Secunda, a principal of Bloomberg, that department managers should have equal responsibilities and direct reports.

230.   Thereafter, the group of managers, including Ms. Loures, spent the entire day reviewing each group and deciding how to split the responsibilities such that each manager had

responsibility for an equal number of employees.

231.    At the conclusion of this meeting, it was decided that Ms. Loures was to assume responsibility for Profiles and Bloomberg Law, for which she would have over one hundred (100) direct reports.

232.    Thereafter, one (1) week later, on September 27, 2005, Ms. Loures attended the weekly managers meeting and immediately noticed strange looks from the other department managers when she entered the room.

233.    Ms. Mazzeo then humiliated Ms. Loures by informing her in front of her colleagues that she had been removed from the plan, a fact that appeared to already have been known by everyone else present in the room.

234.    Thereafter, on or about September 27, 2005, Ms. Mazzeo told Ms. Loures that she had rescinded her offer to expand Ms. Loures' management responsibilities due to downsizing at the Princeton site and that the Bloomberg Law and Profiles groups would easily be handled by the current manager, Mr. Whitman.

235.    However, upon information and belief, within a year, Mr. Whitman was relieved of his duties as escalation manager of NY Global Data because he allegedly had "too many responsibilities" and needed to focus on some core projects.  The group was then transferred to Mr. Warms.

## Ms. Loures' January 2006 Demotion

236.    From November 20-23, 2005, Ms. Loures attended a "Global Leadership Forum" in New York City, which was a three (3) day intensive retreat for Bloomberg managers.

237.    At the time of the retreat, Ms. Loures was employed as a Translations Coordinator, with

supervisory responsibility for twenty-three (23) employees, a position she had held since she had returned from her second maternity leave in April 2004.

238.    As part of the process, on the first day of the retreat, Ms. Loures received a "360 Personal Feedback Report" (the "Feedback Report").

239.    This Feedback Report was established as a result of review forms distributed to nine (9) of Ms. Loures' colleagues at Bloomberg, including her direct supervisor, Ms. Mazzeo, Bloomberg's Global Data Manager.

240.    Ms. Loures was stunned when she read the Feedback Report, as her ratings from Ms. Mazzeo were extremely negative in key areas and were significantly lower than those she had received from her peers and subordinates in these key areas.

241.    Although the participants had been instructed to view all criticism as constructive, upon reviewing the Feedback Report, Ms. Loures immediately became concerned that she was being set-up for a demotion, because in the five (5) years that Ms. Mazzeo had been her direct supervisor, she had never received any negative feedback or evaluations from her.

242.    Notably, while Ms. Mazzeo had been Ms. Loures' supervisor since in or around April 2001, and during this five (5) year period, Ms. Mazzeo had never provided Ms. Loures with any written goals or with any written feedback.

243.    Indeed, although Ms. Loures was supposed to receive an annual performance review, she never received one from Ms. Mazzeo, meaning that her last formal review occurred in September 2000 when she was reviewed by her prior supervisor, Stuart Bell.

244.    Ms. Loures viewed Ms. Mazzeo's comments in the Feedback Report as purposefully destructive, as she was aware that the comments would be viewed by Bloomberg's senior

managers.

245.  Thereafter, on December 9, 2005, Ms. Loures met with Ms. Mazzeo at Ms. Mazzeo's request.  This was Ms. Loures' first meeting with Ms. Mazzeo since the leadership retreat.

246.  Ms. Loures brought to the meeting the "Leadership Development Plan" she had created for herself based upon the Feedback Report.

247.  However, instead of discussing the contents of Ms. Loures' Development Plan, Ms. Mazzeo quickly stated she did not feel that Ms. Loures was a competent manager, and that this was evidenced by the feedback contained in the Feedback Report.

248.  Ms. Loures calmly disagreed, and asked for specific examples as to why she was allegedly not a competent manager, which Ms. Mazzeo was unable to provide.

249.  Upon information and belief, Ms. Mazzeo was unable to provide any specific examples to Ms. Loures because she had never made such observations previously, and was relying solely on the feedback, some of which she directly authored, as an excuse for pushing Ms. Loures out of her position as Translations Coordinator and out of management entirely.

