**THE ROTH LAW FIRM, PLLC**
**Richard A. Roth (RAR 5538)**
**545 Fifth Avenue, Suite 960**
**New York, New York 10017**
**(212)542-8882**
*Attorneys for Plaintiff-Intervenor Monica Prestia*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,**

                                       **Case No.: 07 CV 8383(LAP)(HP)**
                                       **ECF ACTION**

                         **Plaintiff,**

                 -against-                       **COMPLAINT OF**
                                     **PLAINTIFF-INTERVENOR**
                                     **MONICA PRESTIA**

**BLOOMBERG L.P.,**

                                       **JURY TRIAL DEMANDED**

                         **Defendant.**
-------------------------------------------------------X
**MONICA PRESTIA**

                        **Plaintiff-Intervenor**

                 -against-

**BLOOMBERG L.P.,**

                         **Defendant.**
-------------------------------------------------------X

      Plaintiff-Intervenor Monica Prestia, by her attorneys, The Roth Law Firm, PLLC,

respectfully alleges the following:

**PARTIES**

1.     Plaintiff-Intervenor was an employee of defendant, Bloomberg L.P. ("Bloomberg"), serving in the position of Account Executive. She resides at 3067 Lonni Lane, Merrick, New York. Plaintiff-Intervenor is a married woman with one child.

2.     Plaintiff-Intervenor took maternity leave from Bloomberg starting in September of 2005. In the 12 months prior to that, Plaintiff-Intervenor worked at least 1,250 hours at Bloomberg.

3.     Defendant, Bloomberg, is, upon information and belief, a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 731 Lexington Avenue, New York, New York 10022. Since January 1, 2004, Bloomberg has employed at least 50 persons in Manhattan. Bloomberg is a corporate defendant as that term is used in the New York State Human Rights Law, the New York Administrative Code, the Federal and Family Medical Leave Act, and Title VII of the Federal Civil Rights Act of 1964, as amended.

**JURISDICTION**

4.     This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. This Court has subject matter jurisdiction pursuant to Title VII to redress and enjoin employment practices of Bloomberg.

**VENUE**

5.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), in that a substantial part of the events giving rise to Plaintiff-Intervenor's claims occurred in New York, and Bloomberg resides in New York. Venue is also proper under 42 U.S.C. § 2000e-5(f)(3) in that (i) the unlawful employment practices giving rise to Plaintiff-

Intervenor's claims were committed in New York, (ii) the employment records relevant

to such practices are, on information and belief, maintained and administered in New

York, and (iii) the Plaintiff-Intervenor would have worked in New York but for the

unlawful employment practices alleged.

## **BACKGROUND**

6.     Plaintiff-Intervenor's devotion to her career in advertising dates back to

1989. She has flourished at several high profile companies, including the New York Post

and WXRK 92.3 K-Rock.

7.     In December 1997, Plaintiff-Intervenor began working as an Account

Executive for Bloomberg.

8.     From the outset, Plaintiff-Intervenor performed her job in a highly

competent and professional manner. She became the first employee ever to sell a

Bloomberg Radio advertising package for $1 million. Less than 2 years after she started,

Plaintiff-Intervenor was promoted to become the Bloomberg Television Latin American

Sales Manager, a position which required Plaintiff-Intervenor to represent Bloomberg in

Miami, Europe, and South America. In 2002, Plaintiff-Intervenor received the Shooting

Star Award at Bloomberg's Annual Sales Awards Event. Soon after, Plaintiff-Intervenor

was offered a second promotion to Bloomberg's Wealth Manager Magazine. In 2004,

Plaintiff-Intervenor was honored, yet again, with Bloomberg's Versatility Award.

Further, up until in or about August 2005, Plaintiff-Intervenor's superiors, including, but

not limited to, David Wachtel, Frank Vulpi, Bill Dimodugno, and Mariann Deluca, gave

her praise, good reviews, annual raises between 5 and 10 percent of her salary, and

certificates, which Plaintiff-Intervenor understood was an additional form of compensation.

9.    In or about February 2005, Plaintiff-Intervenor, at age 38, became pregnant with her first child.

10.    In or about February 2005, Plaintiff-Intervenor's immediate supervisor, Frank Vulpi ("Vulpi") began reporting to Carole Kaschak ("Kaschak").  Upon information and belief, Kaschak is unable to become pregnant.

