UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                      Plaintiff,

              -against-

BLOOMBERG L.P.,

                    Defendant.

-------------------------------------------------------------------------x     07-CV-8383 (LAP)(HBP)

JILL PATRICOT, TANYS LANCASTER,
JANET LOURES, MARINA KUSHNIR, MONICA PRESTIA, and    **ORAL ARGUMENT**
MARIA MANDALAKIS,    **REQUESTED**

                 Plaintiff-Intervenors,

              -against-

BLOOMBERG L.P.,

                    Defendant.

-------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF EEOC'S MOTION TO EXCLUDE THE EXPERT OPINIONS OF
<u>DR. MICHAEL P. WARD AND DR. JOHN H. JOHNSON, IV</u>**

## <u>TABLE OF CONTENTS</u>

Page

<u>PRELIMINARY STATEMENT</u> .................................................................................. 1

<u>ARGUMENT</u> ......................................................................................................... 1

   I.  Drs. Ward's and Dr. Johnson's Analyses and Opinions Are Incomplete, Improper and Irrelevant to this Pattern-or-Practice Sex/Pregnancy Discrimination Case ...................... 2

      a.  Drs. Ward and Johnson Improperly Compare Class Members Only to Other Leave Takers in Their Compensation Analyses, Ignoring Up to 82% of Bloomberg's Employee Information .......................................................... 2

      b.  Defendant Justifies Its Improper Comparator Group by Distorting EEOC's Allegations and Misrepresenting the Applicable Legal Standard ............................. 5

   II.  Drs. Ward and Johnson Unreliably Test Whether Defendant Treats Class Members Worse Than It Treats Other Leave Takers ...................................................... 8

      a.  Drs. Ward and Johnson Use an Unreliable Leave Duration Control .......................... 8

      b.  Dr. Ward's Methodology Is Also Fundamentally Unreliable and Does Not Assist the Fact-Finder Because He Fails to Study Pay Each Year ............................. 9

      c.  Dr. Johnson's Methodology Is Unreliable and Fails to Assist the Fact-Finder in at Least Four Additional Ways ........................................................... 11

   III.  In the Alternative, Only One of Defendant's Labor Economist Experts Should be Allowed to Present an Opinion About Compensation Discrimination ........................... 13

   IV.  The Court Should Also Exclude Dr. Ward's "Direct Reports Analysis" as Irrelevant, Incomplete and Misleading ............................................................... 15

<u>CONCLUSION</u> ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)......................................................................................... 9

*Asher v. Riser Foods, Inc.*,
    No. 92-3357, 1993 WL 94305 (6th Cir. Mar. 30, 1993)........................................... 6

*Ausa Life Ins. Co. v. Dwyer*
    899 F. Supp. 1200 (S.D.N.Y. 1995)........................................................................... 13

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999)........................................................................................ 3

*Bonton v. City of New York*,
    No. 03 Civ. 2833(SAS), 2004 WL 2453603 (S.D.N.Y. Nov. 3, 2004) .................... 12

*Colon v. BIC U.S.A., Inc.*
    199 F. Supp. 2d 53 (S.D.N.Y. 2001).......................................................................... 14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)........................................................................................ 1, 5, 8, 10

*Doe v. C.A.R.S. Protection Plus, Inc.*,
    527 F.3d 358 (3d Cir. 2008)........................................................................................ 6

*EEOC v. Venator Group*,
    No. 99 Civ. 4758, 2002 WL 181711 (S.D.N.Y. Feb. 5, 2002) ................................. 12

*Fisher v. Vassar Coll.*,
    70 F.3d 1420 (2d Cir. 1995)........................................................................................ 6

*Gratton v. JetBlue Airways*,
    No. 04 CIV. 7561(DLC), 2006 WL 2037912 (S.D.N.Y. July 21, 2006).................... 7

*Holowecki v. FedEx*,
    644 F. Supp. 2d 338 (S.D.N.Y 2009)........................................................................... 5

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    MDL No. 05-1708(DWF/AJB), 2007 WL 1964337
    (D. Minn. June 29, 2007) ........................................................................................... 14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  MDL No. 1358(SAS), 2008 WL 1971538 (S.D.N.Y. May 7, 2008)........................................ 14

*Int'l Bhd. of Teamsters v. United States*,
  431 U.S. 324 (1977)............................................................................................................. 3

*Marshall v. Am. Hosp. Ass'n*,
  157 F.3d 520 (7th Cir. 1998) ............................................................................................. 6

*Meacham v. Knolls Atomic Power Lab.*,
  461 F.3d 134 (2d Cir. 2006).............................................................................................. 4

