```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
EQUAL EMPLOYMENT OPPORTUNITY                                 :
COMMISSION,                                                  :
                                                             :
                Plaintiff,               :    07-CV-8383 (LAP/HP)
                                                             :
           v.                            :    ECF ACTION
                                                             :
BLOOMBERG L.P.,                                              :
                                                             :
                Defendant.               :
                                                             :
------------------------------------------------------------ x
                                                             :
JILL PATRICOT, TANYS LANCASTER,                              :
JANET LOURES, MONICA PRESTIA,            :
MARINA KUSHNIR and MARIA                                     :
MANDALAKIS,                              :
                                                             :
                Plaintiff-Intervenors,   :
                                                             :
           v.                            :
                                                             :
BLOOMBERG L.P.,                                              :
                                                             :
                Defendant.               :
                                                             :
------------------------------------------------------------ x
```

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO EXCLUDE THE REPORTS AND TESTIMONY OF DR. EUGENE BORGIDA**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  DR. BORGIDA'S PROPOSED OPINION AND TESTIMONY ARE UNRELIABLE .......... 1

   A.  EEOC'S RELIANCE ON SO-CALLED "SOCIAL FRAMEWORK" CASES IS
       UNAVAILING .......................................................................................................... 1

   B.  EEOC MISCHARACTERIZES DR. BORGIDA'S OPINION AND TESTIMONY ......... 6

II.  DR. BORGIDA'S PROPOSED OPINION AND TESTIMONY ARE IRRELEVANT ........ 10

III. DR. BORGIDA SHOULD BE PRECLUDED FROM OFFERING HIS CASE-SPECIFIC
     OPINION ABOUT BLOOMBERG BECAUSE ITS PREJUDICIAL EFFECT EXCEEDS
     ANY PROBATIVE VALUE ....................................................................................... 11

CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arnold v. Cargill, Inc.*,
   No. 01-2086, 2006 WL 1716221 (D. Minn. June 20, 2006)..................................................4, 9

*Butler v. Home Depot, Inc.*,
   984 F. Supp. 1257 (N.D. Cal. 1997) .................................................................................2, 10

*Cooper v. Southern Co.*,
   205 F.R.D. 596 (N.D. Ga. 2001)...........................................................................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993).................................................................................................1, 4, 5, 13

*Downey v. Coalition Against Rape and Abuse Inc.*,
   No. 99-3370 (D.N.J. Sept. 18, 2003) ................................................................................5, 10

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) (en banc) ...............................................................................3, 4

*EEOC v. Morgan Stanley & Co.*,
   324 F. Supp. 2d 451 (S.D.N.Y. 2004)...............................................................................11, 12

*EEOC v. Morgan Stanley & Co.*,
   No. 01 Civ. 8421, 2004 WL 1542264 (S.D.N.Y. July 8, 2004) .............................................12

*EEOC v. Wal-Mart Stores, Inc.*,
   No. 6:01-CV-339 KKC, 2010 WL 583681 (E.D. Ky. Feb. 16, 2010)................................10, 11

*Ellis v. Costco Wholesale Corp.*,
   240 F.R.D. 627 (N.D. Cal. 2007)............................................................................................4

*Gosho v. U.S. Bancorp Piper Jaffray, Inc.*,
   No. C-00-1611-PJH (N.D. Cal. Oct. 1, 2002)..........................................................................5

*Hnot v. Willis Group Holdings Ltd.*,
   No. 01 Civ. 6558, 2007 WL 1599154 (S.D.N.Y. June 1, 2007)...........................................2, 3

*Hurst v. F.W. Woolworth Co.*,
   No. 95 Civ. 6584, 1997 WL 685341 (S.D.N.Y. Nov. 3, 1997) .............................................4, 6

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
  470 F. Supp. 2d 345 (S.D.N.Y. 2007)......................................................................................4

*Jenson v. Evelth Taconite Co.*,
  824 F. Supp. 847 (D. Minn. 1993).................................................................................3, 4, 9

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................................................1

*Madison v. IBP, Inc.*,
  149 F. Supp. 2d 730 (S.D. Iowa 1999) ..................................................................................4

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005)......................................................................................................8

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989)......................................................................................................................4

*Ray v. Miller Meester Advertising, Inc.*,
  664 N.W.2d 355 (Minn. Ct. App. 2003)................................................................................6

*Robinson v. Jacksonville Shipyards, Inc.*,
  760 F. Supp. 1486 (M.D. Fla. 1991).................................................................................3, 4