250.  Ms. Mazzeo then became visibly agitated and told Ms. Loures that the Translations Department would be moving to Hank Kelbaugh, another male manager, and that Ms. Loures would need to find a new job.

251.  Ms. Mazzeo further informed Ms. Loures that she wasn't any good at management, and could not lead people, as evidenced by the Feedback Report.

252.  Accordingly, since becoming pregnant in 2001, Ms. Loures had gone from managing 1,000 Bloomberg employees as "Interim Global Manager" and directly reporting to Michael Bloomberg, to being incapable of managing anyone according to Ms. Mazzeo.

39

253.    Ms. Mazzeo then informed Ms. Loures that she wanted her to work on Bloomberg's

Process Analysis Team, which represented a significant demotion for Ms. Loures.

254.    Ms. Mazzeo tried to convince Ms. Loures that a move to the Process Analysis Team

would not been frowned upon within Bloomberg, and told Ms. Loures that there were

many paths that an employee at Bloomberg could take to be successful other than

management.

255.    When Ms. Loures calmly tried to reopen the topic and state her disagreement with Ms.

Mazzeo's assessment of her skills, she was abruptly rebuffed by Ms. Mazzeo.

256.    At the conclusion of the brief meeting, Ms. Loures was stripped of her managerial

responsibilities, and given no other choice but to accept the demotion to data analyst (the

same position in which Ms. Loures started seventeen (17) years ago, and a position three

(3) levels below Translations Coordinator), in order to keep her job.

## Juxtaposition of Ms. Loures To Similarly Situated Male Colleagues

257.    The discrimination which Ms. Loures has faced at Bloomberg is perhaps best exemplified

by the fact that seventeen (17) years after Ms. Loures began working for Bloomberg, she

is in virtually the same position as she started, while her similarly situated male peers,

many of whom she at one time supervised, are now in senior management level positions.

258.    In this regard, while the aforementioned "restructurings" served to eventually strip Ms.

Loures of all of her management responsibility, male managers continuously reaped the

benefits of these restructurings.  The following are some examples of how, commencing

with Ms. Loures' return from her first pregnancy leave in February 2002, Ms. Loures'

responsibilities were divided out to other male managers:

| | |
|---|---|
| Neil O'Grady: | Mr. O'Grady reported to Ms. Loures in 2001 as a Product Manager. He is now a Department Manager of the portion of Ms. Loures' department that was "restructured" in 2002. |
| Mark Zoldi: | Mr. Zoldi assumed responsibilities for Ms. Loures while she was on her second maternity leave. He retained control of Quality Assurance due to a "restructuring" after Ms. Loures returned from her second leave in April 2004. Mr. Zoldi was later given increased responsibilities within Security Issuance under Mr. O'Grady and Quality Assurance was transferred to Mr. Warms. |
| Pete Warms: | Mr. Warms assumed the responsibilities for three (3) of Ms. Loures' previous groups: Quality Assurance, Data License and TREQ Admin. All of the groups were transferred at different times, after Ms. Loures became pregnant. |
| Hank Kelbaugh: | Mr. Kelbaugh assumed responsibility for the Translations team in January 2006 due to a "synergistic restructuring". |

259.   It is also worth noting that Mr. Whitman, another male department manager, reported to Ms. Loures in 1998 as a data analyst, in 1999 as a Product Manager and again in 2001 as a Product Manager. Mr. Whitman is now Ms. Loures' supervisor three (3) levels above her in the organizational structure, as Ms. Loures is a data analyst, the same title she held seventeen (17) years ago when she was hired.

260.   As a data analyst, Ms. Loures essentially now spends her days at Bloomberg verifying information and checking data files, work that could be performed by an entry level

41

employee.

## Decreases in Compensation and Retaliation

261.   In addition to the Ms. Loures' repeated demotions, she has also suffered repeated
decreases in her compensation, most notably to amount of Bloomberg Certificates she has
been awarded.  In this regard, Ms. Loures was awarded 250 Bloomberg Certificates in
2003, 165 in 2004, 135 in 2005 and 100 in 2006, following her most recent demotion.
This represents a year over year decrease of 60% in the amount of Bloomberg Certificates
awarded to Ms. Loures since 2003.