11.    Plaintiff-Intervenor enjoyed a problem free pregnancy for the first 2 trimesters, and her superlative work at Bloomberg continued.

12.    In or about August 2005, Plaintiff-Intervenor began to experience health complications related to her pregnancy.  Plaintiff-Intervenor's physician urged Plaintiff-Intervenor to reduce her hours at work and forwarded a medical request to Bloomberg to that effect.  As a result, Bloomberg's Human Resources department allowed Plaintiff-Intervenor to change her daily schedule from 8 a.m. – 6 p.m. to 9 a.m. – 5 p.m.

## PREGNANCY DISCRIMINATION

13.    In or about August 2005, Plaintiff-Intervenor's pregnancy was physically apparent.  At that time, Kaschak began exhibiting extreme hostility toward Plaintiff-Intervenor.  Vulpi told Plaintiff-Intervenor that Kaschak repeatedly ordered him to call Plaintiff-Intervenor and question her about arriving to work at 9 a.m., even though Plaintiff-Intervenor's revised schedule had been approved.  Kaschak, herself, appeared to avoid Plaintiff-Intervenor unless Kaschak wanted to criticize her.  Whenever Kaschak approached Plaintiff-Intervenor around that time period, Kashcak would subject Plaintiff-Intervenor to ridicule, scorn, and anger for no apparent reason.  One time, Kaschak

shouted at Plaintiff-Intervenor for being unfamiliar with a new system for documenting the particulars of sales calls, even though Kaschak knew that Plaintiff-Intervenor had been trained with the old system, and that the new system was foreign to Plaintiff-Intervenor. Nevertheless, Kaschak screamed at her. In contrast to Kaschak's treatment of Plaintiff-Intervenor, Kaschak did not exhibit hostility toward similarly situated non-pregnant employees of Bloomberg. Likewise, Kaschak did not exhibit hostility toward Plaintiff-Intervenor before her pregnancy was physically apparent.

14.    Kaschak's repeated harsh treatment caused Plaintiff-Intervenor severe stress and anxiety. Out of profound concern for the health of herself and her unborn child, Plaintiff-Intervenor commenced her maternity leave earlier than she had planned. She began her maternity leave on or about September 1, 2005.

15.    Despite the fact that she was on maternity leave, Plaintiff-Intervenor, being a conscientious employee, worked from home, spending large quantities of time daily on the phone with clients and logging onto the Bloomberg computer network to accomplish her tasks.

## HOSTILE WORK ENVIRONMENT

16.    Plaintiff-Intervenor returned to Bloomberg on or about February 21, 2006. Immediately upon her return, Kaschak's hostility towards Plaintiff-Intervenor escalated. Although Plaintiff-Intervenor warmly greeted Kaschak and told her how glad she was to be back at work, Kaschak, rather awkwardly, refused to respond, look at Plaintiff-Intervenor, or even acknowledge Plaintiff-Intervenor's presence. Kaschak exhibited severe outward antagonism toward Plaintiff-Intervenor. During Plaintiff-Intervenor's first several weeks back, Kaschak, therefore, had little communication with Plaintiff-

Intervenor except Kaschak continued to ridicule Plaintiff-Intervenor. In contrast to Kaschak's treatment of Plaintiff-Intervenor, Kaschak did not exhibit hostility toward similarly situated employees who did not have newborn babies.

17.    On or about March 13, 2006, Kaschak demanded Plaintiff-Intervenor meet her in a conference room to discuss Plaintiff-Intervenor's performance "right now!" Kaschak did not coordinate this meeting with Vulpi. When Kaschak met with similarly situated employees who did not have newborn babies to discuss employees' performance, Kaschak coordinated the meetings with the immediate supervisors of employees. In fact, only about one week prior to Plaintiff-Intervenor's meeting, Kaschak met with a male employee, Orazio Siclari, to discuss performance, and Kaschak invited Vulpi, who was Mr. Siclari's immediate supervisor, to attend. Vulpi told Plaintiff-Intervenor, however, that Kaschak specifically forbid him from attending Plaintiff-Intervenor's meeting because Kaschak did not want Vulpi to defend Plaintiff-Intervenor. At Plaintiff-Intervenor's own meeting, Kaschak subjected her to an exhaustive inquisition. Going one client at a time, Kaschak scrutinized every decision Plaintiff-Intervenor made and every action Plaintiff-Intervenor took since returning from maternity leave. Further, Kaschak chastised Plaintiff-Intervenor for not finishing enough work before she went on maternity leave and made her feel guilty about taking maternity leave. The meeting concluded with the understanding that Plaintiff-Intervenor would provide additional information about several sales calls that had taken place. Plaintiff-Intervenor was shaking when she exited the conference room.