*Mengele v. Patriot II Shipping Corp.*,
  No. 99 Civ. 8745 (LTS) (KNF), 2002 WL 237847 (S.D.N.Y. Feb. 19, 2002)........................ 13

*Minott v. Port Authority*,
  116 F. Supp. 2d 513 (S.D.N.Y. 2000).................................................................................. 7

*Mozee v. Am. Commerical Marine Serv. Co.*,
  940 F.2d 1036 (7th Cir. 1991) ........................................................................................... 3

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)................................................................................................ 8

*Orr v. City of Albuquerque*,
  531 F.3d 1210 (10th Cir. 2008) ......................................................................................... 6

*Ottaviani v. State Univ. of New York at New Paltz*,
  679 F. Supp. 288 (S.D.N.Y. 1988), aff'd 875 F.2d 365 (2d Cir. 1989) ................................... 15

*Ottaviani v. State Univ. of New York*,
  875 F.2d 365 (2d Cir. 1989)................................................................................................ 3

*Piraino v. Int'l Orientation Res., Inc.*,
  137 F.3d 987 (7th Cir. 1998) ............................................................................................. 6

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)................................................................................................. 5

*Robinson v. Metro-North Commuter R.R.*,
  267 F.3d 147 (2d Cir. 2001)................................................................................................ 3

*Sigmon v. Parker Chapin Flattau & Klimpl*,
  901 F. Supp. 667 (S.D.N.Y. 1995)....................................................................................... 7

*Smith v. Xerox Corp.,*
    196 F.3d 358 (2d Cir. 1999).................................................................................. 3, 4

*Stone v. Stoker,*
    No. 91-2126, 1992 WL 98356 (4th Cir. May 13, 1992)........................................... 14

*Tran v. Toyota Motor Corp.,*
    420 F.3d 1310 (11th Cir. 2005) ........................................................................... 13

*United States v. Walker,*
    910 F. Supp. 861 (N.D.N.Y. 1995) ...................................................................... 13

*United States v. Williams,*
    506 F.3d 151 (2d Cir. 2007) ……………………………………………………………1

*Velez v. Novartis Pharms. Corp.,*
    244 F.R.D. 243 (S.D.N.Y. 2007) .......................................................................... 6

*Velez v. Novartis Pharms. Corp.,*
    No. 04 Civ. 9194 (CM) (S.D.N.Y.) ………………………………………………………7

*Watson v. Fort Worth Bank & Trust,*
    487 U.S. 977 (1988)............................................................................................ 3, 4

*Williams v. County of Orange,*
    No. 03 Civ. 5182 (LMS), 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005)................................. 13

**Statutes**

Title VII of the Civil Rights Act of 1964........................................................................ 2

Title I of the Civil Rights Act of 1991 .......................................................................... 2

The Pregnancy Discrimination Act................................................................................ 2, 5, 6, 7

**Rules**

Federal Rule of Evidence 702...................................................................................... 1, 5, 8

Federal Rule of Evidence 403...................................................................................... *passim*

## PRELIMINARY STATEMENT

In further support of its Motion to Exclude the Opinions of Michael P. Ward, Ph.D., and John H. Johnson, IV, Ph.D., Plaintiff Equal Employment Opportunity Commission ("EEOC") replies to Defendant Bloomberg L.P.'s Opposition papers.  Under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.* and its progeny, and Federal Rule of Evidence 403, this Court should exclude proffered opinions of Drs. Ward and Johnson.  First, Drs. Ward and Johnson identically opine that there is no statistically significant difference in compensation between class members and other leave takers, inappropriately and narrowly focusing on leave taking and asserting that the appropriate comparator group for the class is leave takers.  Second, Drs. Ward and Johnson used an identical, unreliable leave duration control that failed to capture the separate effects of maternity leave and other leave on pay.  To the extent Drs. Ward and Johnson used different methodologies to reach their identical conclusion, each is further unreliable.  Third, the Court should not permit both experts to testify about compensation discrimination because they render the exact same opinion, which would be needlessly cumulative and more prejudicial than probative.  Fourth, Dr. Ward's "direct reports analysis" should be excluded as misleading.

## ARGUMENT

In offering the expert opinions of Drs. Ward and Johnson, Defendant must prove that (1) the testimony will assist the trier of fact; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702; *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  In other words, each expert's testimony must be both relevant and reliable.  *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 589

(1993). Additionally, Federal Rule of Evidence 403 permits exclusion of evidence where prejudice substantially outweighs probative value, or where there is a danger of "confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence."