*Robinson v. Metro-North Commuter Railroad Co.*,
  175 F.R.D. 46 (S.D.N.Y. 1997) .............................................................................................13

*Robinson v. Metro-North Commuter Railroad Co.*,
  267 F.3d 147 (2d Cir. 2001)...................................................................................................13

*Serrano v. Cintas Corp.*,
  Nos. 04-40132, 06-12311, 2009 WL 910702 (E.D. Mich. Mar. 31, 2009) ............................13

*Tuli v. Brigham & Women's Hosp., Inc.*,
  592 F. Supp. 2d 208 (D. Mass. 2009) .............................................................................3, 4, 9

*United States v. Rosa*,
  17 F.3d 1531 (2d Cir. 1994).............................................................................................2, 12

*United States v. Williams*,
  506 F.3d 151 (2d Cir. 2007)......................................................................................................2

*Velez v. Novartis Pharmaceuticals Corp.*,
  No. 04 Civ. 9194 (S.D.N.Y. Feb. 25, 2010) ............................................................................6

*Zenith Elec. Corp. v. WH-TV Broad. Corp.*,
  395 F.3d 416 (7th Cir. 2005) ..................................................................................................10

**R**ULES

Federal Rule of Civil Procedure 26(a)(2)(B) .................................................................................1

Federal Rule of Evidence 403 ..................................................................................................1, 11

Federal Rule of Evidence 702 ........................................................................................................1

I.  **DR. BORGIDA'S PROPOSED OPINION AND TESTIMONY ARE UNRELIABLE**

In its opening brief, Bloomberg established that Dr. Borgida's proposed opinion and testimony exhibit numerous hallmarks of unreliability. Dr. Borgida did not use any transparent, reproducible method to arrive at his sweeping, unprecedented opinion that gender stereotyping "more likely than not" occurred company-wide at Bloomberg; he did not address any counterarguments or countervailing evidence in his report, and instead chose to rely on cherry-picked anecdotes, many of which EEOC selected for him; and he improperly made credibility determinations and misrepresented the record. Dr. Borgida's testimony should be excluded because it fails the standards mandated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Federal Rules of Evidence 702 and 403, and Federal Rule of Civil Procedure 26(a)(2)(B). EEOC's opposition largely ignores the *Daubert* principles that govern the admissibility of Dr. Borgida's testimony, misleadingly argues that an expert's self-styled "social framework analysis" is necessarily admissible, and mischaracterizes Dr. Borgida's testimony.

   A.  **EEOC'S RELIANCE ON SO-CALLED "SOCIAL FRAMEWORK" CASES IS UNAVAILING**

EEOC's principal response to Bloomberg's motion is to discount almost all of Bloomberg's authority as "irrelevant" because it "do[es] not concern" ostensible "social framework analysis," which EEOC suggests is *per se* admissible. EEOC's Memorandum of Law in Opposition to Defendant's Motion to Exclude the Reports and Testimony of Dr. Eugene Borgida ("Pl. Mem.") at 13. But "social framework analysis" is not a unitary, well-defined methodology, and merely labeling Dr. Borgida's approach as social framework analysis cannot satisfy *Daubert*. Rather, Dr. Borgida's methodology in *this* case must be tested independently against the *Daubert* standard. *See, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 153, 154 (1999). EEOC's argument obscures the myriad differences between the cases that it

cites and the circumstances at issue here, including different expert conclusions and methodologies, different underlying allegations, and different procedural postures.

*First*, EEOC does not cite *any* case, and Bloomberg is not aware of any, in which an expert was permitted to offer a company-wide opinion that "stereotypic perceptions *more likely than not influenced* employment decisions about employees who are mothers and/or pregnant." Borgida Report at 38-39[1] (emphasis added).  Unlike other cases in which stereotyping experts did "not contend that [their] examples are representative of the experiences of all" individuals, but rather "used [case-specific] examples as *illustrations* of [a] stereotyping model," *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1263-64 (N.D. Cal. 1997) (emphasis added),[2] Dr. Borgida proposes to testify here that "[i]n theory," *every* woman at Bloomberg who was pregnant and/or a mother had a decision made about her during class period that was influenced by gender stereotypes.  Borgida Dep. at 108-09.[3]  According to EEOC, that conclusion by itself establishes liability.  Pl. Mem. at 9.  And Dr. Borgida assigned a probability to his conclusion—"more likely than not," Batog Decl. Ex. 1 (Borgida Rep.) at 38-39—that precisely tracks the preponderance-of-the-evidence standard applicable to EEOC's claims.  *See, e.g.*, *United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir. 1994).  EEOC bears the burden to demonstrate the admissibility of Dr. Borgida's opinion and testimony, *see United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007), yet EEOC has not shown that there is any other case in which such sweeping testimony about the company-wide effects of gender stereotyping, phrased in so prejudicial a manner, was