262.   Upon information and belief, following the filing of Ms. Loures' Charge of Discrimination
with the EEOC in October 2006, Bloomberg has also retaliated against Ms. Loures in
connection with the performance of her duties at Bloomberg.

263.   Specifically, as part of Ms. Loures' responsibilities as a Data Analyst, whenever there are
problems with the transmission or receipt of vendor files, Ms. Loures is required to fill out
a "ticket" requesting programming investigation and/or support to resolve the issue.

264.   A prompt response to these types of problems whenever they arise is critical to Ms. Loures
being able to adequately perform her job.

265.   However, upon information and belief, since Ms. Loures filed her Charge in October 2006,
Bloomberg has intentionally failed to bring the issues raised in Ms. Loures' tickets to
resolution by either ignoring her tickets, refusing to act upon her tickets by withdrawing
them, only partially completing the work required to be performed, or ostensibly fixing the
problem completely, only to have the same problem resurrect itself shortly thereafter.

266.   In so doing, Bloomberg has unlawfully retaliated against Ms. Loures, and has attempted to

create pretextual performance problems for Ms. Loures at Bloomberg.

**Ms. Loures' Losses Resulting from Bloomberg's Discrimination and Retaliation**

267.  As a result of Bloomberg's discrimination and retaliation, Ms. Loures has suffered

substantial loss of income and employment-related benefits.

268.  During the foregoing process of demotions and other negative actions by Bloomberg

intended to force Ms. Loures out of the Company, Ms. Loures has suffered the worst

possible forms of humiliation in Bloomberg's working environment.  In the

October/November 1999 issue of the Bloomberg publication, "Bloomberg Pulse," Ms.

Loures was described as one of Bloomberg's rising stars.  However, after her first

pregnancy, Ms. Loures was subjected to a wide variety of insults to her business reputation

and her business career, such as being made to look the "fool" in front of her peers by the

disparate treatment of Bloomberg management like Beth Mazzeo.  The emotional distress

that Ms. Loures suffered resulted in a wide variety of physical ailments for which Ms.

Loures was forced to seek medical care.

269.  As a result of Bloomberg's discrimination and retaliation, Ms. Loures has suffered

substantial harm to her reputation in the financial community, adverse effects on her

career, diminished earning capacity, and substantial harm and emotional distress.

**AS AND FOR A FIRST CAUSE OF ACTION FOR GENDER DISCRIMINATION
ON BEHALF OF JILL PATRICOT PURSUANT TO TITLE VII AND TITLE I**

270.  Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs

"1" through "269" with the same force and effect as if set forth at length herein.

271.  Based upon the foregoing, Bloomberg has discriminated against Ms. Patricot based upon her

gender in violation of Title VII and Title I and has damaged her thereby.

272.   The discriminatory conduct of Bloomberg substantially interfered with Ms. Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

273.   As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Patricot has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

274.   As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

275.   As a result of Bloomberg's violation of Title VII, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotion distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

276.   Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of Title VII, Ms. Patricot is entitled to punitive damages in the sum of Three Hundred Thousand Dollars ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

277.   Ms. Patricot is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION ON BEHALF OF JILL PATRICOT PURSUANT TO TITLE VII AND TITLE I

278.   Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "277" with the same force and effect as if set forth at length herein.

279.   Based upon the foregoing, Bloomberg has retaliated against Ms. Patricot in violation of Title VII and Title I and has damaged her thereby.

280.   The retaliatory conduct of Bloomberg substantially interfered with Ms. Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

281.   As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

282.   As a direct and proximate result of the unlawful employment of Bloomberg in violation of Title VII, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

283.   Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of Title VII, Ms. Patricot is entitled to punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

284.   Ms. Patricot is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

## AS AND FOR A THIRD CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF JILL PATRICOT PURSUANT TO STATE HRL

285.   Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "284" with the same force and effect as if set forth at length herein.