18.    The next morning, on or about March 14, 2006, Kaschak ordered Plaintiff-Intervenor through an instant message to meet her at the Bloomberg Human Resources

department at 11 a.m.  There, Kaschak and Plaintiff-Intervenor met with Pria Varindani.

At that time, Kaschak complained that Plaintiff-Intervenor did not provide enough

information about several sales calls, even though she had given the assignment to

Plaintiff-Intervenor only the previous afternoon, and Plaintiff-Intervenor was close to

completing the assignment.  In response, Plaintiff-Intervenor told Ms. Varindani details

about how Kaschak had been singling her out and abusing her because of her pregnancy

and newborn baby.  Ms. Varindani pledged to investigate Kaschak's behavior.  However,

Plaintiff-Intervenor never heard anything more about the promised investigation.

19.    Thereafter, on or about March 16, 2007, plaintiff-intervenor had an

attorney send correspondence to Bloomberg, requesting that Plaintiff-Intervenor no

longer report to Kaschak and requesting that Kaschak receive antidiscrimination training.

### RETALIATION

20.    On or about March 29, 2006, Plaintiff-Intervenor had her annual

evaluation with Kaschak and Vulpi.  Needless to say, it was the worst of Plaintiff-

Intervenor's career.  The evaluation did not account for the portion of the year that

plaintiff-intervenor worked prior to taking maternity leave.  At the end of the evaluation,

Kascak and Vulpi did not give Plaintiff-Intervenor her salary and financials for the

upcoming year.  When an evaluation took place of similarly situated employees who did

not have newborn babies, the employees were evaluated for the entire past year and

received their salaries and financials for the upcoming year.  Likewise, during Plaintiff-

Intervenor's annual evaluations before she had her baby, she was evaluated for the entire

past year and received her salary and financials for the upcoming year.

21.    For over a month, Plaintiff-Intervenor remained unaware of her salary and financials for the upcoming year. On or about May 2, 2006, at a meeting with Kaschak and Vulpi, Plaintiff-Intervenor was informed that her salary would not increase in the upcoming year as it had in prior years, and that, although it was unprecedented, her certificates, which Plaintiff-Intervenor understood was an additional form of compensation, would decrease from 15 to 10.

22.    After the meeting on or about May 2, 2006, treatment of Plaintiff-Intervenor worsened. It was customary for Kaschak to ring a bell and send a mass email around the office whenever an employee sold an advertising package. Kaschak, however, did not ring the bell or send an email when Plaintiff-Intervenor sold an advertising package. Kaschak's inactions made Plaintiff-Intervenor appear unproductive, while similarly situated employees without newborn babies were rewarded and appeared productive. Kaschak even ordered that Plaintiff-Intervenor's workspace be physically moved to an area of the office that was isolated. In the new area, Plaintiff-Intervenor faced away from the other employees, ostracizing her from her colleagues. Furthermore, Kaschak excluded Plaintiff-Intervenor enor from meeting new employees and participating in office activities, while similarly situated employees who did not have newborn babies were introduced to new employees and included in office activities.

23.    Upon information and belief, Kaschak spread rumors about Plaintiff-Intervenor to another supervisor, Trevor Fellows, with whom Kaschak had a friendly relationship. As a result, on one occasion, Mr. Fellows asked Plaintiff-Intervenor, "What is this, your third baby?" Because of negative statements made by Kaschak, Plaintiff-

8

Intervenor was forced to fight the stereotyped perception that she wished to simply have her baby and be a full-time mother.

24.    Because of the ongoing mistreatment that Plaintiff-Intervenor endured at Bloomberg, Plaintiff-Intervenor sought psychiatric help on or about May 8, 2006. Plaintiff-Intervenor's doctor diagnosed her with major depression. As a result of this major depression, Plaintiff-Intervenor had to take disability leave on or about June 15, 2006.