I. **Dr. Ward's and Dr. Johnson's Analyses and Opinions Are Incomplete, Improper and Irrelevant to this Pattern-or-Practice Sex/Pregnancy Discrimination Case**

a. **Drs. Ward and Johnson Improperly Compare Class Members Only to Other Leave Takers in Their Compensation Analyses, Ignoring Up to 82% of Bloomberg's Employee Information**

EEOC brings this case under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Civil Rights Act of 1991, and the Pregnancy Discrimination Act of 1978 ("PDA"), a sub-statute contained in the Definitions section of Title VII. EEOC alleges that Bloomberg has engaged in a pattern or practice of discriminating against pregnant women and mothers (female employees worldwide who became pregnant and/or returned from maternity leave between February 2002 and the present) that has manifested in a variety of ways. (*See* 6/11/10 Adams Decl.[1] Exh. 1 (Complaint).) EEOC's allegations center on how class members working at Bloomberg are treated when they announce their intention to become pregnant, become pregnant, and become mothers, as compared to employees who do not.

The relevant legal question for the expert labor economists is whether the statistical evidence suggests "that unlawful discrimination [on the basis of sex/pregnancy] has been a

---

[1] EEOC's Reply Memorandum is supported by the Declaration of Raechel L. Adams filed herewith ("6/25/10 Adams Decl."), the May 14, 2010 Declaration of Raechel L. Adams in support of EEOC's Motion to Exclude the Expert Opinions of Dr. Michael P. Ward and Dr. John H. Johnson, IV (Docket #131) ("5/14/10 Adams Decl."), the June 11, 2010 Declaration of Raechel L. Adams in support of EEOC's Opposition to Defendant Bloomberg L.P.'s Motion to Exclude the Reports and Testimony of Dr. Louis Lanier (Docket #149) ("6/11/10 Adams Decl."), the June 17, 2010 Amended Declaration of Dr. Louis Lanier (Docket # 153) ("6/17/10 Lanier Decl.") and the June 25, 2010 Declaration of Dr. Louis Lanier ("6/25/10 Lanier Decl."), filed herewith. EEOC also incorporates by reference the facts and arguments set forth in its opposition to Defendant's motion to exclude Dr. Lanier (Docket # 146.)

regular procedure or policy followed by [Defendant]." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977); *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) (noting requirement of "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [adverse action] because of their membership in a protected group"); *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir. 2001) (citations omitted) (plaintiffs can present "statistical evidence aimed at establishing the defendant's past treatment of the protected group"); *Ottaviani v. State Univ. of New York*, 875 F.2d 365, 367 (2d Cir. 1989) ("In disparate treatment cases involving claims of gender discrimination, plaintiffs typically use multiple regression analysis to isolate the influence of gender on employment decisions relating to a particular job or job benefit, such as salary.").

In this case, Defendant specifically prohibits managers from considering leave in compensation decisions.  (6/11/10 Adams Decl. Exh. 11 (Cooper 9/8/08 30(b)(6) Dep.) at 99-100; 6/11/10 Adams Decl. Exh. 12 at BLP 0062018; 6/11/10Adams Decl. Exh. 13 at BLP 0092994).[2]  Given EEOC's allegations, the relevant legal question, and Defendant's own policy, EEOC's labor economist expert, Dr. Louis Lanier, properly compared how Defendant compensates class members to how it compensates non-class members, and he isolated class status as a basis for any variation between class members' expected pay and the pay Defendant awarded them.  *See, e.g., Smith v. Xerox Corp.*, 196 F.3d 358, 368 (2d Cir. 1999) (noting that in defining the "questions to be answered" about discrimination, "the relevant population is divided

---

[2] Tellingly, Defendant provides no discussion of or authority for ignoring its own policy.  In a Title VII case, a proper statistical (regression) analysis takes into account not only commonly accepted principles and methods of labor economics, but also the business policies and practices of the employer at issue.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449-50 (2d Cir. 1999); *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1045 (7th Cir. 1991).

into protected and non-protected groups and . . . [the treatment] compared"), *overruled on unrelated grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 141 (2d Cir. 2006).