---

[1] Annexed as Exhibit 1 to Konrad Batog's Declaration in Opposition to Defendant's Motion to Exclude the Reports and Testimony of Dr. Eugene Borgida ("Batog Decl.").

[2] *See also, e.g.*, *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558, 2007 WL 1599154, at *3 (S.D.N.Y. June 1, 2007) (noting that "Borgida identifies particular features of defendants' workplaces as *illustrating* factors noted in the literature") (emphasis added).

[3] Annexed as Exhibit B of Eric S. Dreiband's Declaration in Support of Defendant's Motion to Exclude the Reports and Testimony of Dr. Eugene Borgida ("Dreiband Decl.").

admitted.  To the contrary, in one case cited by EEOC, a proposed "expert in social framework analysis" was allowed to testify precisely because he did *not* "opin[e] about the case at bar," which would "not [be] possible . . . to a reasonable degree of scientific certainty about a real world case."  *Tuli v. Brigham & Women's Hosp., Inc.*, 592 F. Supp. 2d 208, 214 (D. Mass. 2009).

*Second*, in other cases, proposed stereotyping experts—including Dr. Borgida himself—have used more rigorous methodologies than Dr. Borgida employed here.  In *Jenson v. Evelth Taconite Co.*, 824 F. Supp. 847, 881 (D. Minn. 1993), Dr. Borgida relied on reports by both plaintiffs' and defendants' experts, including evidence of statistical disparities.  He thus had some independent basis for identifying the case-specific facts to which stereotyping theory might apply, rather than acting as the sole fact-finder himself.  Here, by contrast, Dr. Borgida testified that the statistical reports produced by Drs. Ward, Johnson, and Lanier had no bearing on his case-specific opinion, *see* Breshin Decl. Ex. A (Borgida Dep.) at 15-16,[4] which he in effect intuited "subjectively."  Dreiband Decl. Ex. B (Borgida Dep.) at 87.  Relatedly, *Jenson* and other sexual harassment cases on which EEOC relies are inapposite, because testimony about stereotyping may "confirm[]" and explain independent evidence of a hostile work environment.  *Jenson*, 824 F. Supp. at 882-83; *see also Robinson v. Jacksonville Shipyards, Inc.*, 760 F. Supp. 1486 (M.D. Fla. 1991).  But EEOC does not assert such sexual harassment claims here.

*Third*, in some cases cited by EEOC, the reliability of the proposed expert's methodology was not even in dispute.  *See, e.g.*, *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558, 2007 WL 1599154, at *2 (S.D.N.Y. June 1, 2007) (noting that defendants' counter-expert "agrees that Borgida's basic methods are scientifically appropriate"); *Dukes v. Wal-Mart Stores, Inc.*, 603

---

[4] Defendant's Reply Memorandum to Exclude the Reports and Testimony of Dr. Eugene Borgida is supported by the Declaration of Hannah M. Breshin ("Breshin Decl.") and accompanying exhibits.

F.3d 571, 602 (9th Cir. 2010) (en banc) (noting that "Wal-Mart did not (and does not) challenge [proposed expert's] methodology"); *Hurst v. F.W. Woolworth Co.*, No. 95 Civ. 6584, 1997 WL 685341, at *1 (S.D.N.Y. Nov. 3, 1997) (noting that "defendant does not contend that [expert's] scientific methodology fails to pass muster under *Daubert*"). Likewise, in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 255 (1989), the defendant waived any challenge to the admissibility of expert testimony about stereotyping at trial altogether, *see id.* at 255, as noted by the amicus brief that Dr. Borgida joined, *see* Br. for Amicus Curiae Am. Psychological Ass'n in Support of Respondent, *Price Waterhouse*, 490 U.S. 228 (No. 87-1167), 1988 WL 1025869, at *1 n.2. And *Price Waterhouse*, like other cases cited by EEOC, pre-dated *Daubert*, which requires careful analysis of the relevance and reliability of proposed testimony offered in each individual case. *See also Jenson*, 824 F. Supp. 847; *Robinson*, 760 F. Supp. 1486.