286.   Based upon the foregoing, Bloomberg has discriminated against Ms. Patricot, based upon her gender in violation of the State HRL and has damaged her thereby.

287.   The discriminatory conduct of Bloomberg substantially interfered with Ms. Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

288.   As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Patricot has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

289.   As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

290.   As a result of Bloomberg's violation of the State HRL, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Bloomberg.

291.   Ms. Patricot is further entitled to pre-judgment interest on all monies awarded to her.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF JILL PATRICOT PURSUANT TO STATE HRL

292. Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "291" with the same force and effect as if set forth at length herein.

293. Based upon the foregoing, Bloomberg has retaliated against Ms. Patricot in violation of the State HRL and has damaged her thereby.

294. The retaliatory conduct of Bloomberg substantially interfered with Ms. Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

295. As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

296. As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of the State HRL, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on their careers, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

297. Ms. Patricot is further entitled to pre-judgment interest on all monies awarded to her.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF JILL PATRICOT PURSUANT TO CITY HRL

298. Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "297" with the same force and effect as if set forth at length herein.

299. Based upon the foregoing, Bloomberg has discriminated against Ms. Patricot based upon her

gender in violation of the City HRL and has damaged her thereby.

300.    The discriminatory conduct of Bloomberg substantially interfered with Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of the City HRL.

301.    As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Patricot has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

302.    As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

303.    As a result of Bloomberg's violation of the City HRL, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

304.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of the City HRL, Ms. Patricot is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

305.    Plaintiff Intervenor Patricot is further entitled to pre-judgment interest on all monies awarded to them, as well as reasonable attorney's fees and costs as provided by the City HRL.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR RETALIATION ON
## BEHALF OF JILL PATRICOT PURSUANT TO CITY HRL

306.    Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "305" with the same force and effect as if set forth at length herein.

307.    Based upon the foregoing, Bloomberg has retaliated against Ms. Patricot in violation of the City HRL and has damaged her thereby.

308.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Patricot's employment and created an intimidating, hostile, and offensive work environment in violation of the City HRL.

309.    As a further and proximate result of these unlawful employment practices, Ms. Patricot has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

310.    As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of the City HRL, Ms. Patricot has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

311.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of the City HRL, Ms. Patricot is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

312.    Ms. Patricot is further entitled to pre-judgment interest on all monies awarded to her, as well

as reasonable attorney's fees and costs as provided by the City HRL.

## AS AND FOR A SEVENTH  CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF TANYS LANCASTER PURSUANT TO TITLE VII AND TITLE I

313.    Plaintiff-Intervenor Tanys Lancaster repeats and  realleges the allegations contained in paragraphs "1" through "312" with the same force and effect as if set forth at length herein.

314.    Based upon the foregoing, Bloomberg has discriminated against Ms. Lancaster  based upon her gender in violation of Title VII and Title I and has damaged her thereby.

315.    The discriminatory conduct of Bloomberg substantially interfered with Ms. Lancaster's employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

316.    As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Lancaster has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

317.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has suffered extreme mental anguish, depression, severe disruption of her personal  and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

318.    As a result of Bloomberg's violation of Title VII, Ms. Lancaster has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotion distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

319.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless

violation of Title VII, Ms. Lancaster is entitled to punitive damages in the sum of Three Hundred Thousand Dollars ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

320.    Ms. Lancaster is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

### AS AND FOR A EIGHTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF TANYS LANCASTER PURSUANT TO TITLE VII AND TITLE I

321.    Plaintiff-Intervenor Tanys Lancaster repeats and realleges the allegations contained in paragraphs "1" through "320" with the same force and effect as if set forth at length herein.

322.    Based upon the foregoing, Bloomberg has retaliated against Ms. Lancaster in violation of Title VII and Title I and has damaged her thereby.

323.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Lancaster's employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

324.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

325.    As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of Title VII, Ms. Lancaster has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

326.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of Title VII, Ms. Lancaster is entitled to punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

327.    Ms. Lancaster is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

## AS AND FOR A NINTH CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF TANYS LANCASTER PURSUANT TO STATE HRL

328.    Plaintiff-Intervenor Tanys Lancaster repeats and realleges the allegations contained in paragraphs "1" through "327" with the same force and effect as if set forth at length herein.