25.    Bloomberg terminated Plaintiff-Intervenor on December 31, 2006, according to correspondence from Bloomberg's health care plan.

26.    Upon information and belief, on or about the day that Plaintiff-Intervenor was terminated, Kaschak was demoted from her position.

## UPDATED PROCEDURAL HISTORY

27.    On June 25, 2007, Plaintiff-Intervenor Monica Prestia commenced an action against Bloomberg in this Court. A copy of the initial Complaint is annexed hereto as Exhibit A.

27a.    On August 10, 2007, Bloomberg filed its Answer, a copy of which is annexed hereto as Exhibit B.

27b.    On September 27, 2007, the United States Equal Employment Opportunity Commission ("EEOC") filed a Complaint in this Court against Bloomberg alleging, among other things, that Bloomberg engaged in unlawful employment practices against the Plaintiff-Intervenors Jill Patricot, Tanys Lancaster and Janet Loures and a class of similarly situated women at Bloomberg.

27c.    The EEOC considers Plaintiff-Intervenor Monica Prestia to be a member of the class of similarly situated women who endured during the same time period Bloomberg's unlawful employment patterns and practices.

27d.    On October 23, 2007, this Court granted the Motion to Intervene of Jill Patricot, Tanys Lancaster and Janet Loures, allowing each to intervene as a Plaintiff-Intervenor in the case brought by the EEOC against Bloomberg.

27e.    Bloomberg does not oppose Monica Prestia's intervention as a Plaintiff-Intervenor in the case brought by the EEOC against Bloomberg.

27f.    The intervention of Monica Prestia in the EEOC case will not cause a delay in the EEOC case because Monica Prestia's initial Complaint, which Bloomberg has already answered, is substantively identical to the instant Complaint with the exception of paragraphs 27 through 27g, entitled "Updated Procedural History."

27g.    Upon this Court's grant of Monica Prestia's Motion to Intervene, Plaintiff-Intervenor Monica Prestia will dismiss with prejudice her initial Complaint.

### FIRST CLAIM FOR RELIEF

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-5(f), *et seq.*, AS AMENDED

### GENDER DISCRIMINATION

28.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

29.    Bloomberg has discriminated against Plaintiff-Intervenor by treating her differently from and less preferably than similarly situated male employees and by subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation, discriminatory subjection to discipline procedures, disparate pay, disparate

10

terms and conditions of employment, harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

30.     Bloomberg's policies, practices, and procedures have produced a disparate impact against Plaintiff-Intervenor nor with respect to her terms and conditions of employment.

31.     Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

32.     Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

33.     As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

34.     By reason of the persistent discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

35.     By reason of the discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under Title VII.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF TITLE VII, 42 U.S.C. §2000e(k) *et seq.*

### PREGNANCY DISCRIMINATION

36.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

37.    Bloomberg has discriminated against Plaintiff-Intervenor because of or on the basis of pregnancy, childbirth, or related medical conditions.

38.    Bloomberg has discriminated against Plaintiff-Intervenor by treating her differently from and less preferably than similarly situated employees, who were not so affected, and by subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation, discriminatory subjection to discipline procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

39.    Bloomberg's policies, practices, and procedures have produced a disparate impact against Plaintiff-Intervenor with respect to her terms and conditions of employment.

40.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

41.    Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer

substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

42.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

43.    By reason of the persistent discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

44.    By reason of the discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under Title VII.

## THIRD CLAIM FOR RELIEF

## VIOLATIONS OF TITLE VII, 42 U.S.C. §2000e(k)

## RETALIATION

45.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46.    Bloomberg retaliated against Plaintiff-Intervenor because she insisted on working in an environment free of gender discrimination and pregnancy discrimination and also because she complained about said discrimination.

47.    Bloomberg retaliated against Plaintiff-Intervenor by subjecting her to adverse employment actions, including, but not limited to, subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation,

discriminatory subjection to discipline procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

48. Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling plaintiff-intervenor to an award of punitive damages.

49. Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

50. As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

51. By reason of the retaliation Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under Title VII.

## FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF N.Y. EXEC. LAW §29

### GENDER DISCRIMINATION

52. Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 51 above as if fully set forth herein.

53.    Because of her gender, Bloomberg discriminated against Plaintiff-Intervenor in compensation and in the terms, conditions or privileges of her employment, in violation of New York Executive Law § 296.