Drs. Ward and Johnson, however, conducted analyses of the impact of *leave* on compensation, and not the impact of class status (*i.e.,* being pregnant and/or having returned from maternity leave within the relevant time period).  (5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 6; 5/14/10 Adams Decl. Exh. L (Ward Dep.) at 22-24; 6/25/10 Adams Decl. Exh. 1 (Johnson Dep.) at 289-91, 328.)  Dr. Johnson compared the class only to employees who took at least fifteen consecutive days of leave.  (5/14/10 Adams Decl. Exh. I (Johnson Rep.) at 9 n.9.)  Dr. Ward technically included in his model data regarding all employees, but emphasized at every turn that the appropriate comparator group is composed of those who took at least 60 days of consecutive leave.  He also presents all of his conclusions in the context of leave taking. Drs. Ward and Johnson attribute all statistical results to the role of leave, focusing their analyses only on the effect of leave, and ignoring the effect of class status, on compensation.  Thus, Dr. Ward's and Dr. Johnson's analyses fail to distinguish a "leave effect" from a "class effect" and improperly compare class members only to other leave takers.[3]  (*See* 5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 6; *see also* 5/14/10 Adams Decl. Exh. C (Lanier Reply Rep.) ¶¶ 20-23.)  By comparing the class only to "long-leave-takers," Drs. Ward and Johnson ignore all Bloomberg employees who took no, or minimal, leave, *i.e.*, up to 82% of the total available data (*see* 5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 15).  *See Watson*, 487 U.S. at 996-97 (in criticizing reliability of statistics, court may focus on "weaknesses" in such evidence, and "typical examples include small or incomplete data sets"); *Smith*, 196 F.3d at 368, 370 (statistics

---

[3] Throughout its Opposition papers, Defendant harps on EEOC's reference to the effect of "maternity leave" on compensation.  Like Dr. Lanier, EEOC uses "maternity leave" as a proxy for class members, since no non-class members took maternity leave within the relevant period.

rejected where the groups subject to employment action could not be compared to ascertain a "gross statistical disparity" because the expert isolated or pooled units from the "total population" of defendant's affected workers, and finding a proper inference only when "all persons who were subject to the process are included in the analysis").

### b. Defendant Justifies Its Improper Comparator Group by Distorting EEOC's Allegations and Misrepresenting the Applicable Legal Standard

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful [to the fact-finder]." *Daubert*, 509 U.S. at 591 (internal quotation omitted); *see also Holowecki v. FedEx*, 644 F. Supp. 2d 338, 361 (S.D.N.Y 2009) (in age discrimination case, excluding statistical evidence under Federal Rule of Evidence 702 where defendant presented statistics unrelated to the question of whether it "treat[ed] its employees in an age-neutral fashion"). Because Drs. Ward and Johnson studied the wrong issue and used the wrong comparison group (a tiny subset of the right comparison group) according to the law, the allegations, and Bloomberg's policy, their analyses are irrelevant, misleading, and would not assist the fact-finder. *See Raskin v. Wyatt Co*., 125 F.3d 55, 67-68 (2d Cir. 1997) (excluding report where expert erred in determining the composition of the general population comparison group so as to create an "unrepresentative sample for [the expert's] comparison . . ." that was not meaningful). The experts' opinions based on such improper comparisons should be excluded.

First, Defendant justifies Dr. Ward's and Dr. Johnson's narrow analyses (and its attempt to exclude Dr. Lanier) by insistently ignoring the broad-based legal framework for proving this pattern-or-practice case and instead, focusing on a constrained PDA standard. Defendant argues that the labor economist experts must study Defendant's treatment of class members versus its treatment of "others similar in their ability or inability to work" (*see, e.g.*, Defendant's Opposition Memo ("Def. Mem.") at 12), and as a corollary, argues that the experts should

analyze only how Defendant treats individuals who take maternity leave compared with how it treats other leave takers.  Indeed, in many of Defendant's cited cases, the plaintiffs sought a benefit denied to pregnant employees but provided to a subset of nonpregnant employees who were unable to work.  These cases are obviously inapposite given the allegations here.  The remainder of Defendant's cited cases also do not support its argument that any plaintiff in a PDA case must prove that she was discriminated against relative to other leave takers.  *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1216 (10th Cir. 2008) (reversing summary judgment for employer, in part relying on plaintiff's non-comparator evidence); *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 366-71 (3d Cir. 2008) (reversing summary judgment for employer *not* because plaintiff compared herself to non-pregnant or non-maternity *leave takers* but instead by relying in part on non-comparator evidence); *Marshall v. Am. Hosp. Ass'n,* 157 F.3d 520 (7th Cir. 1998) (pregnant employee requested special, not equal, treatment because of pregnancy and failed to demonstrate nexus between pregnancy and termination); *Piraino v. Int'l Orientation Res., Inc.*, 137 F.3d 987 (7th Cir. 1998) (plaintiff unable to show pregnancy discrimination when defendant fired her under neutral policy granting leave only after one year of company service); *Fisher v. Vassar Coll.*, 70 F.3d 1420, 1448 (2d Cir. 1995) (noting that it was the *plaintiff* who regarded her eight-year absence from work as a proxy for having children and therefore *she* focused on the role of leave taking in the tenure process); *Asher v. Riser Foods, Inc*., No. 92-3357, 1993 WL 94305 (6th Cir. Mar. 30, 1993) (per curiam) (out-of-Circuit, unpublished decision in which a part-time employee argued that she should be compared to full-time employees for benefits purposes); *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 265 n.18 (S.D.N.Y. 2007) (denying class certification only as to one aspect of pregnancy discrimination claim and observing that had that claim included "an affirmative sanction [on pay] for taking