*Fourth*, several of EEOC's cases address the admissibility of so-called social framework analysis in support of class certification, not on the merits. *See, e.g.*, *Dukes*, 603 F.3d at 602; *Arnold v. Cargill, Inc.*, No. 01-2086, 2006 WL 1716221 (D. Minn. June 20, 2006); *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627 (N.D. Cal. 2007). Not only does the issue at the class certification stage—whether there are common questions of law or fact—differ from the merits inquiry in a pattern-or-practice case, *see Arnold*, 2006 WL 1716221, at *8, but numerous courts have held that the "robust gatekeeping of expert evidence" mandated by *Daubert* at the merits stage "is not required" in determining class certification. *Ellis*, 240 F.R.D. at 635.

*Finally*, many cases cited by EEOC involved allegations of discrimination by a single plaintiff. *See, e.g.*, *Price Waterhouse*, 490 U.S. 228; *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345 (S.D.N.Y. 2007); *Madison v. IBP, Inc.*, 149 F. Supp. 2d 730 (S.D. Iowa 1999); *Hurst*, 1997 WL 685341; *Tuli*, 592 F. Supp. 2d 208. It is one thing to

4

admit so-called social framework analysis about gender stereotyping to address the narrow circumstance and limited record of a single employee's work experience. It is quite another to permit Dr. Borgida to opine that stereotypic thinking "more likely than not" influenced employment decisions throughout Bloomberg, a multinational organization with over 11,000 employees, absent any showing that he systematically reviewed the relevant data and ensured its representativeness in a way that would support such company-wide findings.

By contrast, Bloomberg demonstrated in its opening brief that *Daubert* requires the exclusion of Dr. Borgida's testimony, and that other courts have applied these generally applicable *Daubert* principles to exclude Dr. Borgida's testimony. *See* Defendant's Motion to Exclude the Reports and Testimony of Dr. Eugene Borgida ("Def. Mot.") at 8-14.[5] EEOC's effort to distinguish these cases excluding Dr. Borgida's testimony is futile.

In *Downey v. Coalition Against Rape and Abuse Inc.*, No. 99-3370 (D.N.J. Sept. 18, 2003), Dreiband Decl. Ex. F, the court excluded Dr. Borgida's testimony because, as the defendants put it, Dr. Borgida "failed to establish any credible grounds supporting the link between his general theories on gender stereotyping and his opinion that gender stereotyping of plaintiff resulted in her termination . . . ." Slip op. at 14; *see also id.* at 22. Dr. Borgida's testimony here should be excluded for the same reason: He has not used any method that would allow him to apply gender stereotyping theories reliably to the facts of this case and conclude that stereotypic thinking more likely than not had a companywide influence on decisions about women who are pregnant and/or mothers. Nor is *Downey* distinguishable because it "was not a

---

[5] *See also Gosho v. U.S. Bancorp Piper Jaffray, Inc.*, No. C-00-1611-PJH, Order re: Motions to Strike Expert Opinion Testimony, at 6-8 (N. D. Cal. Oct. 1, 2002) (excluding proposed social framework testimony as unreliable "because [plaintiffs] make no showing that [the expert's] theory can be tested" and because the expert's opinion depended on a "compilation of impressions and anecdotes"). Breshin Decl. Ex. B at 6-8.

5

pattern or practice case." Pl. Mem. at 11. *Hurst*, on which EEOC relies for this proposition, was itself a *single-plaintiff* case that recognized that stereotyping evidence may apply "with equal force" to individual and collective actions. 1997 WL 685341, at *2.

EEOC's attempt to turn *Ray v. Miller Meester Advertising, Inc.*, 664 N.W.2d 355 (Minn. Ct. App. 2003), to its advantage is also unavailing. The court in *Ray* contrasted Dr. Borgida's testimony, which it found singularly unhelpful, with an expert's "*statistical* demonstration" that might "help" to "uncover[]" a "pattern of gender discrimination," but it did not suggest that Dr. Borgida's testimony would be any more admissible in a pattern-or-practice case than in a single-plaintiff case. *Id.* at 366 (emphasis added).[6]

### B. EEOC MISCHARACTERIZES DR. BORGIDA'S OPINION AND TESTIMONY

Not only does EEOC incorrectly treat all cases involving self-professed social framework experts as if they were interchangeable, but it also misrepresents Dr. Borgida's opinion.