329.    Based upon the foregoing, Bloomberg has discriminated against Ms. Lancaster, based upon her gender in violation of the State HRL and has damaged her thereby.

330.    The discriminatory conduct of Bloomberg substantially interfered with Ms. Lancaster's employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

331.    As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Lancaster has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

332.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

333.    As a result of Bloomberg's violation of the State HRL, Ms. Lancaster has been damaged in

an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

334.    Ms. Lancaster is further entitled to pre-judgment interest on all monies awarded to her.

### AS AND FOR A TENTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF TANYS LANCASTER PURSUANT TO STATE HRL

335.    Plaintiff-Intervenor Jill Patricot repeats and realleges the allegations contained in paragraphs "1" through "334" with the same force and effect as if set forth at length herein.

336.    Based upon the foregoing, Bloomberg has retaliated against Ms. Lancaster in violation of the State HRL and has damaged her thereby.

337.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Lancaster's employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

338.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

339.    As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of the State HRL, Ms. Lancaster has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

340.    Ms. Lancaster is further entitled to pre-judgment interest on all monies awarded to her.

**AS AND FOR AN ELEVENTH  CAUSE OF ACTION FOR GENDER DISCRIMINATION
ON BEHALF OF TANYS LANCASTER PURSUANT TO CITY HRL**

341.    Plaintiff-Intervenor Tanys Lancaster repeats and realleges the allegations contained in

paragraphs  "1" through "340" with the same force and effect as if set forth at length herein.

342.    Based upon the foregoing, Bloomberg has discriminated against Ms. Lancaster  based upon

her gender in violation of the City HRL  and has damaged her thereby.

343.    The discriminatory conduct of Bloomberg substantially interfered with Ms.  Lancaster's

employment   and created an intimidating, hostile, and offensive work environment in

violation of the City HRL.

344.    As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms.

Lancaster has suffered the indignity of gender discrimination, the invasion of her right to be

free from gender discrimination, and great humiliation.

345.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has

suffered extreme mental anguish, depression, severe disruption of her personal and

professional life and loss of enjoyment in the ordinary pleasures of everyday life.

346.    As a result of Bloomberg's violation of the City HRL, Ms. Lancaster has been damaged in an

amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for

compensatory damages for injury to her reputation, for emotional distress, for adverse effects

on her career and for diminished earning capacity resulting from the discriminatory actions

of Bloomberg.

347.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless

violation of the City HRL, Ms. Patricot is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

348.    Plaintiff Intervenor Tanys Lancaster is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by the City HRL.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF TANYS LANCASTER PURSUANT TO CITY HRL

349.    Plaintiff-Intervenor Tanys Lancaster repeats and realleges the allegations contained in paragraphs "1" through "348" with the same force and effect as if set forth at length herein.

350.    Based upon the foregoing, Bloomberg has retaliated against Ms. Lancaster in violation of the City HRL and has damaged her thereby.

351.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Lancaster's employment and created an intimidating, hostile, and offensive work environment in violation of the City HRL.

352.    As a further and proximate result of these unlawful employment practices, Ms. Lancaster has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

353.    As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of the City HRL, Ms. Lancaster has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

354.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of the City HRL, Ms. Lancaster is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

355.    Ms. Lancaster is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by the City HRL.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF JANET LOURES PURSUANT TO TITLE VII AND TITLE I

356.    Plaintiff-Intervenor Janet Loures repeats and realleges the allegations contained in paragraphs "1" through "355" with the same force and effect as if set forth at length herein.

357.    Based upon the foregoing, Bloomberg has discriminated against Ms. Loures based upon her gender in violation of Title VII and Title I and has damaged her thereby.