54.    Because of her gender, Bloomberg also denied or withheld from Plaintiff-Intervenor her right to be included in the office activities, in violation of New York Executive Law § 296.

55.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

56.    Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

57.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

58.    By reason of the persistent discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

59.     By reason of the discrimination Plaintiff-Intervenor suffered at

Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available

under New York Executive Law § 296.

### FIFTH CLAIM FOR RELIEF

### VIOLATIONS OF N.Y. EXEC. LAW §296

### RETALIATION

60.     Plaintiff-Intervenor repeats and re-alleges each and every allegation

contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     In violation of New York Executive Law § 296, Bloomberg discharged,

expelled, or otherwise discriminated against Plaintiff-Intervenor because she opposed

practices forbidden by New York Executive Law §296 or because she he filed a

complaint, testified or assisted in a proceeding under New York Executive Law § 296.

62.     Bloomberg's conduct has been intentional, deliberate, willful, malicious,

reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling

plaintiff-intervenor to an award of punitive damages.

63.     Despite reasonable efforts, Plaintiff-Intervenor has been unable to find

comparable employment. As a direct and proximate result of Bloomberg's

aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer

substantial economic losses, including the loss of past and future earnings, bonuses,

deferred compensation, and other employment benefits.

64.     As a further direct and proximate result of Bloomberg's aforementioned

conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage

to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

65.     By reason of the retaliation Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under New York Executive Law § 296.

### SIXTH CLAIM FOR RELIEF

### VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107

### GENDER DISCRIMINATION

66.     Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     Because of her gender, Bloomberg discriminated against Plaintiff-Intervenor in compensation and in the terms, conditions or privileges of her employment, in violation of New York City Administrative Code § 8-107.

68.     Because of her gender, Bloomberg also denied or withheld from Plaintiff-Intervenor her right to be included in the office activities, in violation of New York City Administrative Code § 8-107.

69.     Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

70.     Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer

substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

71.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

72.    By reason of the persistent discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

73.    By reason of the discrimination Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under New York City Administrative Code § 8-107.

### SEVENTH CLAIM FOR RELIEF

### VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107

### RETALIATION

74.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 73 above as if fully set forth herein.

75.    In violation of New York City Administrative Code § 8-107, Bloomberg discharged, expelled, or otherwise discriminated against Plaintiff-Intervenor because she opposed practices forbidden by New York City Administrative Code § 8-107 or because she filed a complaint, testified or assisted in a proceeding under New York City Administrative Code § 8-107.

76.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

77.    Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment.  As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

78.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

79.    By reason of the retaliation Plaintiff-Intervenor suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under New York City Administrative Code § 8-107.

## EIGHTH CLAIM FOR RELIEF

### VIOLATIONS OF FEDERAL FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2614(a)(1)

80.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 79 above as if fully set forth herein.

81.    In violation of the federal Family and Medical Leave Act, Bloomberg failed, upon Plaintiff-Intervenor's return from maternity leave, to provide Plaintiff-Intervenor with a position equivalent in terms and conditions to her previous position.

82.     Bloomberg's policies, practices, and procedures regarding maternity leave have resulted in discrimination against Plaintiff-Intervenor with respect to her terms and conditions of employment.

83.     Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

84.     Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

85.     As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

86.     By reason of Bloomberg's violation of the federal Family and Medical Leave Act, Plaintiff-Intervenor is entitled to all legal and equitable remedies available under the federal Family and Medical Leave Act.

### NINTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.     Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

88.    While employed at Bloomberg, Plaintiff-Intervenor suffered intentional infliction of emotional distress at the hands of Bloomberg.

89.    Bloomberg's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

90.    Bloomberg's actions can be regarded as atrocious and utterly intolerable in a civilized community.

91.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

92.    Despite reasonable efforts, plaintiff-intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

93.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

94.    By reason of the intentional infliction of emotional distress suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available.

## TENTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 94 above as if fully set forth herein.

96.    Bloomberg's negligence caused Plaintiff-Intervenor to suffer emotional distress.

97.    Bloomberg owed a duty to Plaintiff-Intervenor.

98.    Bloomberg breached this duty and either unreasonably endangered the physical safety of Plaintiff-Intervenor and her baby or caused the Plaintiff-Intervenor to fear for her safety and the safety of her baby.