[maternity] leave," plaintiffs may have been more successful); *Gratton v. JetBlue Airways*, No. 04 CIV. 7561(DLC), 2006 WL 2037912 (S.D.N.Y. July 21, 2006) (plaintiff working in physical job requested special accommodation involving job change due to physical restrictions during pregnancy); *Minott v. Port Authority,* 116 F. Supp. 2d 513, 521 (S.D.N.Y. 2000) (plaintiff fired for excessive absences sought special treatment where comparators' absences were work-related and therefore exempt from attendance policy).

Unlike Defendant's cited cases, this case does not center on pregnant women's or mothers' "inability to work," but rather on how Bloomberg treats class members while at work. EEOC's allegations are similar to those in, for example, *Velez v. Novartis Pharms. Corp*., No. 04 Civ. 9194 (CM) (S.D.N.Y.), and *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667 (S.D.N.Y. 1995), both PDA cases.  As here, the plaintiffs in *Velez* and *Sigmon* properly and successfully emphasized that their employers treated pregnant women and mothers worse than employees who were neither.

Second, Defendant inaccurately portrays EEOC's allegations regarding the role of class members' maternity leave.  While EEOC's Complaint refers to treatment of the class after the "return from maternity leave," that reference simply helps identify the scope of the class and the relevant time period – it does not indicate that this case is about leave takers or leave taking.  In other words, a reference to maternity leave does not transform EEOC's allegations into a comparison of the effect of leave taking on two different groups of leave takers.  Drs. Ward and Johnson study leave taking and leave takers to the exclusion of studying the appropriate question: whether the statistical evidence suggests discrimination against class members based on their class status, as compared to the non-protected group of employees.  Because Drs. Ward and Johnson study the wrong phenomenon and use the wrong comparator group, their opinions

are irrelevant, and presentation of such would serve only to confuse and mislead the jury.  *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589; *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).  Even if these opinions were somehow deemed relevant under Federal Rule of Evidence 702 and *Daubert*, they should be excluded pursuant to Federal Rule of Evidence 403 for confusing the issues.

## II. Drs. Ward and Johnson Unreliably Test Whether Defendant Treats Class Members Worse Than It Treats Other Leave Takers

### a. Drs. Ward and Johnson Use an Unreliable Leave Duration Control

Recognizing that leave might have some legitimate effect on pay, despite Defendant's contrary policy, Dr. Lanier controlled for leave using a refined leave duration control that accounts differently for the duration of a class member's maternity leave versus the duration of a non-class member's other type of leave.[4]  (*See* 5/14/10 Adams Decl. Exc. C (Lanier Reply Rep.) ¶¶ 20-23; 6/17/10 Lanier Decl. ¶¶ 5, 6.)  Neither Dr. Ward nor Dr. Johnson accounted for this difference because both used a single leave duration control assuming that all leave types affect compensation in the same way.  On page fourteen of his initial report, Dr. Ward examined whether there was a different effect on compensation growth for maternity leave compared to non-maternity leave, and he found that there was. (5/14/10 Adams Decl. Exh. E (Ward Rep.) at 14.)  Yet, he did not take this finding far enough and incorporate it into his leave duration control for the entire population. (*See* 5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶¶ 33-34.) Dr. Ward claims there was no need to refine his leave duration control because the difference in maternity leave and non-maternity leave effects on pay among class members (a subset of the

---

[4] Technically, Dr. Lanier differentiated between class members' and non-class members' leaves, as opposed to maternity leave and other leave, because only class members took maternity leave and due to the unreliability of the leave reasons in the data.  (*See* 6/14/10 Adams Decl. Exh. 14 (Lanier Dep.) at 322-25; 6/17/10 Lanier Decl. ¶¶ 5-7; 6/25/10 Adams Decl. Exh. 2 (Ward Dep.) at 372-73; 5/14/10 Adams Decl. Exh. M (Johnson Dep.) at 443-44.)

larger employee population studied) was statistically insignificant.  (5/14/10 Adams Decl. Exh.

G (Ward Reply Rep.) at 10).  But statistical insignificance alone is not a reason to exclude a

variable in a regression analysis.  (6/25/10 Lanier Decl. ¶ 4.)  Indeed, fourteen out of 22 controls

Dr. Ward used in his original analysis had a statistically insignificant effect, including his leave

duration squared variable.  (*Id*. ¶ 5.)