*First*, EEOC repeatedly mischaracterizes Dr. Borgida's testimony and opinion in arguing that he merely uses "case facts to *illustrate* and highlight the relevant science" concerning gender stereotyping. Pl. Mem. at 6; *see also id.* at 1, 7, 19. Dr. Borgida's report in no way limits his use

---

[6] EEOC argues in passing that *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 9194, (CM), Doc. 270, at *7 (S.D.N.Y. Feb. 25, 2010), Dreiband Decl. Ex. G, supports its argument because the court denied the defendant's motion to exclude the testimony of Dr. James Outtz, an expert on "employment practices and procedures" and "human resource policies." But Dr. Outtz's testimony had nothing to do with gender stereotyping. The court explained that Dr. Outtz proposed to testify about the ways in which "excessive subjectivity in an evaluation system creates a likelihood that there will be discriminatory exercises of discretion"—but "Dr. Outtz's testimony [was] not relied on to establish the existence of . . . a culture" at the company that leads "subjective decision-making" to "operate[] in a discriminatory manner." *Id.* Dr. Borgida, by contrast, seeks to offer precisely the sort of testimony about gender stereotyping and organizational culture that the *Novartis* court precluded Professor Deborah Rhode from offering. *See id.* at 8-9 (describing proposed testimony about "sexualized treatment of women workers," "discriminatory treatment of pregnant women and working mothers," "motherhood penalties," "gender differences in workplace opportunities and recognition," and "inadequate accountability") (initial capital letters omitted).

6

of case examples to illustrations.  To the contrary, he proposes to testify, without qualification, that "the stereotypes about employees who are mothers and/or pregnant more likely than not influenced the perceptions, evaluations, and decisions about them at Bloomberg."  Batog Decl. Ex. 1 (Borgida Rep.) at 38.  In his deposition, he testified that his opinion is that, "[i]n theory," "*every* woman who became pregnant at Bloomberg from 2002 to 2008 more likely than not had a decision made about [her] that was influenced by gender stereotyping thinking."  Dreiband Decl. Ex. B (Borgida Dep.) at 108-09 (emphasis added).  And he further clarified that this opinion "was referring to the [Bloomberg] organization at large," and was not limited to any "particular group" within the company.  Dreiband Decl. Ex. B (Borgida Dep.) at 85-86.

*Second*, EEOC distorts the record in arguing that Dr. Borgida "did not make credibility determinations" in reaching his opinions.  Pl. Mem. at 5, 15.  While Dr. Borgida initially asserted that he accepted all deposition testimony as true, a policy that he applied consistently to claimants, Dreiband Decl. Ex. B (Borgida Dep.) at 161-62, 165-66, he applied this policy only selectively to company representatives.  For example, Dr. Borgida discredited the sworn testimony of Peter Grauer, Bloomberg's Chairman, that the company's no-rehire policy did not apply to employees who leave the company to raise a family.  Def. Mot. at 13.  Instead, Dr. Borgida credited an ambiguous, incomplete e-mail in which Mr. Grauer supposedly indicated that he was "inclined" to limit the exception, and Dr. Borgida refused to "back off" from his characterization of the e-mail in his report even when shown that the e-mail in its entirety *confirmed* Mr. Grauer's deposition testimony.  *Id.*

EEOC argues that the "raise a family" exception to Bloomberg's no-rehire policy was in fact removed from the company's employee handbook.  Pl. Mem. at 15.  But the exception for "car[ing] for a family member," which replaced the language about raising a family in the

7

employee handbook, "encompass[es] caring for children." *See* Batog Decl. Ex. 4 (Tetlock Dep.) at 486-87.  In any event, the key point is not what became of the "raising a family" exception, but that Dr. Borgida did not *care* about what happened to the exception.  Instead, he chose to cherry-pick snippets from the record that supported his conclusions without regard for their context or accuracy, or for whether they could be disproved.  Such an unscientific methodology renders his testimony unreliable as a matter of law.  *See, e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 397-98 (2d Cir. 2005).