358.    The discriminatory conduct of Bloomberg substantially interfered with Ms. Loures' employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

359.    As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Loures has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

360.    As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

361.    As a result of Bloomberg's violation of Title VII, Ms. Loures has been damaged in an amount

to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotion distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

362.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of Title VII, Ms. Loures is entitled to punitive damages in the sum of Three Hundred Thousand Dollars ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

363.    Ms. Loures is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF JANET LOURES PURSUANT TO TITLE VII AND TITLE I

364.    Plaintiff-Intervenor Janet Loures repeats and realleges the allegations contained in paragraphs "1" through "363" with the same force and effect as if set forth at length herein.

365.    Based upon the foregoing, Bloomberg has retaliated against Ms. Loures in violation of Title VII and Title I and has damaged her thereby.

366.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Loures' employment and created an intimidating, hostile, and offensive work environment in violation of Title VII.

367.    As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

368.    As a direct and proximate result of the unlawful employment of Bloomberg in violation of

57

Title VII, Ms. Loures has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

369. Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of Title VII, Ms. Loures is entitled to punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

370. Ms. Loures is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by Title VII.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION FOR GENDER DISCRIMINATION ON BEHALF OF JANET LOURES PURSUANT TO STATE HRL

371. Plaintiff-Intervenor Janet Loures repeats and realleges the allegations contained in paragraphs "1" through "370" with the same force and effect as if set forth at length herein.

372. Based upon the foregoing, Bloomberg has discriminated against Ms. Loures, based upon her gender in violation of the State HRL and has damaged her thereby.

373. The discriminatory conduct of Bloomberg substantially interfered with Ms. Loures' employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

374. As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Loures has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

58

375.    As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

376.    As a result of Bloomberg's violation of the State HRL, Ms. Loures has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Bloomberg.

377.    Ms. Loures is further entitled to pre-judgment interest on all monies awarded to her.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF JANET LOURES PURSUANT TO STATE HRL

378.    Plaintiff-Intervenor Janet Loures    repeats and realleges the allegations contained in paragraphs "1" through "377" with the same force and effect as if set forth at length herein.

379.    Based upon the foregoing, Bloomberg has retaliated against Ms. Loures in violation of the State HRL and has damaged her thereby.

380.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Loures' employment and created an intimidating, hostile, and offensive work environment in violation of the State HRL.

381.    As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal  and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

382.    As a direct and proximate result of the unlawful employment practices of Bloomberg in

59

violation of the State HRL, Ms. Loures has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on their careers, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

383. Ms. Loures is further entitled to pre-judgment interest on all monies awarded to her.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION FOR GENDER DISCRIMINATION OF BEHALF OF JANET LOURES PURSUANT TO CITY HRL

384. Plaintiff-Intervenor Janet Loures repeats and realleges the allegations contained in paragraphs "1" through "383" with the same force and effect as if set forth at length herein.

385. Based upon the foregoing, Bloomberg has discriminated against Ms. Loures based upon her gender in violation of the City HRL and has damaged her thereby.

386. The discriminatory conduct of Bloomberg substantially interfered with Loures' employment and created an intimidating, hostile, and offensive work environment in violation of the City HRL.

387. As a direct and proximate result of the unlawful employment practices of Bloomberg, Ms. Loures has suffered the indignity of gender discrimination, the invasion of her right to be free from gender discrimination, and great humiliation.

388. As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

389. As a result of Bloomberg's violation of the City HRL, Ms. Loures has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for

compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career and for diminished earning capacity resulting from the discriminatory actions of Bloomberg.

390.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of the City HRL, Ms. Loures is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

391.    Plaintiff Intervenor Janet Loures is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by the City HRL.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION FOR RETALIATION ON BEHALF OF JANET LOURES PURSUANT TO CITY HRL

392.    Plaintiff-Intervenor Janet Loures repeats and realleges the allegations contained in paragraphs "1" through "391" with the same force and effect as if set forth at length herein.

393.    Based upon the foregoing, Bloomberg has retaliated against Ms. Loures in violation of the City HRL and has damaged her thereby.

394.    The retaliatory conduct of Bloomberg substantially interfered with Ms. Loures' employment and created an intimidating, hostile, and offensive work environment in violation of the City HRL.