99.    Bloomberg's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

100.    Bloomberg's actions can be regarded as atrocious and utterly intolerable in a civilized community.

101.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

102.    Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment.  As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

103.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

104.    By reason of the negligent infliction of emotional distress suffered at Bloomberg, Plaintiff-Intervenor is entitled to all legal and equitable remedies available.

## ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

105.    Plaintiff-Intervenor repeats and re-alleges each and every allegation contained in paragraphs 1 through 104 above as if fully set forth herein.

106.    As a result of direct negligence on the part of Bloomberg, Plaintiff-Intervenor experienced emotional distress.

107.    Bloomberg placed its employees, including, but not limited to, Kaschak, in a position to cause foreseeable harm, harm which Plaintiff-Intervenor most probably would have been spared had Bloomberg taken reasonable care in making its decision concerning the hiring and retention of employees, including, but not limited to, Kaschak.

108.    Bloomberg knew or should have known of the propensity of its employees, including, but not limited to, Kaschak, for the sort of conduct which caused the injuries of Plaintiff-Intervenor.

109.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff-Intervenor, entitling Plaintiff-Intervenor to an award of punitive damages.

110.    Despite reasonable efforts, Plaintiff-Intervenor has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

111.    As a further direct and proximate result of Bloomberg's aforementioned conduct, Plaintiff-Intervenor has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

112.    By reason of Bloomberg's negligent hiring, retention, and supervision of its employees, Plaintiff-Intervenor is entitled to all legal and equitable remedies available.

### JURY DEMAND

Plaintiff-Intervenor demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff-Intervenor prays that this Court grant judgment to her containing the following relief:

A.    Declaratory judgment that Bloomberg's employment policies, practices, and procedures challenged herein are illegal and in violation of Title VII;

B.    A permanent injunction against Bloomberg and its partners, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, usages, and gender and pregnancy discrimination as set forth herein;

C.      An Order requiring Bloomberg to initiate and implement programs that (i) will provide equal employment opportunities for female employees, pregnant employees, and employees with newborn babies; (ii) will remedy the effects of Bloomberg's past and present unlawful employment policies, practices, and procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described herein;

D.      An Order requiring Bloomberg to initiate and implement systems of assigning, training, transferring, compensating, and promoting female employees, pregnant employees, and employees with newborn babies in a non-discriminatory manner;

E.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (C) through (D) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (C) through (D) above;

F.      An award of Plaintiff-Intervenor 's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff-Intervenor for loss of future salary and benefits and all damages affordable under the causes of action set forth herein;

G.      An award of damages in an amount to be determined at trial to compensate Plaintiff-Intervenor for mental anguish, humiliation, embarrassment, and emotional injury;

H.      An award of punitive damages;

I.      An award of reasonable attorneys' fees and the costs of this action, including attorneys' fees for representation before the New York State division of Human Rights as required before commencing proceedings in this federal action;

J.      Prejudgment interest;

K.      Such other and further relief as this Court may deem just and proper; and

L.      Retention of Jurisdiction by this Court until such time as the Court is satisfied that Bloomberg has remedied the practices, policies, and procedures complained of herein and is determined to be in full compliance with the law.

Respectfully submitted this 4ᵗʰ day of January, 2008.

Richard A. Roth, Esq. (RAR 5538)
THE ROTH LAW FIRM, PLLC
545 Fifth Avenue, Suite 960
New York, New York 10017
Tel: 212-542-8882
Fax: 212-542-8883
*Attorneys for Plaintiff-Intervenor*
*Monica Prestia*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by facsimile and electronic means on this 4th day of January, 2008 upon the following counsel of record:

Thomas Golden, Esq. and Elissa Rossi, Esq.
**WILKIE, FARR & GALLAGHER, LLP**
787 7th Avenue
New York, NY 10019
*Attorneys for Defendant*

Raechel Adams, Esq.
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
33 Whitehall Street, 5th Floor
New York, New York 10004
*Attorneys for Plaintiff*

William J. Dealy, Esq. and Milo Silberstein, Esq.
**DEALY & SILBERSTEIN, LLP**
225 Broadway, Suite 1405
New York, New York 10007
*Attorneys for Plaintiff-Intervenors Jill Patricot, Tanys Lancaster and Janet Loures*

_____
Richard A. Roth