     Dr. Ward should have refined his leave duration control so that he could study the proper

question – isolating the class effect from the leave effect.  His single and simplistic leave

duration variable renders all his regression analyses unreliable such that he lacks "good grounds"

for his conclusions, and his opinions should therefore be excluded.  *Amorgianos v. Nat'l R.R.*

*Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  Because Dr. Johnson used a single leave

duration control identical to Dr. Ward's, his regressions similarly lack good grounds and should

also be excluded.  Moreover, for all of Dr. Johnson's "tests" of his regression analyses to see

whether class members were compensated less than non-class members (Def. Mem. at 15), he

never changed his simple leave duration control, always focused on leave takers as the

comparison group, and never tested his regression analyses without a gender control (see below).

### b.  Dr. Ward's Methodology Is Also Fundamentally Unreliable and Does Not Assist the Fact-Finder Because He Fails to Study Pay Each Year

     In Dr. Ward's analyses, each observation is a compensation change over a certain time

period.  (5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 26.)  Dr. Ward reported results

from calculations over two broad time periods: first, pay changes over his entire study period

from February 1, 2002 through December 31, 2008, and second, pay changes from the

anniversary date just prior to the date leave was taken until December 31, 2008.  (5/14/10 Adams

Decl. Exh. F (Ward Rep.) at Exhibits 5 and 7, respectively.)  Both time periods are subject to Dr.

Lanier's criticism that, because Dr. Ward fails to account sufficiently for the differing periods of

time between the return from leave and the pay endpoint, he "measures a leave duration effect that is confounded by pay decisions that occur, in some cases, up to six years after the return from leave." (5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 32.)  In other words, unlike Dr. Lanier, Dr. Ward lumps together (and averages) all pay decisions made over a multiple-year period without taking into account each year in between.

Defendant's claim that Dr. Ward "refined" his post-leave periods in response to Dr. Lanier's criticism (Def. Mem. at 20) is inaccurate and disingenuous.  As described in EEOC's initial Memorandum of Law, Dr. Ward simply dropped from the analysis employees who had more than one or two anniversary dates after they returned from leave, ultimately studying only 36% of the class and 40% of the non-class.  (*See* EEOC Mem. at 16 n.6; 5/14/10 Adams Decl. Exh. G (Ward Reply Rep.) at Appendix Table 3.)  Dr. Lanier, in contrast, measures compensation changes from year to year, so his refined leave duration control measures separately the class penalty and the effect of leave on pay, each year.  (6/17/10 Lanier Decl. ¶¶ 22(a),(b).)  Because Dr. Ward focuses exclusively on leave, does so unreliably, fails to compare similarly situated individuals as to the amount of time between the end of leave and the end of the study period and fails to study pay year by year, the Court should exclude his opinions.[5]

---

[5] Defendant correctly notes that when it prepared its Opposition papers, EEOC had not formally challenged the substance of Dr. Ward's "Sur-Sur-Reply Report."  However, Defendant is absolutely incorrect to argue that Dr. Ward's report is "unchallenged," "unrebutted" or "admissible."  (Def. Mem. at 30.)  First, Dr. Lanier rebutted Dr. Ward's assertions in his June 11, 2010 Declaration filed in connection with EEOC's opposition to Defendant's motion to exclude Dr. Lanier.  Second, as EEOC explained in its initial motion to exclude Drs. Ward and Johnson, EEOC has always taken issue with Defendant's opportunistic response to this Court's March 15, 2010 Order by submitting a report going far beyond the scope of that Order, which allowed Defendant to submit a report to address the *corrections* in Dr. Lanier's Corrected Reply Report. Fewer than three paragraphs of Dr. Ward's 23-page report address the corrections.  Although EEOC sought to reduce the Court's burden of reviewing further related motions (such as Defendant's motion to strike, which was denied by the Court's March 15, 2010 Order), and even though a schedule was set for the instant *Daubert* motions at the March 25, 2010 status

### c.   Dr. Johnson's Methodology Is Unreliable and Fails to Assist the Fact-Finder in at Least Four Additional Ways

Dr. Johnson reported results of both descriptive, uncontrolled analyses and multiple regression analyses.  Defendant's claim that EEOC only challenges Dr. Johnson's descriptive, uncontrolled analyses is patently untrue (see initial Memorandum of Law at 17 and 21-23). "Scenario 1" fails to compare similarly situated employees.  Dr. Johnson agrees that the period he used to measure compensation changes is always significantly longer for class members than for non-class members.  (5/14/10 Adams Decl. Exh. M (Johnson Dep.) at 126, 174-75; 5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 13.)  Dr. Johnson measures compensation growth over time, so the fact that he uses a longer period to measure compensation changes for class members compared to a shorter period for  non-class members' constitutes a fatal methodological flaw.  In Scenario 1, the measured compensation change for class members is inflated, overstating the difference between class members' and non-class members' compensation changes.  (5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 13.)  EEOC therefore moves to exclude Dr. Johnson's analyses using Scenario 1 as unreliable and confusing.