Dr. Borgida also selectively credited testimony by Michael Bloomberg while effectively discrediting other testimony by Mr. Bloomberg that contradicted Dr. Borgida's conclusions.  *See* Def. Mot. at 5, 13.  EEOC's argument that Defendant does not "cite to any portion of Dr. Borgida's report or testimony" supporting this contention, Pl. Mem. at 15-16, is disingenuous, because Dr. Borgida's *failure* to cite Mr. Bloomberg's deposition testimony about the "raise a family" exception, *see* Dreiband Decl. Ex. D (Bloomberg Dep.) at 42, is what proves that Dr. Borgida ignored (and effectively discredited) this testimony.  By contrast, Dr. Borgida relied extensively on nearby pages of Mr. Bloomberg's testimony where doing so served his purposes.  *See* Dreiband Decl. Ex. A (Borgida Rep.) at 18-19 (citing Bloomberg Dep. at 34, 36, 38, 44-45).  Moreover, Dr. Borgida's misrepresentation of the record extends beyond these examples, as Dr. Tetlock established in a report that EEOC does not challenge (and thereby concedes is admissible).  *See* Dreiband Decl. Ex. C (Tetlock Rep.) at 22-30.

*Third*, EEOC misrepresents the record and misunderstands Bloomberg's argument when it insists that Dr. Borgida conducted an "extensive review of the case materials."  Pl. Mem. at 1, 4-7, 13, 15-17.  Dr. Borgida admits that he only "quickly" read the statistical reports of Drs. Ward, Johnson, and Lanier, and that they have no bearing on his opinion in this case.

8

Breshin Decl. Ex. A (Borgida Dep.) at 15-16.  Thus, at a minimum, his company-wide opinion is based on a fundamentally incomplete assessment of the record because he did not study or rely upon available statistics, as he himself has done in past cases.  *See Jenson*, 824 F. Supp. at 881.  Moreover, whatever Dr. Borgida actually reviewed, he utterly failed to offer any transparent or reproducible method for how he accounted for these materials, to explain why he discounted Bloomberg's counterexamples, or to justify why he relied on EEOC *both* to provide case materials *and*, just before he submitted his report, to select "better examples" of the "points" that he had decided to make.  Dreiband Decl. Ex. B (Borgida Dep.) at 149-50; *see* Def. Mot. at 8-14.  Indeed, by his own admission, he did not "deploy" any "specific methodology" in reviewing the record.  He chose instead to "dog-ear" "points that [he] thought illustrated" his conclusions, and he completely failed to track counterexamples or "disconfirming" evidence because "[t]hat wasn't [his] goal."  Dreiband Decl. Ex. B (Borgida Dep.) at 96, 138, 142, 147, 150-51, 156, 158.  And, despite proposing to offer a company-wide opinion about gender stereotyping, he was unable to determine the number of decisions at Bloomberg purportedly affected by stereotyping or to identify examples of stereotyping in each of the months or years in the class period, by each of the managers at Bloomberg, or within each department of the company.  *See* Breshin Decl. Ex. A (Borgida Dep.) at 85-86, 90, 98-99, 105-06, 110,373.  These collective failures in his methodological approach to the record—rather than just an *incomplete* review of the record—are what renders his testimony unreliable and inadmissible.  *See* Def. Mot. at 8-14.

It is no answer to say that a "social framework analysis" does not require "empirical methodologies."  Pl. Mem. at 13.  While a social scientist's methods need not be "quantifiable," *Arnold*, 2006 WL 1716221, at *7, and need not involve first-hand interviews of employees in the context of litigation, *see id.*; *Tuli*, 592 F. Supp. 2d at 214, Dr. Borgida was still required to use

9

and explain *some* transparent and systematic methodology for approaching the record, rather than relying on his own subjective "intuition."  *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005); *see also* Def. Mot. at 8-14.  Moreover, while an expert who "does not contend that her examples are representative of the experiences of all [employees] at [a company]" may be permitted to use "non-representative sampling techniques," *Butler*, 984 F. Supp. at 1263-644, Dr. Borgida *does* contend that his review of the record allows him to conclude that "*every* woman who became pregnant at Bloomberg from 2002 to 2008 more likely than not had a decision made about [her] that was influenced by gender stereotyping thinking."  Dreiband Decl. Ex. B (Borgida Dep.) at 108-09 (emphasis added).  His failure to use a reliable methodology to reach such a sweeping conclusion renders his testimony inadmissible.

## II.    DR. BORGIDA'S PROPOSED OPINION AND TESTIMONY ARE IRRELEVANT

Bloomberg also established in its opening brief that Dr. Borgida's proposed opinion and testimony should be excluded because they do not fit the legal issues of this case, in which EEOC alleges intentional discrimination, because Dr. Borgida is unable to state whether the gender stereotypic thinking that he attributes to Bloomberg happens intentionally or not.  *See* Def. Mot. at 16-18.