395.    As a further and proximate result of these unlawful employment practices, Ms. Loures has suffered extreme mental anguish, depression, severe disruption of her personal and professional life and loss of enjoyment in the ordinary pleasures of everyday life.

396.    As a direct and proximate result of the unlawful employment practices of Bloomberg in violation of the City HRL, Ms. Loures has been damaged in an amount to be determined, but believed to exceed Sixteen Million ($16,000,000) dollars, for compensatory damages for injury to her reputation, for emotional distress, for adverse effects on her career, and for diminished earning capacity resulting from the retaliatory actions of Bloomberg.

397.    Moreover, because Bloomberg's conduct constitutes a malicious, willful, and reckless violation of the City HRL, Ms. Loures is entitled to punitive damages in the sum of Thirty-Two Million ($32,000,000.00) Dollars to punish and deter continuation of Bloomberg's unlawful employment practices.

398.    Ms. Loures is further entitled to pre-judgment interest on all monies awarded to her, as well as reasonable attorney's fees and costs as provided by the City HRL.

**WHEREFORE,** Plaintiffs-Intervenors pray this honorable Court for judgment:

a) On the First Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand ($300,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Patricot; and for reasonable attorney's fees and costs.

b) On the Second Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand ($300,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Patricot; and for reasonable attorney's fees and costs.

c)  On the Third Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Patricot.

d)  On the Fourth Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Patricot.

e)  On the Fifth Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Thirty Two Million ($32,000,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Patricot; and for reasonable attorney's fees and costs.

f)  On the Sixth  Cause of Action, in favor of the Plaintiff-Intervenor Jill Patricot and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Thirty Two Million ($32,000,000) Million Dollars; for pre-judgment interest on all monies awarded to Ms. Patricot; and for reasonable attorney's fees and costs.

g)  On the Seventh Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand  ($300,000) Dollars; for pre-judgment interest on all monies

63

awarded to Ms. Lancaster; and for reasonable attorney's fees and costs.

h) On the Eighth Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand ($300,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Lancaster; and for reasonable attorney's fees and costs.

I) On the Ninth Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Lancaster.

j) On the Tenth Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Lancaster.

k) On the Eleventh Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Thirty Two Million ($32,000,000) Million Dollars; for pre-judgment interest on all monies awarded to Ms. Lancaster; and for reasonable attorney's fees and costs.

l) On the Twelfth Cause of Action, in favor of the Plaintiff-Intervenor Tanys Lancaster and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount

64

of Thirty Two Million ($32,000,000) Million Dollars; for pre-judgment interest on all monies awarded to Ms. Lancaster; and for reasonable attorney's fees and costs.

m) On the Thirteenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand ($300,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Loures; and for reasonable attorney's fees and costs.

n) On the Fourteenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Three Hundred Thousand ($300,000) Dollars; for pre-judgment interest on all monies awarded to Ms. Loures; and for reasonable attorney's fees and costs.

o) On the Fifteenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Loures.

p) On the Sixteenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages and for pre-judgment interest on all monies awarded to Ms. Loures.

q) On the Seventeenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen

65

Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Thirty Two Million ($32,000,000) Million Dollars; for pre-judgment interest on all monies awarded to Ms. Loures; and for reasonable attorney's fees and costs.

r)  On the Eighteenth Cause of Action, in favor of the Plaintiff-Intervenor Janet Loures and against Defendant Bloomberg in an amount to be determined but believed to exceed Sixteen Million ($16,000,000) Dollars for compensatory damages; for punitive damages in the amount of Thirty Two Million ($32,000,000) Million Dollars; and for pre-judgment interest on all monies awarded to Ms. Loures; and for reasonable attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs-Intervenors demand a trial by jury on all claims properly triable by a jury.

Dated: New York, New York
       October 2, 2007

Yours, etc.

DEALY & SILBERSTEIN, LLP

By: _____
       William J. Dealy (WD 9776)
       Milo Silberstein (MS 4637)
       *Attorneys for Plaintiffs-Intervenors Jill Patricot, Tanys*
       *Lancaster and Janet Loures*
       225 Broadway, Suite 1405
       New York, New York 10007
       (212) 385-0066

66