Second, Dr. Johnson's regression analyses are unreliable because they include a gender control, which artificially deflates the comparator group's pay.  By adding a gender control to his analyses, he compares female class members to male non-class members only after the male non-class members' compensation is adjusted downward, to the level Bloomberg would have

---

conference, Defendant now suggests that EEOC should have separately moved to strike Dr. Ward's unauthorized report.  (*Id.*)  Given that expert discovery closed on February 26, 2010, and given the procedural context for and intention underlying this Court's March 15, 2010 Order, EEOC now moves to strike as unauthorized all portions of Dr. Ward's March 29, 2010 "Sur-Sur-Reply" that do not address Dr. Lanier's corrections submitted on February 11, 2010, *i.e.*, all except the second full paragraph on page 1, the last paragraph on page 3 (continuing on page 4), the second bullet point from the Conclusion section on page 10, and the corrected tables in App. A.  EEOC will submit a separate, formal motion to strike if the Court prefers.

paid them if they were women.[6]  (*See id*. ¶ 16.)  Defendant barely responds to EEOC's
arguments relating to Dr. Johnson's use of a gender control, claiming summarily that his decision
to control for gender did not impact the outcome of his analyses (Def. Mem. at 25).  But the
record does not support this assertion – Dr. Johnson never ran his analyses without the gender
control.  (5/14/10 Adams Decl. Exh. M (Johnson Dep.) at 156-57, 207, 324-25.)  Furthermore,
Defendant has no response to the cases EEOC cited on this point.  The Court should exclude Dr.
Johnson's opinions because they all rest on his flawed, gender-based comparison.

Third, Dr. Johnson's nonregression analyses would not assist, and would only confuse
and mislead, the fact-finder.  Dr. Johnson may have started his study with descriptive,
uncontrolled numbers that compare groups of employees, but by not using any controls, he did
not compare class members to similarly situated employees.  Multiple regression analysis may
not be a prerequisite for admissibility, but "statistical analyses that fail . . . to control for *any*
nondiscriminatory explanations are inadmissible."  *Bonton v. City of New York*, No. 03 Civ.
2833(SAS), 2004 WL 2453603, at *4 (S.D.N.Y. Nov. 3, 2004) (emphasis in original).  In *EEOC
v. Venator Group*, cited by Defendant, Dr. Janice Madden did not use multiple regression
analysis to assess whether older workers were more likely to be laid off than younger workers
but did group workers with similar job duties and made other adjustments to compare similarly
situated employees. No. 99 Civ. 4758, 2002 WL 181711, at *3 (S.D.N.Y. Feb. 5, 2002).  EEOC
does not argue that only multiple regression analyses are admissible in discrimination cases.
Rather, in this case, Dr. Johnson's uncontrolled, descriptive analyses that do not account for
nondiscriminatory factors and do not compare similarly situated employees are irrelevant and
inadmissible.  Dr. Johnson's tables that do not reflect regression analyses are therefore

---

[6] Dr. Johnson admits that Bloomberg compensates men more than similarly situated women.
(5/14/10 Adams Decl. Exh. M (Johnson Dep.) at 138, 152-153.)

meaningless as to the question of how class members were treated compared to non-class members; therefore, they would not assist but would only confuse and/or mislead the fact-finder.

Fourth, Dr. Johnson completely ignores any possible effects on pay that a class member may suffer beyond 24 months after her return from maternity leave, despite EEOC's allegations and evidence.  Yet again, this renders his analyses incomplete, misleading and unreliable.

## III.     In the Alternative, Only One of Defendant's Labor Economist Experts Should be Allowed to Present an Opinion About Compensation Discrimination