As the court explained in *EEOC v. Wal-Mart Stores, Inc.*, No. 6:01-CV-339 KKC, 2010 WL 583681 (E.D. Ky. Feb. 16, 2010), proposed social framework testimony that "makes clear that gender stereotyping does not even necessarily include intentional discrimination," and can instead "occur subconsciously," should be excluded because it is irrelevant to an alleged claim of *intentional* discrimination.  *Id.* at *3; *see also* Dreiband Decl. Ex. F (*Downey v. The Coalition Against Rape and Abuse, Inc.*) at 18 (excluding Dr. Borgida's testimony because it was "not relevant to proving any facts supporting [plaintiff's] claim").

EEOC principally attempts to distinguish *Wal-Mart* because Dr. Borgida opines that "Bloomberg's culture, policies, and practices likely triggered *conscious as well as implicit* stereotyping." Pl. Mem. at 10 (emphasis added). But Dr. Borgida testified that he is unable to separate the effects of subconscious from intentional stereotyping. *See, e.g.*, Dreiband Decl. Ex. B (Borgida Dep.) at 444-45. Indeed, he believes that, at any given time, either or both may be occurring. *See id.* at 443-48. Because only intentional discrimination is relevant to EEOC's pattern-or-practice claim, *see Wal-Mart*, 2010 WL 583681, at *3, and Dr. Borgida is unable to state when *intentional* discrimination is occurring at Bloomberg, his testimony and opinion are no more relevant than the testimony excluded in *Wal-Mart*. Moreover, if anything, the prejudice arising from Dr. Borgida's inextricable commingling of grounds for the stereotyping that he purports to identify provides all the more reason to exclude his testimony. *See* Fed. R. Evid. 403.

### III. DR. BORGIDA SHOULD BE PRECLUDED FROM OFFERING HIS CASE-SPECIFIC OPINION ABOUT BLOOMBERG BECAUSE ITS PREJUDICIAL EFFECT EXCEEDS ANY PROBATIVE VALUE

At a minimum, Dr. Borgida should be precluded from offering any case-specific opinion about Bloomberg, because his proposed opinion that gender stereotypic thinking "more likely than not" influenced decisions at Bloomberg is more prejudicial than probative and should be excluded under Federal Rule of Evidence 403.

As Bloomberg explained in its opening brief, this Court, in *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 462 (S.D.N.Y. 2004), has already excluded such case-specific opinions by a proposed social framework expert, Dr. William Bielby. While this Court permitted Dr. Bielby to testify about gender stereotyping generally, *id.*, it rejected as unfairly prejudicial Dr. Bielby's testimony about a "male-dominated environment," "highly subjective and arbitrary" decisionmaking, "inadequate" and "insufficient[ly] monitor[ed]" guidelines for "promotions and pay decisions," and an inadequate "practice for investigating complaints" in the defendant's

11

organization. *EEOC v. Morgan Stanley & Co.*, No. 01 Civ. 8421, 2004 WL 1542264, at *3 & n.2 (S.D.N.Y. July 8, 2004) (reaffirming earlier order).

Contrary to EEOC's argument, Pl. Mem. at 19, the factual conclusions that Dr. Borgida offers about Bloomberg are virtually identical to those excluded in *Morgan Stanley*. For example, Dr. Borgida concludes that, "[g]iven the *subjectivity, discretion, and lack of accountability in the Bloomberg decision making process*, stereotypic perceptions more likely than not influenced employment decisions about employees who are mothers and/or pregnant." Batog Decl. Ex. 1 (Borgida Rept.) at 38-39 (emphasis added). He opines that Bloomberg "employees who are mothers and/or pregnant" are perceived "as being less competent," *id.* at 30, 37. And he concludes that *every* woman at Bloomberg who was pregnant and/or a mother had a decision made about her during class period that was influenced by gender stereotypes, Dreiband Decl. Ex. B (Borgida Dep.) 108-09—a conclusion that contradicts EEOC's wholly unsupported assertion that "he does not testify that [his] examples are representative of the experiences of all pregnant women and mothers at Bloomberg." Pl. Mem. at 19.