Drs. Ward and Johnson studied the same issue and reached the same conclusion, using somewhat different methodologies.  (*See* 5/14/10 Adams Decl. Exh. E (Ward Rep.) at 18; 5/14/10 Adams Decl. Exh. I (Johnson Rep.) ¶ 10; 5/14/10 Adams Decl. Exh. J (Johnson Reply Rep.) ¶ 43.)  Allowing both experts to opine on identical issues would result in a needless presentation of cumulative evidence and confuse the issues; therefore, the Court should exclude one or the other under Federal Rule of Evidence 403.  Courts routinely exclude duplicative experts, because parties could otherwise parade multiple experts testifying to the same opinion by having each  present a slightly different subset of the opinion.  *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1314-16 (11th Cir. 2005) (no abuse of discretion where court excluded expert as cumulative because two experts testified on the same issues and relied on the same medical evidence); *Williams v. County of Orange*, No. 03 Civ. 5182 (LMS), 2005 WL 6001507, at *6 (S.D.N.Y. Dec. 13, 2005) (excluding one expert where second expert opined on the same issues); *Mengele v. Patriot II Shipping Corp.*, No. 99 Civ. 8745 (LTS) (KNF), 2002 WL 237847, at *2 (S.D.N.Y. Feb. 19, 2002) (same); *United States v. Walker*, 910 F. Supp. 861, 863 (N.D.N.Y. 1995) (additional expert testimony that buttresses the conclusions of a primary expert is cumulative and inadmissible: a party may not make its case "through sheer weight of successive expert testimony"); *Ausa Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1203 (S.D.N.Y.

1995) ("Our Individual Rules state that we will permit each side to put on only one expert witness in any particular area of expertise.  This requirement is designed to eliminate duplicative testimony and to avoid giving an advantage to the side that can afford the most expert witnesses."); *cf. In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358(SAS), 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) (expert's testimony in products liability case was *not* cumulative because two experts addressed distinct issues); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708(DWF/AJB), 2007 WL 1964337, at *3, *4, *6 (D. Minn. June 29, 2007) (denying plaintiff's *Daubert* motion to exclude expert witnesses, but reserving the right to exclude such testimony at trial on cumulative grounds under Federal Rule of Evidence 403 if plaintiff intended to introduce same opinion through more than one expert).

Moreover, the cases Defendant cites in opposition support EEOC's position.  First, in citing *Colon v. BIC U.S.A., Inc.*, Defendant fails to mention that one of the original four experts was in fact excluded on the ground that his testimony was deemed cumulative because it addressed the same issue as other experts.  199 F. Supp. 2d 53, 97 (S.D.N.Y. 2001).  The three "experts" who testified in *Colon* were defendant's Director of Corporate Quality, defendant's Area Manager for Lighter Development, and one outside expert.  *Id.* at 67, 96.  Second, in *Stone v. Stoker*, an unpublished Fourth Circuit case, although two treating physicians were permitted to testify, each testified to the distinct time period in which (s)he treated the plaintiff.  No. 91-2126, 1992 WL 98356 (4th Cir. May 13, 1992) (per curiam).  The third was a nontreating expert.  *Id.*

As the weight of the authority makes clear, the Court should exclude cumulative, confusing testimony and permit Defendant to present only one labor economist expert, if any.

**IV.    The Court Should Also Exclude Dr. Ward's "Direct Reports Analysis" as Irrelevant, Incomplete and Misleading**

The Court should exclude Dr. Ward's "direct reports analysis" because it provides an incomplete and misleading picture regarding EEOC's pattern-or-practice demotion allegation. EEOC alleges a variety of forms of demotion including but not limited to "demoting [Claimants] in title and/or in terms of the number of employees directly reporting to them, [ ] diminishing their responsibilities, and [ ] replacing them with male employees junior to the Claimants, once they announced their pregnancy and once they returned to work after taking maternity leave." (*Id*.)  EEOC will establish this demotion claim through a totality of these various forms of demotion and need not test or prove each in isolation.  *See Ottaviani v. State Univ. of New York at New Paltz*, 679 F. Supp. 288, 298 (S.D.N.Y. 1988) ("[A]ll evidence of intentional discrimination is relevant to all claims and must be considered as a whole."), *aff'd* 875 F.2d 365 (2d Cir. 1989).  Not only does Dr. Ward's "direct reports analysis" improperly focus on leave taking rather than on class status and study less than 25% of the class members (*see* 5/14/10 Adams Decl. Exh. B (Lanier Rebuttal Rep.) ¶ 39), but it also focuses only on one of the various forms of demotion.  As such, if admitted, his analysis could be mistaken as applying to EEOC's broad and varied demotion claim.  To avoid confusion and resulting prejudice to EEOC, the Court should therefore exclude Dr. Ward's irrelevant "direct reports analysis."

## CONCLUSION

For the foregoing reasons and those in EEOC's May 14, 2010 Memorandum of Law, EEOC respectfully requests that the Court exclude as inadmissible all opinions and testimony of Dr. Michael P. Ward and Dr. John H. Johnson, IV.  In the alternative, EEOC requests that only one expert be permitted to present opinions on behalf of Defendant in this matter.

Dated: June 25, 2010

                                                              Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

/s/ _____
Raechel L. Adams (RA-0460)
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel: (212) 336-3707
Fax: (212) 336-3623
e-mail: raechel.adams@eeoc.gov