Dr. Borgida's opinion—which is based on a complete absence of methodology, and which effectively requires Bloomberg to *disprove* discriminatory intent—is far more prejudicial than probative, and should be excluded like the case-specific opinions in *Morgan Stanley*. In fact, Dr. Borgida's opinion is even *more* prejudicial than the excluded opinions in *Morgan Stanley* because of Dr. Borgida's unprecedented formulation of his opinion to track the "more likely than not" burden of proof for EEOC's claims. *See Rosa*, 17 F.3d at 1542. The concern that this Court expressed about potential "confus[ion] about [EEOC's] burden of proof," *Morgan Stanley*, 324 F. Supp. 2d at 462, is thus all the more acute here. Dr. Borgida's proposed opinion is akin to an opinion by an expert in a criminal case offered with a degree of confidence "beyond

12

a reasonable doubt"—which no court would allow.  And the unfair prejudice caused by Dr. Borgida's opinion is further compounded by his complete lack of interest in (and the absence of) any relevant statistical disparities that gender stereotyping might explain.

Finally, EEOC cannot distinguish the cases that Bloomberg cited in its opening brief to establish that Dr. Borgida's opinion lacks any probative value.  Pl. Mem. at 19 n.13.  The court in *Serrano v. Cintas Corp.*, Nos. 04-40132, 06-12311, 2009 WL 910702, at *2 (E.D. Mich. Mar. 31, 2009), admitted the report at issue despite giving it no weight only because a "*Daubert* analysis" at "the class certification stage" was "unnecessary."  *Cooper v. Southern Co.*, 205 F.R.D. 596, 611 & n.24 (N.D. Ga. 2001), establishes that an expert's testimony that makes "wide-ranging assertions and conclusions based entirely on a set of documents provided for [the expert's] review" by an interested party "has no usefulness"—a principle that does not depend on whether the expert's testimony concerned stereotyping.  And the Second Circuit, in *Robinson v. Metro-North Commuter Railroad Co.*, 267 F.3d 147 (2d Cir. 2001), reversed the district court without so much as mentioning the proposed social framework testimony to which the district ascribed "[n]o meaningful weight," *Robinson v. Metro-North Commuter Railroad Co.*, 175 F.R.D. 46, 48 (S.D.N.Y. 1997).

## CONCLUSION

For the foregoing reasons, and those contained in Bloomberg's opening brief, Dr. Borgida's proposed opinion and testimony should be excluded in their entirety.  At a minimum, Dr. Borgida should be precluded from offering any case-specific opinions about Bloomberg.

Dated: June 25, 2010                WILLKIE FARR & GALLAGHER LLP


By:  /s/ Thomas H. Golden
    Thomas H. Golden (TG 1467)
    tgolden@willkie.com
    (A Member of the Firm)
    787 Seventh Avenue
    New York, New York 10019
    (212) 728-8000

- and -

JONES DAY

By:  /s/ Eric S. Dreiband
    Eric S. Dreiband *(admitted pro hac vice)*
    edreiband@JonesDay.com
    (A Member of the Firm)

    51 Louisiana Avenue, N.W.
    Washington, DC 20001
    (202) 879-3939

# CERTIFICATE OF SERVICE

The undersigned certifies that, on June 25, 2010, I caused a copy of Defendant's Reply Memorandum in Support of Defendant's Motion to Exclude the Reports and Testimony of Dr. Eugene Borgida to be served by e-mail upon the following counsel of record:

Kam Wong, Esq.
Raechel Adams, Esq.
Robert Rose, Esq.
United States Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004
kam.wong@eeoc.gov
raechel.adams@eeoc.gov
robert.rose@eeoc.gov

Attorneys for Plaintiff Equal Employment Opportunity Commission

Milo Silberstein, Esq.
William Dealy, Esq.
Dealy & Silberstein, LLP
225 Broadway, Suite 1405
New York, New York 10007
msilberstein@dealysilberstein.com
wjd@dealysilberstein.com

Attorneys for Plaintiff-Intervenors Jill Patricot, Tanys Lancaster, Janet Loures and Marina Kushnir

Richard A. Roth, Esq.
Jonah Grossbardt, Esq.
The Roth Law Firm, PLLC
295 Madison Avenue, 22nd Floor
New York, New York, USA 10017
rich@rrothlaw.com
jonah@rrothlaw.com

Attorneys for Plaintiff-Intervenors Monica Prestia and Maria Mandalakis

/s/   Hannah M. Breshin
Hannah M. Breshin (hmbreshinotero@jonesday.com)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939