USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/25/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY        :
COMMISSION,                         :          07 Civ. 8383 (LAP)
                                    :
          Plaintiff,                :          OPINION & ORDER
                                    :
     v.                             :
                                    :
BLOOMBERG L.P.,                     :
                                    :
          Defendant.                :
------------------------------------X
JILL PATRICOT, TANYS LANCASTER,     :
JANET LOURES, MONICA PRESTIA,       :
MARINA KUSHNIR and MARIA            :
MANDALAKIS,                         :
                                    :
          Plaintiffs-Intervenors,   :
                                    :
     v.                             :
                                    :
BLOOMBERG L.P.,                     :
                                    :
          Defendant.                :
------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

     Plaintiff, the Equal Employment Opportunity Commission

("EEOC"), filed this action against Defendant Bloomberg L.P.

("Bloomberg") after several current and former employees had

filed charges with the EEOC alleging sex/pregnancy

discrimination and retaliation[1] in violation of Title VII of the

_____

[1] Claimants Jill Patricot, Tanys Lancaster, and Janet Loures
filed charges with the EEOC alleging sex/pregnancy
discrimination by Bloomberg.  (Second Amended Compl. ¶ 6.)  They
are referred to throughout as the "Charging Parties."  Later,
claimants Jill Patricot, Janet Loures, Maria Mandalakis, and
Marina Kushnir filed charges with the EEOC alleging (cont'd)

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e(k), 2000e-2. (Second Amended Compl. ¶¶ 1, 6.) Generally, the complaint alleged that Bloomberg had discriminated and/or retaliated against the claimants and other similarly situated employees after they had announced their pregnancies and had returned to work following maternity leave. (Id. ¶¶ 7, 9.)

Before the Court are two motions for summary judgment brought by Bloomberg. One motion seeks summary judgment on all of the EEOC's claims due to the EEOC's alleged failure to conciliate prior to bringing suit. The other seeks summary judgment on claims Bloomberg argues are time-barred. For the reasons set forth below, Defendant's Motion for Summary Judgment for Failure to Conciliate [dkt. no. 103] is DENIED in part and GRANTED in part. Defendant's Motion for Summary Judgment as to Time-Barred Claims [dkt. no. 99] is GRANTED.

I. SUMMARY JUDGMENT STANDARD

Bloomberg will not prevail on its motions for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

retaliation and sex/pregnancy discrimination by Bloomberg. (Id.) This set of claimants is referred to throughout as the "Retaliation Charging Parties."

judgment as a matter of law." Fed. R. Civ. P. 56(c); see also
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In
determining whether summary judgment is appropriate, a court
must resolve all ambiguities and draw all reasonable inferences
against the moving party.  See Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 587 (1986); Vivenzio v. City
of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  Summary judgment
is improper "if there is any evidence in the record from any
source from which a reasonable inference could be drawn in favor
of the nonmoving party" on a material issue of fact.  Vivenzio,
611 F.3d at 106.

II. FAILURE TO CONCILIATE

        Although the EEOC is authorized to bring suit to enforce
the requirements of Title VII, 42 U.S.C. § 2000e-5(f), Congress
requires it to attempt to "eliminate any such alleged unlawful
employment practice by informal methods of conference,
conciliation, and persuasion," id. § 2000e-5(b), before filing
suit.  EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534-35
(2d Cir. 1996).

        Bloomberg argues that the EEOC's discrimination action
should be dismissed because the EEOC failed to meet its
statutory obligation to conciliate both the discrimination
claims and the retaliation claims before bringing suit.

Bloomberg asseverates that the EEOC (1) did not adequately investigate the charges eventually filed in the lawsuit or provide Bloomberg with adequate notice of the charges to allow for sufficient conciliation and (2) failed to make a good faith effort to conciliate the charges.  (Bloomberg Br. at 7-9.)[2]  The Court divides its analysis along these lines.

    A. <u>Notice and Investigation</u>

Bloomberg makes its notice and investigation arguments first as to the sex discrimination claims and then as to the retaliation claims.  It then argues, in the alternative, that the EEOC's investigation was geographically limited, so the litigation should be so limited as well.  The Court addresses these arguments in that order.

    1. Discrimination Claims

Bloomberg argues that the EEOC's investigation did not cover all of the claims it eventually filed.  (<u>Id.</u> at 6.)  It also argues that because the EEOC provided Bloomberg with insufficient notice that the sex discrimination charges included class-type claims, Bloomberg did not have an opportunity to conciliate such claims.  (<u>Id.</u> at 7.)  The Court rejects these arguments.

---

[2] Citations to briefs in Part II of this opinion refer to the parties' briefs on the conciliation issues.

The EEOC began its investigation after three women, the Charging Parties, filed sex/pregnancy discrimination charges with the EEOC against Bloomberg.  (EEOC R.56.1 Statement on Conciliation Claims ¶¶ 1-4 ("EEOC Concil. 56.1").)  The Charging Parties alleged in their EEOC charges of discrimination that Bloomberg discriminated against other women who had returned from maternity leave or had small children at home.[3] (Declaration of Kam S. Wong ("Wong Decl.") Ex. 1-3.)  The charges alleged a "pervasive bias" at Bloomberg against pregnant employees or those with newborns.  (Id. Exs. 2-3.)

Following these leads, the EEOC expanded its investigation into Bloomberg's related employment practices more generally. For example, the EEOC asked for and received from Bloomberg information with respect to hundreds of women who had taken maternity leave companywide.  (Id. Ex. 19; EEOC Concil. 56.1 ¶ 182.)  It investigated the diminished number of employees who reported to females following their pregnancies.  (EEOC Concil. 56.1 ¶ 188.)  It interviewed other potential claimants, requested information from Bloomberg about twenty-four other

---

[3] The parties dispute the substance behind certain factual statements in this and the following four paragraphs. Nevertheless, the issue the Court addresses in this section is whether Bloomberg had notice of the charges pursued by the EEOC and whether the parties attempted good-faith conciliation prior to the lawsuit.  No party disputes whether these events occurred, however.  Therefore, any factual disputes are immaterial.

employees who had been on parental leave, received information about fourteen other similar claimants who were demoted, and interviewed those and other potential claimants. (Id. ¶¶ 10, 188-190, 192-196.)

On June 27, 2007, the EEOC sent Bloomberg a Letter of Determination ("LOD") regarding the sex/pregnancy discrimination claims, a proposed conciliation agreement, and additional monetary demands from the Charging Parties. (Id. ¶ 198.)  The LOD laid out the Charging Parties' basic allegation:

> They were all employees [of Bloomberg] and were well
> regarded for their work performance . . . until they
> became pregnant and then took maternity leave.
> Thereafter, job functions and responsibilities were
> taken away from them, the number of their direct
> reports was reduced, they were demoted . . . , they
> experienced declines in compensation, and they were
> otherwise discriminated against . . . .

(Wong Decl. ¶ 26, at EE00013.)  The LOD then set forth examples from the Charging Parties' specific allegations. (Id. at EE00014.)

The LOD did not stop with the Charging Parties' claims, however.  It stated that the "Charging Parties' claims of discrimination on account of sex/pregnancy were echoed by a number of other female current and former employees who have taken maternity leave.  EEOC's investigation shows that their careers lost momentum and that they were transferred, displaced, and/or demoted."  (Id.)  Its conclusion was succinct: "The

6

[EEOC] finds cause to believe that [Bloomberg] discriminated against the three Charging Parties and a class of similarly-situated women based on their sex/pregnancy by demoting them, decreasing their compensation, and otherwise discriminating against them in the terms, conditions or privileges of their employment." (Id. at EE00014-15.)

Along with the LOD, the EEOC sent Bloomberg a proposed conciliation agreement. (Id. Ex. 27; EEOC Concil. 56.1 ¶ 16.) The agreement provided for monetary relief to the Charging Parties,[4] the creation of a $7.5 million claim fund for class members, and injunctive relief.[5] (EEOC Concil. 56.1 ¶¶ 17, 20; Wong Decl. Ex. 27.) The proposed agreement defined the class as

> female employees who took maternity leave between January 1, 2003 and the present and who lost their job responsibilities, suffered a decline in job level or status, received less compensation, lost a scheduled increase, or otherwise experienced any reduction in the terms and conditions of their employment following

---

[4] The agreement provided for $546,263 in back pay plus interest, $6,101,556 in front pay, and $250,000 in compensatory damages for Ms. Patricot; $1,199,416 in back pay plus interest, $6,412,277 in front pay, and $200,000 in compensatory damages for Ms. Lancaster; and $730,078 in back pay, $7,685,292 in front pay, and $300,000 in compensatory damages for Ms. Loures. (Wong Decl. Ex. 27.)

[5] The Court recognizes that EEOC enforcement actions, including those brought on behalf of a class of similarly aggrieved individuals, are not "class actions" subject to Rule 23 of the Federal Rules of Civil Procedure. See Gen. Tel. Co. v. EEOC, 446 U.S. 318, 323-24 (1980). The Court refers to a "class" for clarity, however, because the EEOC's enforcement action spans several individuals with similar claims and alleges a pattern or practice of discrimination.

notice to Bloomberg of their pregnancy or following
their return from maternity leave.

(See EEOC Concil. 56.1 ¶ 20.)

Before moving into Bloomberg's primary arguments, the Court
dismisses a potential red herring.  Bloomberg correctly points
out that it was not given notice of the particulars and scope of
the EEOC's discrimination investigation.  (Bloomberg's Reply
56.1 Statement on Conciliation Claims ("B'berg Concil. Reply")
¶¶ 187-190, 192-196; Bloomberg Br. at 6-7.)  It suggests that
the scope of the EEOC's suit here is therefore overbroad.
(Bloomberg Br. at 7.)

This argument misapprehends the role notice plays in the
conciliation process.  Notice of the particulars of the
investigation is not required, and the scope of the EEOC's
initial investigation does not limit the scope of the lawsuit
alleging Title VII violations it may later bring.  "Any
violations that the EEOC ascertains in the course of a
reasonable investigation of the charging party's complaint are
actionable."  EEOC v. Caterpillar, Inc., 409 F.3d 831, 833 (7th
Cir. 2005) (quoting Gen. Tel. Co. v. EEOC, 446 U.S. 318, 331
(1980)).  Following such an investigation, the EEOC must give
notice of the charges it seeks to conciliate.  EEOC v. Thomas
Dodge Corp. of N.Y., 524 F. Supp. 2d 227, 236 (E.D.N.Y. 2007).
The Court thus rejects Bloomberg's contention that it was

8

required to receive notice of the <u>investigation</u> to be able to
conciliate the claims here.

That preliminary matter aside, Bloomberg argues that the
scope of the lawsuit filed improperly exceeded the scope of the
investigation actually conducted. (Bloomberg Br. at 7.)  This
argument founders.  Although "[a] district court only has
jurisdiction to hear claims which are either raised in the EEOC
charge or are reasonably related to the EEOC charge," <u>EEOC v.
Golden Lender Fin. Corp.</u>, No. 99 Civ. 8591, 2000 WL 381426, at
*4 (S.D.N.Y. Apr. 13, 2000) (Koeltl, J.), the lawsuit filed here
is reasonably related to the original charges.  The Charging
Parties' statements that others had been treated in the same way
led the EEOC to investigate other similarly situated female
employees.  Such an extension of the investigation grew out of
the course of a reasonable investigation of the initial charges,
and the investigation developed in a step-by-step fashion into a
classwide inquiry.  <u>See</u> <u>EEOC v. Jillian's of Indianapolis, IN,
Inc.</u>, 279 F. Supp. 2d 974, 979 (S.D. Ind. 2003); <u>Golden Lender</u>,
2000 WL 381426, at *3-4.  Accordingly, filing a classwide
lawsuit was within the scope of the investigation.  <u>See</u> <u>Golden
Lender</u>, 2000 WL 381426, at *4.

Bloomberg also argues that the lawsuit filed ultimately
must "match" the claims the parties attempted to conciliate.
(Bloomberg Br. at 5, 7.)  Insofar as conciliation is a

prerequisite to suit, this proposition has merit: the EEOC
cannot "attempt conciliation on one set of issues and having
failed, litigate a different set." EEOC v. Sears, Roebuck &
Co., 650 F.2d 14, 19 (2d Cir. 1981).  As part of attempting
conciliation, then, the EEOC has to provide sufficient notice to
the employer of the nature of the charges against it so as to
set the stage for fruitful conciliation discussions.  See, e.g.,
id.; EEOC v. Chesapeake & Ohio Ry. Co., 577 F.2d 229, 232 (4th
Cir. 1978) (stating that EEOC should "notify an employer of the
[its] findings and . . . provide common ground for
conciliation"); see also EEOC v. Outback Steakhouse of Fla.,
Inc., 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007).

     The Court concludes that Bloomberg had sufficient notice
that it was facing class-type claims to engage in conciliation
discussions.  First, the LOD stated that Bloomberg was facing
sex discrimination charges from a "class of similarly situated
women." (Wong Decl. Ex. 26.)  The LOD explained that the
Charging Parties' claims were "echoed by a number of other
female" employees. (Id.)  These statements put Bloomberg on
notice that class-type claims were to be the subject of
conciliation discussions.  Cf. Thomas Dodge Corp., 524 F. Supp.
2d at 238 (rejecting no-notice argument when employer given LOD
with parallel "class of female employees" language).  Second,
the fact that the proposed conciliation agreement, which was

10

sent with the LOD, contained a discernable definition of the
class of potential claimants and a demand for a $7.5 million
pool of funds for that class of claimants suggested in no
uncertain terms that many more claimants than the three Charging
Parties existed.  (B'berg Concil. Reply ¶¶ 16, 20.)   Taken
together with the LOD, Bloomberg had notice that a potentially
large class of claimants would be on the table in conciliation
negotiations.  See Thomas Dodge Corp., 524 F. Supp. 2d at 238
(finding notice of class-type allegations when EEOC made
classwide damage demands in proposed agreement); see also EEOC
v. Paramount Staffing, Inc., 601 F. Supp. 2d 986, 990 (W.D.
Tenn. 2009) (stating that an "outline of the class" is
sufficient).

Moreover, although Bloomberg did not necessarily have
particularized information about the scope of the investigation,
the three Charging Parties' charges were served on Bloomberg.
(B'berg Concil. Reply ¶ 6.)   Each of those charges included
allegations to the effect that other women have been treated
similarly or that there is a "pervasive bias" against employees
with newborns.  (See Wong Decl. Ex. 1-3.)   Bloomberg knew that
the EEOC requested information regarding many other employees
who had taken maternity leave, and it provided such information
to the EEOC.  (EEOC Concil. 56.1 ¶¶ 10, 182, 190.)   Bloomberg
surely could have put two and two together when invited by the

11

EEOC to conciliate class-type claims.  Compare, e.g., Thomas Dodge Corp., 524 F. Supp. 2d at 238 (stating that "initial charges," LOD language, and class demands sufficed to notify employer of class-type claims), with, e.g., EEOC v. Am. Express Publ'g Corp., 681 F. Supp. 216, 221-22 (S.D.N.Y. 1988) (stating that "nothing" in EEOC's determination letter could "reasonably be construed to suggest a broader scope" than a personal action).  Thus, the EEOC did what it is required to do.  See, e.g., EEOC v. Lockheed Martin Global Telecomms., Inc., 514 F. Supp. 2d 797, 806-07 (D. Md. 2007) ("The EEOC must only put a 'defendant on notice that a class action may be brought.'" (quoting EEOC v. Hugin Sweda, Inc., 750 F. Supp. 165, 167 (D.N.J. 1990)); EEOC v. Dial Corp., 156 F. Supp. 2d 926, 942 (N.D. Ill. 2001) (similar).

Drawing all inferences in favor of the EEOC, the Court finds that Bloomberg had sufficient notice that the EEOC sought to conciliate class-type sex/pregnancy discrimination claims.

2. Retaliation Claims

With respect to the retaliation claims, Bloomberg advances two arguments that differ from the arguments made with respect to the discrimination claims.[6]  Bloomberg argues first that the

---

[6] Bloomberg also repeats the lack-of-notice arguments it made with respect to the discrimination claims in the retaliation context, but the Court rejects that effort on substantially the same grounds.  See supra Part II.A.1.  Bloomberg (cont'd)

EEOC's retaliation claims must be dismissed because those claims were included in the original complaint and the first amended complaint, prior to any charge, investigation, or attempt to conciliate. (Bloomberg Br. at 9-10.) The EEOC does not dispute these facts. (EEOC Concil. 56.1 ¶¶ 39, 46.) Rather, it states that the inclusion of retaliation claims in those complaints was through a single, inadvertent reference to section 704 of Title VII and that the complaint made no substantive factual allegations of retaliation. (Id. ¶¶ 260-264.) The EEOC's position is that the second amended complaint posited retaliation claims for the first time, after its conciliation efforts on those claims failed. (Id. ¶¶ 164, 264; EEOC Br. at 5.)

Bloomberg's argument vaults formalism over substance. Although it is true that the first two complaints referenced section 704 of Title VII, that reference came in a string of

---

received essentially the same, if not more, notice from the EEOC about the scope of retaliation charges over which the EEOC sought conciliation. (See Wong Decl. Exs. 37-40, 42.) In short, the EEOC expressly notified Bloomberg that it was investigating classwide claims of retaliation and its LODs contained a determination that "Bloomberg has taken adverse employment actions against . . . a class of female employees." (Id. Ex. 37.) The proposed conciliation agreement contained a class recovery fund and class definition. (Id. Ex. 42.) And conciliation efforts here involved a substantial exchange of letters about these claims over the course of over five months (from August 28, 2008 to February 18, 2009), which evidences that Bloomberg at least had notice. (Id. Exs. 43-51, 54-58.)

Title VII section number citations, and neither complaint contained any factual allegations of retaliation whatsoever. (Compl. ¶ 7; First Amend. Compl. ¶ 7.)  Only the Second Amended Complaint contains substantive allegations of retaliation. (Second Amend. Compl. ¶ 9.)  The Court recognizes that any claim alleged by the EEOC must have been subject to the conciliation process, Johnson & Higgins, 91 F.3d at 1534-35, but the Second Amended Complaint is the operative complaint alleging retaliation claims.  See, e.g., Washer v. Bullitt County, 110 U.S. 558, 561-62 (1884) (amended complaint renders original complaint nugatory); Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668-69 (2d Cir. 1977) (same).  That complaint was filed on March 31, 2009, after the EEOC gave Bloomberg notice of a classwide retaliation investigation (Bloomberg Br. at 10) and after the EEOC determined, on February 23, 2009, that conciliation efforts with respect to the retaliation claims failed.  (EEOC Concil. 56.1 ¶ 163-164.)  Therefore, the retaliation claims were subject to conciliation and properly included in the Second Amended Complaint.

Bloomberg also argues that the depth of the EEOC's investigation of retaliation charges was insufficient to support the eventual lawsuit filed.  (Bloomberg Br. at 10.)  The Court rejects this argument.  Caterpillar, Inc., 409 F.3d at 833 ("The existence of probable cause [for the EEOC] to sue is generally

14

. . . not judicially reviewable.") (Posner, J.); EEOC v. N.Y.
News, Inc., 1985 WL 2158, at *1 (S.D.N.Y. July 26, 1985).

      3. Geographic Scope of Investigation

    Bloomberg argues that the Court should at least limit the
scope of the claims to those arising from the New York and New
Jersey offices because the EEOC's conciliation efforts focused
on those offices only.  (Bloomberg Br. at 14.)  The issue here
is whether the EEOC's charges indicated a pervasive, companywide
practice of discrimination and/or retaliation, or whether the
charges indicated a practice specific to the offices from which
the charges originated.  See Sears, 650 F.2d at 19 (stating that
the "framework" for conciliation must allow a "fair opportunity"
for the parties to conciliate the disputed claims); see also
EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1185 (4th Cir. 1981)
(similar); Outback Steakhouse, 520 F. Supp. 2d at 1267.

    At minimum, the evidence is equivocal.  On the one hand,
the EEOC physically conducted interviews only in the New York
and New Jersey offices, where the Charging Parties worked (and
where the charges originated).  (B'berg Concil. Reply ¶¶ 1-3,
9.)  On the other hand, the Charging Parties' charges alleged
"pervasive" company practices that Bloomberg reasonably could
have understood to cross office geographies, the EEOC
interviewed high-level management employees whose duties and
decisions may have affected other offices, the EEOC requested

information about potential class members without geographic limitation, and, most importantly, the EEOC's LOD and proposed conciliation agreement contained classwide claim language without geographic limitation.  (B'berg Concil. Reply ¶¶ 10, 165-175, 182, 187, 200-203; Wong Decl. Ex. 27 (proposed conciliation agreement stating that "Class members are defined as female employees who took maternity leave between January 1, 2003 and the present . . .").)

Obviously, these facts, among others, are susceptible to two competing inferences: that the proposed conciliation framework spanned all of Bloomberg's offices or that it did not. In deciding this motion, the Court must draw inferences in favor of the nonmonving party.  Accordingly, the Court finds that Bloomberg was on notice that the class-type claims it was facing transcended office borders.  This notice was therefore sufficient to frame conciliation discussions covering the claims eventually filed in this suit.  See Sears, 650 F.2d at 19.

B. Conciliation Process

The Court moves to Bloomberg's other primary argument with respect to conciliation.  Bloomberg challenges the EEOC's efforts at conciliation, arguing that the process itself afforded it no opportunity to comply voluntarily with the law and that the EEOC did not respond in a reasonable manner to Bloomberg's requests during conciliation.  (Bloomberg Br. at 3-

16

5, 8-9, 11-12.)  Two conciliation processes progressed
separately: one for the discrimination claims and the other for
the retaliation claims.  The Court sets forth the law governing
the conciliation requirement and then lays out the facts
surrounding each conciliation process separately.  Likewise, it
analyzes those efforts separately against this common legal
background.

The EEOC may sue only after exhausting conciliation
efforts.  42 U.S.C. § 2000e-5(b); Johnson & Higgins, 91 F.3d at
1534.  The EEOC fulfills this mandate if it "1) outlines to the
employer the reasonable cause for its belief that the employer
is in violation . . . , 2) offers an opportunity for voluntary
compliance, and 3) responds in a reasonable and flexible manner
to the reasonable attitude of the employer."  Johnson & Higgins,
91 F.3d at 1534; EEOC v. New Cherokee Corp., 829 F. Supp. 73, 80
(S.D.N.Y. 1993).  Ultimately, the EEOC must make a good faith
effort to conciliate before bringing suit.  Sears, 650 F.2d at
18-19; see EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th
Cir. 1981) ("[T]he fundamental question is the reasonableness
and responsiveness of the EEOC's conduct under all the
circumstances."); New Cherokee, 829 F. Supp. at 81.

The contours of the conciliation process will vary from
case to case, but it is designed to "allow[] the employer and
the EEOC to negotiate how the employer might alter its practices

17

to comply with the law, as well as how much, if any, the
employer will pay in damages." Johnson & Higgins, 91 F.3d at
1535; accord Marshall v. Sun Oil Co., 605 F.2d 1331, 1334 (5th
Cir. 1979). The Court's role in reviewing efforts to
conciliate, while not inert, is modest; the EEOC, as the
enforcement agency, has discretion to formulate conciliation
efforts in each situation, but it must do so in good faith. See
Sears, 650 F.2d at 18-19 ("Although in general the [EEOC] should
be given wide latitude in shaping [conciliation efforts], the
[EEOC]'s discretion is not unlimited . . . ." (citation
omitted)); see also Johnson & Higgins, 91 F.3d at 1534; EEOC v.
Keco Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984).

     1. Discrimination Charges

With respect to the discrimination charges, the EEOC
initiated conciliation on June 27, 2007, by sending Bloomberg an
LOD and a proposed conciliation agreement. (EEOC Concil. 56.1
¶¶ 198, 206; Wong Decl. Ex. 26 ("[T]he Commission now invites
[Bloomberg] to join with it in an effort toward a just
resolution of this matter.").) The EEOC requested a
counterproposal by July 11, 2007. (EEOC Concil. 56.1 ¶ 211.)
By that time, the parties evidently had discussed some
logistical matters about the conciliation process and had met to
discuss the EEOC's proposed agreement. (Id. ¶ 27.) In a letter
dated July 12, 2007, the EEOC extended the date by which it

expected a counterproposal and explained that the proposal need not be a "fully developed draft." (Wong Decl. Ex. 28.) The EEOC did, however, reiterate the three areas of relief on which it was focusing conciliation discussions: damages for the Charging Parties, injunctive relief, and the creation of a class fund. (Id.)

On August 2, 2007, the parties held a conciliation meeting. (B'berg Concil. Reply ¶ 215.) There, Bloomberg's counsel did not make a counterproposal (and one had not yet been made), but the EEOC agreed to allow Bloomberg's counsel to hear the Charging Parties' stories. (Id.) On August 10, the EEOC wrote to Bloomberg's counsel again, stating that the EEOC had been unable to reach counsel and that, due to Bloomberg's nonresponsiveness, the EEOC "begin[s] to question whether there is a chance of success with conciliation." (Id. ¶ 216.) Eleven days later, the parties met again to allow Bloomberg's counsel to hear the Charging Parties' stories in an effort to facilitate conciliation.[7] (Id. ¶ 217.) On August 23, 2007, the EEOC called Bloomberg's counsel to request again a counterproposal; Bloomberg's counsel stated that his client would be offering "five figures" to the Charging Parties. (Id. ¶ 219.)

---

[7] The EEOC enforcement supervisor characterized this meeting as "unusual" in conciliation discussions because the stories involved the merits of the claims (which EEOC already had determined in its LOD), rather than a discussion of "a resolution." (Wong Decl. Ex. 67, at 163.)

Later that day, Bloomberg sent the EEOC a written
counterproposal, which acknowledged the EEOC's three focal
points of conciliation and stated that Bloomberg was "willing to
engage in the conciliation process with a view towards" an
amicable resolution.  (Id. ¶ 28, 220-221.)  But the letter
stated that "Bloomberg remains convinced that the Charges lack
factual or legal merit . . . ."  (Id. ¶ 221.)

In contrast to the EEOC's demand for over $6 million on
behalf of each Charging Party, Bloomberg's letter offered each
$65,000 to settle her claims.  (Id. ¶¶ 17, 220.)  It offered to
discuss "policies and practices with the [EEOC] to identify
gender-neutral enhancements that would address the particular
needs of working parents . . . ."  (Id. ¶ 221.)  Finally,
Bloomberg stated that it "cannot, however, agree to the
establishment of a 'Claim Fund'" and that absent further
information about other potential claimants, "any discussion of
monetary settlements should be limited" to the Charging Parties.
(Id. ¶ 222.)

On August 24, 2007, the EEOC sent Bloomberg a letter
declaring that conciliation has been unsuccessful and that
further conciliation efforts would be futile.  (Id. ¶ 224.)  In
later deposition testimony, the EEOC's enforcement supervisor
(who had communicated with Bloomberg throughout conciliation
discussions) characterized the difference between the parties'

20

proposals as being "not even in the same galaxy." (Id. ¶¶ 211-213, 216, 219-220; Wong Decl. Ex. 67, at 171.)

The Court concludes that the EEOC, in its LOD and attached proposed conciliation agreement, outlined its reasonable cause for its belief that Bloomberg was in violation of Title VII. Those documents also expressly invited Bloomberg to conciliate and provided a comprehensive starting point for discussions by way of a proposed conciliation agreement.  Bloomberg thus had an opportunity to comply voluntarily. See Dial Corp., 156 F. Supp. 2d at 940-42; New Cherokee, 829 F. Supp. at 81.

The best Bloomberg musters is an argument that the EEOC did not respond in a reasonable and flexible manner to Bloomberg's conciliation overtures.  (Bloomberg Br. at 8.)  Bloomberg argues that since it expressed willingness to discuss nonmonetary proposals and made monetary offers to the charging parties, declaring conciliation a failure one day after Bloomberg's formal response was "grossly arbitrary."  (Id.)

The Court disagrees.  The EEOC's efforts were sufficient to satisfy the conciliation requirement in this context.  The parties discussed different aspects of conciliation for nearly two months, during which time the parties met twice and exchanged letters and telephone calls.  The EEOC repeatedly requested a counterproposal from Bloomberg and sought to invite discussion of the EEOC's initial proposal, all to no avail until

21

several weeks following the EEOC's proposal.  Throughout, the
EEOC insisted on three fundamental areas of conciliation:
individual monetary relief, injunctive relief, and classwide
monetary relief.

When Bloomberg finally responded with a formal
counterproposal, its response was effectively a demurrer.
Bloomberg denied that its policies and practices violated the
law.  Although Bloomberg acknowledged the three central areas in
which the EEOC sought relief, Bloomberg offered less than one
percent of the amounts the EEOC requested for the Charging
Parties; it offered no suggestions for nonmonetary relief (but
did invite discussions on the topic); and it declined to
entertain class-type relief at all, stating instead that if
other individual claimants had grievances, they could come
forward with their concerns on an individual basis.

"If the defendant refuses the invitation to conciliate or
responds by denying the EEOC's allegations, the EEOC need not
pursue conciliation and may proceed [to litigation]."  Johnson &
Higgins, 91 F.3d at 1535; New Cherokee, 829 F. Supp. at 81 ("If
the defendant expresses an unwillingness to discuss the charges
as formulated by the EEOC, then conciliation efforts need go no
further."); see also EEOC v. Bruno's Rest., 13 F.3d 285, 289
(9th Cir. 1993); EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763
F.2d 1166, 1169 (10th Cir. 1985).  Bloomberg's response refused

22

even to discuss a main prong of the EEOC's proposal: classwide monetary relief.[8]  That portion of the discussions was central to the EEOC's determination and proposed resolution of the claims. Bloomberg did not even seek more information about classwide claims; instead, it sought to negotiate on a claim-by-claim basis.  Its response was, effectively, a refusal of the EEOC's invitation to conciliate.

Moreover, the parties' positions on individual monetary relief differed so substantially as to make reasonable the EEOC's perception that further negotiations would be futile.[9] Cf. Dial Corp., 156 F. Supp. 2d at 940-42 (concluding that the EEOC satisfied conciliation obligation after ending conciliation when parties' monetary proposals grossly differed).  Although Bloomberg attempts to minimize the gulf between the parties'

---

[8] Bloomberg's response to the EEOC's classwide relief is somewhat ambiguous.  It stated, "As presently advised Bloomberg cannot . . . agree to the establishment of a 'Claim Fund' or to the institution of a de facto class action against it."  (Wong Decl. Ex. 31.)  It went on to suggest discussions of other "individual" claims if more claimants existed.  (See id.)  To the extent that Bloomberg's response could be viewed as a request for more information about class claims before discussion proceeds, the Court must draw all inferences favorable to the nonmoving party.  It therefore views Bloomberg's stance as negating further discussion on class-type claims in favor of one-by-one discussions of individual claims.

[9] The Court notes that the EEOC must conciliate in good faith. Therefore, it may not make unreasonably large monetary demands then declare conciliation unsuccessful and proceed to litigation when such demands are rejected.  This is not the case here, however.

positions by arguing that it had insufficient information about the rationale for the EEOC's monetary demands, the EEOC is not required to "disclose all of the underlying evidence . . . to the employer." E.g., EEOC v. Hibbing Taconite Co., 266 F.R.D. 260, 274 (D. Minn. 2009). As discussed supra, the EEOC provided Bloomberg with enough information to evaluate the claims and respond or at least appreciate the classwide claims and request more information. This is not a case where Bloomberg had to negotiate "in an evidentiary vacuum." EEOC v. First Midwest Bank, N.A., 14 F. Supp. 2d 1028, 1032 (N.D. Ill. 1998).

Finally, Bloomberg's response to the EEOC's specific nonmonetary proposals was nothing more than an invitation for further discussion about potential "enhancements" to existing policies. (Wong Decl. Ex. 31.) Giving the non-moving party the benefit of the inferences, the EEOC reasonably could have viewed Bloomberg's responses as a refusal to conciliate given the specifics of the circumstances here.

The Court makes no judgment about the wisdom of the parties' respective conciliation strategies. Cf. EEOC v. Cal. Psych. Transitions, Inc., 644 F. Supp. 2d 1249, 1273 (E.D. Cal. 2009) (stating that court's "dissatisfaction" with parties' conciliation efforts is not the standard of review). Merely divergent monetary proposals alone may not be enough to declare conciliation futile; further discussions may bridge the gap when

the seeds for out-of-court resolution have been sown.  But when
the parties' proposals and discussions are so divergent as to
seem irreconcilable, the courts will not require the EEOC to
conduct Sisyphean negotiations to meet its statutory mandate to
conciliate.  In the specific circumstances here, the EEOC made
respectable conciliation efforts, but its proposals were, in
effect, rebuffed.  Given the parties' communications during
conciliation, the EEOC likely had little hope of making
significant progress.  See Bruno's Rest., 13 F.3d at 289.  The
EEOC's declaration that conciliation failed one day following
Bloomberg's counterproposal is consistent with this view.
Making inferences in a light favorable to the EEOC, the Court
cannot say that the EEOC failed to make a good faith effort to
conciliate the discrimination claims.

              2. Retaliation Claims

     Conciliation efforts began similarly with respect to the
retaliation charges.  The EEOC invited Bloomberg to join in "an
effort toward a just resolution" with respect to these charges
by sending LODs dated June 16, July 2, July 23, and August 15,
2008.  (B'berg Concil. Reply ¶¶ 232, 234.)  The EEOC formally
initiated conciliation by sending Bloomberg a proposed
conciliation agreement on August 20, 2008.  (Id. ¶ 235.)  That
agreement proposed monetary relief for the individuals who filed

retaliation charges, monetary relief for the proposed class, and injunctive relief.  (Id.)

On August 28, 2008, Bloomberg responded by letter, stating that it "look[s] forward to working with you to achieve a resolution" and asking for additional time to allow for an internal investigation of the merits of the claims.  (Id. ¶ 236; Wong Decl. Ex. 42.)  Bloomberg's letter also asked the EEOC for "additional information about its determinations" and gave examples of allegations that it did not fully understand. (B'berg Concil. Reply ¶ 236.)

Bloomberg then responded with a written counterproposal on September 26, 2008.  (Id. ¶ 237.)  Its letter stated that "[m]any of the proposals contained" in the EEOC's proposed agreement are "acceptable to Bloomberg" but sought "further discussion" on others.  (Wong Decl. Ex. 44.)  Bloomberg's counterproposal stated that Bloomberg was "not in a position" to offer monetary relief to the individual claimants but, rather, that it "awaits" additional information about the EEOC's determinations, as requested in Bloomberg's earlier letter. (Id.)  It also stated that Bloomberg was "not in a position" to create a class fund but sought "further discussion."  (Id.)  The letter outlined Bloomberg's responses to the EEOC's substantive proposals, many of which Bloomberg accepted or accepted with minor changes.  (Id.)  For example, Bloomberg offered an altered

definition of the proposed class and agreed to allow the EEOC
sole discretion in determining class membership eligibility.
(Id.)

While the EEOC did not respond point-by-point to
Bloomberg's counterproposal, it sent a letter to Bloomberg on
September 29, 2008, stating that if Bloomberg responded to the
monetary proposals made by the EEOC, the EEOC would engage in
discussions about Bloomberg's counterproposals.  (Id. Ex. 45.)
The EEOC's letter also stated that Bloomberg's requests for
further information were unnecessary and that, in any event, the
information Bloomberg requested is protected by the deliberative
process privilege.  (Id.)

Following this letter, the parties, for nearly five months,
engaged in a vociferous letter-writing campaign.  (See id. Exs.
47-51, 54-59.)  But the battle lines were drawn, and the
parties' letters merely traded jib for jab: the EEOC repeatedly
refused to counter Bloomberg's response until Bloomberg was
willing to make monetary offers "reasonable" to the EEOC, and
Bloomberg repeatedly refused to make any monetary offer unless
it received more information about the underlying claims, which
the EEOC refused to provide.  (See id.; B'berg Concil. Reply
¶¶ 96-117.)  Bloomberg at one point offered to bring the dispute
to mediation, but the EEOC rejected that concept.  (Wong Decl.
Exs. 46-47.)

The parties met on January 29, 2009, to discuss conciliation, but this meeting bore no fruit.  (B'berg Concil. Reply ¶¶ 104-111.)  Following the meeting, the parties continued to exchange letters reiterating their fundamental positions and summarizing their respective views of the process to that point. (Wong Decl. Exs. 55-58.)  The parties made no more progress. Ultimately, the EEOC sent Bloomberg a letter dated February 29, 2009, declaring that conciliation efforts have been unsuccessful.  (Id. Ex. 59.)

This process was lengthier (and more vituperative) than that involved in the discrimination claims, but the EEOC failed to meet the requirement that it respond in a reasonable and flexible manner to the employer in conciliation.  The EEOC consistently stonewalled in the face of "plainly reasonable" requests from Bloomberg to obtain more information about the claims to formulate a counterproposal.  See Golden Lender, 2000 WL 381426, at *5; see also EEOC v. Die Fliedermaus, 77 F. Supp. 2d 460, 467 (S.D.N.Y. 1999).

In its conciliation agreement, the EEOC proposed the creation of a $19.3 million class claim fund for retaliation claimants and the payment of $3,796,265 to the Retaliation Charging Parties.[10]  Its cover letter also demanded an additional

---

[10] The proposed agreement included $275,000 in emotional distress damages and $25,000 in legal fees for Jill Patricot and (cont'd)

$18.7 million in compensatory and punitive damages on behalf of the Retaliation Charging Parties. Faced with a grand total of over $41 million in monetary demands, Bloomberg requested more information about the charges and the basis for the EEOC's determination before proceeding to make monetary offers. Bloomberg's attitude was reasonable: it was faced with large monetary demands and wanted additional information to evaluate the claims and respond accordingly. Bloomberg, throughout the letter exchange, stated that it was amenable to further discussions, including discussions on classwide claims. Importantly, its posture here stands in marked contrast to its approach to the EEOC's conciliation efforts for the discrimination claims, where Bloomberg essentially refused to discuss class-type relief at all.

Yet the EEOC refused to offer any additional information about its determinations. (Wong Decl. Ex. 45.) The most it offered was vague statements that it had interviewed a "fair number" of women and then extrapolated from those interviews an amount it determined was acceptable for the class claim pool. (B'berg Concil. Reply ¶ 109.) In the specific circumstances of

---

for Janet Loures; $151.090.97 in back pay, $1,567,751.30 in front pay, $275,000 in emotional distress damages, and $75,000 in legal fees for Maria Mandalakis; and $156,541 in back pay, $610,882 in front pay, $275,000 in emotional distress damages, and $75,000 in legal fees for Marina Kushnir. (Wong Decl. Ex. 42.)

this case, where the charges were varied and numerous, the basic information provided to outline the charges was insufficient for Bloomberg to be able to formulate a reasonable monetary counteroffer.  See Golden Lender, 2000 WL 381426, at *5; First Midwest Bank, 14 F. Supp. 2d at 1033.

The EEOC's approach to conciliation here reeks of using the proposed agreement as a "weapon to force settlement."  EEOC v. Agro Distrib., LLC, 555 F.3d 462, 468 (5th Cir. 2009).  The fact that the EEOC was simply unwilling to further discussions because Bloomberg did not provide a specific monetary offer created a "chicken or egg" problem.  The EEOC argues that until it received a monetary offer, Bloomberg's negotiation position was unreasonable.  But Bloomberg argues that it is unreasonable to require it to make a nearly blind settlement offer when the underlying claims are large and complex.  The Court concludes that the EEOC's position, in these circumstances, does not embody a "reasonable and flexible" response to the "reasonable attitudes" of the employer.  See, e.g., Johnson & Higgins, 91 F.3d at 1534.

The EEOC focused on Bloomberg's failure to provide any "monetary offer to settle" the claims to the exclusion of other considerations.  (E.g., Wong Decl. Ex. 47.)  In this context, this inflexibility represented a "take-it-or-leave-it demand."  Agro Distrib., 555 F.3d at 468.  The EEOC did not respond to

30

Bloomberg's initial letter asking for more information, and its
ultimate response to such requests was to refuse to provide any
further information.  In a complex case like this one, the EEOC
cannot, when the employer reasonably asks for information to
formulate a monetary counteroffer, make substantial monetary
demands and require employers simply to pony up or face a
lawsuit.  See id.  The EEOC's approach suggests, in the back-
and-forth that transpired here, that the EEOC was not making a
sincere effort to conciliate the claims.  See Prudential Fed.
S&L, 763 F.2d at 1169; Marshall, 605 F.2d at 1335 ("Because
conciliation involves at least two parties, we must evaluate one
party's efforts with an eye to the conduct of the other
party.").

     The Court recognizes that the EEOC has discretion in
framing the contours of conciliation negotiations, but the EEOC
is still required to make a "genuine effort" to conciliate,
Sears, 650 F.2d at 18, and to respond "reasonably and flexibly"
to a reasonable employer in negotiations.  Johnson & Higgins, 91
F.3d at 1334.  Although the EEOC need not prove its charges "to
the employer's satisfaction," Prudential Fed. S&L, 763 F.2d at
1169, or disclose all of its underlying evidence, Hibbing
Taconite Co., 266 F.R.D. at 274, it should have done something
in response to Bloomberg's reasonable entreaties.  The EEOC's
efforts to continue conciliation fall short of the mark.  See

                              31

Golden Lender, 2000 WL 381426, at *5; see also Klingler Elec.
Corp., 636 F.2d at 107 ("[T]he fundamental question is the
reasonableness and responsiveness of the EEOC's conduct under
all the circumstances.").

The Court considers the context here noteworthy.  The
EEOC's retaliation LODs were sent to Bloomberg after some of the
same parties already had brought discrimination charges against
Bloomberg and after the EEOC had attempted, unsuccessfully, to
conciliate those charges and had filed a lawsuit.  The parties
had, by that time, engaged in substantial discovery efforts and
were entrenched in litigation.  That litigation does not stay
the regular business of the EEOC of course, but the EEOC's
response here bespeaks a litigious approach to conciliation,
where the EEOC may have "abandoned its role as a neutral
investigator," see Agro Distrib., 555 F.3d at 468, and may have
sought to coerce a settlement, knowing it could simply add the
retaliation claims to pending litigation, EEOC v. Pet, Inc., 612
F.2d 1001, 1002 (5th Cir. 1980) (per curiam) (stating that
EEOC's conduct "smacks more of coercion than of conciliation").

That context, along with the parties' acrimony in
litigation before this Court, informs the Court's judgment about
the proper remedy for the EEOC's failure to conciliate the
retaliation claims.  Ordinarily, when the EEOC has failed to
meet its duty to conciliate, "the preferred remedy is not

dismissal but instead a stay of the action to permit such conciliation." Golden Lender, 2000 WL 381426, at *5 (quoting New Cherokee, 829 F. Supp. at 81). But when the EEOC fails to conciliate in good faith, courts have dismissed cases on that basis. See Sears, 650 F.2d at 19 (affirming dismissal when conciliation "patently inadequate"); see also EEOC v. Asplundh Tree Expert Co., 340 F.3d 1256, 1261 (11th Cir. 2003) (similar); EEOC v. Pierce Packing Co., 669 F.2d 605, 609 (9th Cir. 1982) (similar); EEOC v. CRST Van Expedited, Inc., No. 07 Civ. 95, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009) (dismissing case for failure to notify and conciliate); cf. Agro Distrib., 555 F.3d at 467-68 (concluding that district court was correct to grant summary judgment on failure-to-conciliate grounds).

Here, a stay would be inappropriate. The parties were unable, for nearly five months, to resolve their differences or even come to have any meaningful dialogue. Their correspondence indicates that their attitudes soured, and these claims were pursued by the EEOC (and added to the original complaint) after the EEOC had filed suit. A stay is a practical remedy to allow the parties to come back to the table and resolve the issues left aside, and it is typically granted early in the litigation process or when conciliation was ended prematurely. See Die Fliedermaus, 77 F. Supp. 2d at 468 (staying action after failed conciliation when lawsuit "in its initial stages"); New

33

Cherokee, 829 F. Supp. at 81; Am. Express Publ'g Corp., 681 F.
Supp. at 222 (stating that stay appropriate when conciliation
"abruptly curtailed").  This is not the case here.  In their
non-effort to conciliate on the retaliation claims and in their
more recent conduct of the litigation in general, the parties'
conduct persuaded the Court that further attempts at
conciliation of the retaliation claims would be futile.  The
Court, therefore, concludes that dismissal is the appropriate
sanction in these circumstances.

For the reasons set forth above, Bloomberg's motion for
summary judgment on the grounds of failure to conciliate [dkt.
no. 103] is DENIED, except that it is GRANTED as to retaliation
claims brought under section 704 of Title VII, 42 U.S.C.
§ 2000e-3.

III. TIME-BARRED CLAIMS

The Court now turns to Bloomberg's other motion for summary
judgment.  [dkt. no. 99]  This motion requires the Court to
determine whether the "charge-filing" period set forth in
section 706(e)(1) of Title VII, 42 U.S.C. § 2000e-5(e)(1),
applies to bar claims that accrued prior to the initial
discrimination and retaliation charges filed with the EEOC in
this case.

A. Facts

The following facts are not in dispute.  Jill Patricot
filed a charge of discrimination with the EEOC on March 24,
2006, alleging sex/pregnancy discrimination.  (EEOC's Statement
of Material Disputed Facts ("EEOC Facts") ¶¶ 9-10.)  Of the
three Charging Parties alleging discrimination here, Patricot's
charge was the first to be filed.  (See id. ¶¶ 9-14.)  Based on
her claims and others filed thereafter, the EEOC filed this
lawsuit on September 27, 2007.  (Id. ¶ 16.)  In its complaint,
the EEOC alleged that the three Charging Parties were victims of
discrimination and that Bloomberg had engaged in a pattern or
practice of discrimination against non-clerical female
employees.  (Id. ¶¶ 17-18.)  Eventually, the EEOC sought relief
on behalf of seventy-nine individual discrimination claimants as
part of this suit.  (Id. ¶ 20.)

After the EEOC filed its discrimination suit, Maria
Mandalakis, on January 30, 2008, filed the first retaliation
charges with the EEOC in this case, along with discrimination
charges.  (See id. ¶ 15.)  Based on these, and other,
retaliation claims, the EEOC filed a Second Amended Complaint on
March 31, 2009, which included allegations of retaliation on
behalf of twenty-four identified claimants.  (Id. ¶ 21-23.)  The
EEOC's retaliation claims do not include an allegation of a
pattern or practice of retaliation.  (Id. ¶ 24.)

B. Legal Landscape

The EEOC is empowered to enforce Title VII upon the filing of a charge, which an EEOC commissioner may do in two different circumstances. See 42 U.S.C. § 2000e-5; EEOC v. Shell Oil Co., 466 U.S. 54, 62 (1984). First, under section 706 of Title VII, the EEOC may file a charge against a private employer on behalf of a "person or persons aggrieved" by an unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). Second, under section 707 of Title VII, the EEOC may file a charge against an employer that the EEOC has reason to think has engaged in a "pattern or practice" of discrimination. Id. § 2000e-6(e); Shell Oil Co., 466 U.S. at 62. Ultimately, the EEOC is empowered to sue if voluntary resolution is ineffectual, no matter the type of charge originally filed. 42 U.S.C. § 2000e-5(f)(1).

The EEOC's enforcement authority under section 706 is subject to several procedural requirements, see id. § 2000e-5(b), (e)(1), which are incorporated by reference into the EEOC's authority to bring "pattern or practice" claims under section 707. Id. § 2000e-6(e). Section 707 states, "All such actions shall be conducted in accordance with the procedures set forth in [section 706] of this title." Id.

The procedure at issue in this motion is the "charge-filing" requirement of section 706. See id. § 2000e-5(e)(1). Section 706 provides, in relevant part:

> A charge under this section shall be filed within one
> hundred and eighty days after the alleged unlawful
> employment practice occurred . . . except that in a
> case of an unlawful employment practice with respect
> to which the person aggrieved has initially instituted
> proceedings with a State or local agency with
> authority to grant or seek relief from such practice
> . . . such charge shall be filed by or on behalf of
> the person aggrieved within three hundred days after
> the alleged unlawful employment practice occurred
> . . . .

Id.  "The requirement . . . that the charge be filed 'after' the

practice 'occurred' tells [the Court] that a litigant has up to

180 or 300 days after the unlawful practice happened to file a

charge with the EEOC."  Nat'l R.R. Passenger Corp. v. Morgan,

536 U.S. 101, 110 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1));

see also Occidential Life Ins. Co. v. EEOC, 432 U.S. 355, 371

(1977) (stating that Congress's "concern for the need of time

limitations" in Title VII "was directed entirely" to the charge-

filing deadline).  In New York, where the EEOC filed its

charges, there is a state agency with jurisdiction to seek or

grant relief on sex discrimination claims, 29 C.F.R. § 1601.80,

so the 300-day filing period is the relevant time period in this

case.[11]  See Mohasco Corp. v. Silver, 447 U.S. 807, 816 (1980);

---

[11] There is nothing in the record to indicate that the EEOC
notified the appropriate state agency of its charge here.  29
C.F.R. § 1601.13(e) (stating that the EEOC "will notify" the
state agency when an EEOC commissioner makes a charge and giving
the state ten days to elect to first process the charge); see
Motorola, Inc. v. EEOC, 460 F.2d 1245, 1245 (9th Cir. 1972)
(requiring the EEOC to allow state agency to pass on charges
first).  Nevertheless, the Court assumes that the EEOC (cont'd)

cf. EEOC v. Comm'l Office Products Co., 486 U.S. 107, 123 (1988)
(stating that state statutes of limitations "do not determine
the applicable federal time limit").

   C. Analysis

   Bloomberg argues that the EEOC's claims, whether based on
section 706 or 707, cannot include charges that accrued before
the 300-day charge-filing period running from the earliest-filed
charge involved here.  (Bloomberg Br. at 3.)[12]  This argument has
three aspects: the charge-filing period's operation in (1) the
section 707 pattern or practice of discrimination claims, (2)
the section 706 discrimination claims, and (3) the section 706
retaliation claims.  The Court analyzes the legal arguments in
that order.

       1. Pattern or Practice of Discrimination Claim

   Bloomberg advances the position that the language of
section 707, which states that all "pattern or practice" actions
"shall be conducted in accordance with the procedures set forth
in" section 706, 42 U.S.C. § 2000e-6(e), incorporates the 300-
day charge-filing requirement of section 706.  (Id. at 4.)

---

complied with this procedure and therefore availed itself of the
longer 300-day charge filing period because Bloomberg, against
which the longer period would work a detriment, argues that the
300-day period applies.

[12] Citations to briefs in Part III of this opinion refer to the
parties' briefs on the timeliness issues.

Whether section 707 incorporates the charge-filing period of section 706 is a question that has divided district courts and has eluded the courts of appeals.  See, e.g., EEOC v. Freeman, No. 09 Civ. 2573, 2010 WL 1728847, at *2 (D. Md. Apr. 27, 2010) (collecting cases).  The Court only answers the narrow question before it: whether, in a "pattern or practice" case involving allegations of discrete discriminatory acts, the section 706 charge-filing period applies.

Section 706 bars enforcement actions based on charges that were not timely filed with the EEOC.  42 U.S.C. § 2000e-5(e)(1); Freeman, 2010 WL 1728847, at *4.  This procedure serves an important purpose: it provides repose for employers and prevents them from having to defend against long-stale claims.  See Occidental, 432 U.S. at 371-72.  The plain language of section 707 incorporates this procedure into pattern or practice actions.  42 U.S.C. § 2000e-6(e); Freeman, 2010 WL 1728847, at *4; EEOC v. Custom Cos., Inc., No. 02 Civ. 3768, 2004 WL 765891, at *8 (N.D. Ill. Apr. 7, 2004); EEOC v. Optical Cable Corp., 169 F. Supp. 2d 539, 546 (W.D. Va. 2001).  Nothing in the statute indicates that an EEOC commissioner, when filing charges on behalf of an individual claimant, is exempt from this requirement.  Freeman, 2010 WL 1728847, at *4.  Similarly, nothing in the statute indicates that Congress intended to allow the EEOC to revive otherwise stale individual damage claims.

Id.; EEOC v. Burlington Med. Supplies, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008).  Thus, the charge-filing requirement operates in a section 707 case brought based on individual charges.

The EEOC's argument to the contrary is unavailing.  It relies on Occidental, 432 U.S. at 360-61, for the proposition that the absence of any express "statute of limitations" in the text of section 707 means that section 707 contains no charge-filing requirement.  (EEOC Br. at 3.)  Occidental held that because section 706 contains no statute of limitations to bring a lawsuit, there is none; instead, the requirement to bring a timely charge of discrimination addresses the need for "time limitations in the fair operation" of Title VII.  432 U.S. at 370-71.  Here, section 707 explicitly cross-references the "procedures" in section 706 to address the need for time limitations, and Bloomberg does not argue that the EEOC is subject to a statute of limitations to bring a lawsuit.  42 U.S.C. §§ 2000e-5(e)(1), 2000e-6(e).  The EEOC may not, at least in a case alleging discrete unlawful acts, seek relief for individuals who were not subject to an unlawful employment practice some time during the 300 days preceding the filing of the triggering charge.[13]  E.g., Freeman, 2010 WL 1728847, at *4.

---

[13] The EEOC points to the legislative history of Title VII, the purpose of the statute, and its own "broad enforcement authority" to support its argument.  Because the Court relies on the plain meaning of this unambiguous statute, its (cont'd)

The cases concluding otherwise, and upon which the EEOC relies, are not persuasive. E.g., EEOC v. Sterling Jewelers, Inc., No. 08 Civ. 706, 2010 WL 86376 (W.D.N.Y. Jan. 6, 2010); EEOC v. LA Weight Loss, 509 F. Supp. 2d 527 (D. Md. 2007); EEOC v. Mitsubishi Motor Mfg. of Am., Inc., 990 F. Supp. 1059 (C.D. Ill. 1998). These cases rely on or emulate the reasoning of Mitsubishi, which primarily focused on a distinction between pattern or practice charges and individual charges. See 990 F. Supp. at 1085. That court viewed pattern or practice actions as inherently different because the EEOC would be unable to identify any single discriminatory event to which the charge-filing period can be tied. See id. at 1085-86 (stating that pattern or practice cases are "not amenable to a timeliness determination"). In effect, Mitsubishi weighed this practical concern more heavily than the need for repose against defending stale claims. See id. at 1086-87.

To the extent that this distinction matters, it is not relevant here, where an individual charge precipitated the EEOC's enforcement action and where the claims are based on

_____

inquiry ends there. See, e.g., United States v. Sabhnani, 599 F.3d 215, 255 (2d Cir. 2010). To the extent that these considerations are relevant, the Court agrees with the analysis of other district courts finding them not persuasive. E.g., Freeman, 2010 WL 1728847, at *4-5; Custom Cos., 2004 WL 765891, at *9-10.

discrete acts that occurred on an individual basis.[14]  Cf.
Cherosky v. Henderson, 330 F.3d 1243, 1247-48 (9th Cir. 2003)
(citing Elmanayer v. ABF Freight Sys., Inc., 318 F.3d 130, 132-
33 (2d Cir. 2003)) (rejecting effort to consider pre-limitations
period claims when pattern or practice alleged individualized
decisions).  In this case, there are triggering events that are
readily identifiable and amenable to a timeliness determination.
The EEOC's complaint alleges discrimination on the basis of
reductions in compensation, demotions, reductions in
responsibility, and the like, and it seeks monetary relief on
behalf of the individual claimants.  (See Second Amended Compl.
¶ 7.)  These are discrete acts that occur on a certain date.
See Morgan, 536 U.S. at 110-11, 113; see also 42 U.S.C. § 2000e-
2; Optical Cable Corp., 169 F. Supp. 2d at 547.  And "[t]he law
is clear that termination and promotion claims may not be based
on discrete acts falling outside the limitations period."
Petrosino v. Bell Atl., 385 F.3d 210, 220 (2d Cir. 2004).  Thus,
the practical concerns animating Mitsubishi's refusal, "despite

---

[14] Indeed, the EEOC has presented no statistical evidence of
discrimination in the summary judgment record.  Robinson v.
Metro-N. Commuter R.R. Co., 267 F.3d 147, 158 & n.5 (2d Cir.
2001) (pointing to "heavy reliance" on statistical evidence in a
pattern or practice claim); Bell v. EPA, 232 F.3d 546, 553 (7th
Cir. 2000) (stating that statistical evidence is the "core" of a
pattern or practice case).  To the extent that the EEOC offered
such evidence thus far, the Court has excluded it in a prior
order.  EEOC v. Bloomberg L.P., No. 07 Civ. 8383, 2010 WL
3466370, at *1 (Aug. 31, 2010).

the language of § 707(e), which mandates adherence to the . . .

procedural requirements of § 706," 990 F. Supp. at 1085, to

apply the charge-filing requirement to section 707 actions are

not present here, see id. at 1085-86; see also Custom Cos., 2004

WL 765891, at *8 (concurring with this assessment).

Although not a section 707 case, the principles elucidated

in National Railroad Passenger Corp. v. Morgan, 536 U.S. at 113-

17, help to inform the Court's rationale.  A hostile work

environment case, like Morgan,·involves a pattern of harassing

conduct that "cannot be said to occur on any particular day."

536 U.S. at 115; see also Mitsubishi 990 F. Supp. at 1085-86

(relying on similar reasoning).  Allegations involving this type

of conduct can include pre-filing-period employment practices as

long as one unlawful act occurred within the charge-filing

period.  Morgan, 536 U.S. at 117.  This approach makes sense

where the conduct alleged is amorphous and necessitates a

holistic view, and it maintains a period of repose with the

requirement that an act occur in the charge-filing period.

Employment practices involving "discrete acts" are

different.  They occur on a date certain, and each alleged

violation is subject to the charge-filing period.  Id. at 113-

14.  In those circumstances, there is no necessity to take a

holistic view.  See id. at 112-14.  This case involves discrete

acts.  The fact that this section 707 action alleges a sort of

43

serial violation involving discrete acts does not convert
"related discrete acts into a single unlawful practice for
purposes of timely filing."  Morgan, 536 U.S. at 111, 114.
Therefore, the Court declines to follow the Mitsubishi line of
authority and its progeny in this context.  See Burlington Med.
Supplies, 536 F. Supp. 2d at 658-59 (declining to follow
Mitsubishi's reasoning); Custom Cos., 2004 WL 765891, at *8
(similar); Optical Cable Corp., 169 F. Supp. 2d at 546-47
(similar).

     The EEOC attempts to evade the charge-filing requirement by
arguing that the "continuing violation" doctrine is a relevant
exception here.  (EEOC Br. at 8-17.)  Although Morgan limited
the class of claims to which the continuing violation doctrine
applies, see, e.g., Shomo v. City of New York, 579 F.3d 176, 181
(2d Cir. 2009), it was not presented with, and therefore did not
decide, "the timely filing question" in a pattern or practice
case.  Morgan, 536 U.S. at 115 n.9.  Nevertheless, the doctrine
remains available in cases where the violation is "'composed of
a series of separate acts that collectively constitute one
unlawful employment practice.'"  Washington v. County of
Rockland, 373 F.3d 310, 318 (2d Cir. 2004) (quoting Morgan, 536
U.S. at 111); see Port Auth. Police Asian Jade Soc'y of N.Y. &
N.J., Inc. v. Port Auth. of N.Y. & N.J., 681 F.Supp.2d 456, 466
(S.D.N.Y. 2010) (Cedarbaum, J.).

The case at bar is not one of this ilk.  If anything, it resembles a serial violation situation, which the Supreme Court concluded is not susceptible to the continuing violation exception.  Morgan, 536 U.S. at 114.  The EEOC in this case seeks to link "together a series of decisions . . . under the label of pattern or practice," but "that does not change the fact that each decision constituting the pattern or practice is discrete."  Freeman, 2010 WL 1728847, at *6; see Butts v. N.Y. City Dep't of Housing Pres. & Dev., No. 00 Civ. 6307, 2007 WL 259937, at *7 (S.D.N.Y. Jan. 29, 2007).  Indeed, the complaint is illustrative.  The EEOC makes no allegation there that discrimination was Bloomberg's "standard operating procedure," Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977), or otherwise allege a systemic policy aside from using the term "pattern or practice,"[15] see Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827, 2003 WL 21910867, at * 5 (S.D.N.Y. Aug. 11, 2003) ("[A] plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice.'").

Affixing the "pattern or practice" label to a complaint does not ipso facto make a case one where "separate acts . . .

---

[15] The Court does not suggest that the EEOC did not bring a pattern or practice case.  It may prove such a case with evidence of specific instances of discrimination.  Robinson v. Metro-N. Commuter R.R. Co., 267 F.3d 147, 158 (2d Cir. 2001).

collectively constitute one unlawful employment practice."
Washington, 373 F.3d at 318; see, e.g., Jade Soc'y, 681 F. Supp.
2d at 466 (analyzing the type of violations to determine whether
they constituted a single practice); Milani v. IBM Corp., 322 F.
Supp. 2d 434, 452-53 (S.D.N.Y. 2004).  Instead, courts inquire
into the type of alleged unlawful practice to determine if the
continuing violation doctrine applies.

For example, in Jade Society, this Court concluded that an
employment policy that had a disparate impact upon minority
employees constituted a "single, ongoing unlawful employment
practice," entitling the plaintiffs to seek relief on claims
outside the charge-filing period.  681 F. Supp. 2d at 464, 466.
Although the EEOC asks the Court to follow suit, the claims
involved in this case are not analogous.  Here, the EEOC seeks
redress based on several discrete employment actions, which are
easily identifiable, and asks for individualized monetary relief
to "make the Claimants whole."  (Second Amended Compl. ¶¶ C-E.)
This is in stark contrast to an allegation that a policy that
is, in effect, a single practice necessitating proof of "events
extended over time," as in Jade Society.  681 F. Supp. 2d at
463.  To be sure, the EEOC strung together several allegations
from employees who each experienced discrete, potentially
discriminatory employment actions here.  But that approach is
nothing more than "[l]inking together a series of decisions"

46

notwithstanding the fact that they are discrete instances of
alleged discrimination. Freeman, 2010 WL 1728847, at *6; see
Morgan, 536 U.S. at 114 (rejecting "serial violations" theory);
Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y.
2001) ("It is well-established that transfers, demotions,
failure to compensate adequately, and failure to promote are all
discrete acts which do not constitute a continuing violation.").

Jade Society was correct to employ the pattern or practice
label to include otherwise time-barred claims when "separate
acts . . . constitute[d] one unlawful employment practice."
Washington, 373 F.3d at 318. But here, the allegations are
different, as is the nature of what the EEOC seeks to do. The
"pattern or practice" alleged should not be used to allow the
EEOC to seek relief on behalf of otherwise time-barred parties
when the challenged practice involves discrete acts of
discrimination.[16] See Freeman, 2010 WL 1728847, at *6; see also
Jade Soc'y, 691 F. Supp. 2d at 466 (stating that "acts" outside
the charge-filing period properly considered). The charge-
filing period is the sole mechanism that Congress used to alert
employers of potential claims in a timely fashion. See
Occidental, 432 U.S. at 371-72. The EEOC, at least when

---

[16] The Court makes no judgment about whether this analysis
applies to a pattern or practice action involving discrimination
that will go undiscovered only until a pattern emerges.

alleging individual, discrete discrimination events, cannot make
an end run around that period to add stale claims.[17]  See
Freeman, 2010 WL 1728847, at *6; EEOC v. CRST Van Expedited,
Inc., 615 F. Supp. 2d 867, 878 (N.D. Iowa 2009); EEOC v. Wyndham
Worldwide Corp., No. 07 Civ. 1531, 2008 WL 4527974 (W.D. Wash.
Oct. 3, 2008).

    To summarize: this case is not one that involves claims
that by "[t]heir very nature involve repeated conduct."  Morgan,
536 U.S. at 115.  The EEOC makes allegations of demotions,
reductions in pay and responsibility, and other specific
negative employment actions following the claimants' return from
maternity leave.  These are paradigmatic "discrete acts" that
are subject to the charge-filing requirement.[18]  Because the
Court holds that, in this context, the charge-filing requirement
applies to the EEOC's section 707 claims, any section 707 claims
based on alleged discrimination that occurred before May 28,
2005 - 300 days prior to the filing of the first discrimination
charge (filed March 24, 2006) - are time-barred.  The EEOC
remains free to pursue injunctive relief as well as relief for

---

[17] The EEOC is not barred, however, from using "prior acts as
background evidence in support of a timely claim."  See Morgan,
536 U.S. at 113.

[18] Although the Court does not rely on this fact, it is also
telling that the EEOC focused its conciliation efforts on
obtaining individual monetary awards that differed, sometimes
substantially, from claimant to claimant, rather than on changes
in company policy.

individuals whose claim of discrimination accrued in accordance
with the charge-filing requirement.

### 2. Discrimination Claims Under Section 706

Section 706 contains a charge-filing requirement.  42
U.S.C. § 2000e-5(e)(1).  The EEOC does not dispute that the 300-
day charge filing period applies to its section 706 claims.
(EEOC Br. at 18.)  It relies, however, on the continuing
violation doctrine to save any charges that accrued before May
28, 2005, which is 300 days prior to the filing of the initial
discrimination charge on March 24, 2006.  (Id.; Bloomberg Br. at
9.)  For the reasons stated above in Part III.C.1., the
continuing violation doctrine is inapplicable to these claims.
Any charges under section 706 based on alleged unlawful
employment practices before May 28, 2005, are time barred.

### 3. Retaliation Claims

Although the EEOC's retaliation claims were dismissed for
failure to conciliate, supra Part II.B.2., the Court, in the
alternative, briefly addresses the timeliness of those claims,
which do not involve a pattern or practice allegation.

Here again, Bloomberg, relying on section 706's charge-
filing requirement, argues that claims that accrued prior to the
300-day filing period extending backward from the initial
retaliation charge (filed January 30, 2008) are time-barred.
(Bloomberg Br. at 14.)  The EEOC argues that because of its

49

"uniquely broad authority," it can investigate and prosecute claims without regard to section 706's charge-filing deadline. (EEOC Br. at 19.)   It also attempts to render all retaliation claims timely by way of the continuing violation doctrine.   (Id. at 19-20.)

The EEOC's first argument is plainly wrong.   Section 706, under which the EEOC brought the retaliation claims, requires a charge to be filed within 180 or 300 days of the alleged unlawful employment practice, 42 U.S.C. § 2000e-5(e)(1), as the EEOC concedes.   (EEOC Br. at 8.)   An agency may not disregard a clear statutory command.   E.g., Lincoln v. Vigil, 508 U.S. 182, 194 (1993); Ming Lam Sui v. INS, 250 F.3d 105, 113 (2d Cir. 2001).

Its second argument fares no better.   The EEOC has not filed a pattern or practice action with respect to its retaliation claims, and those claims involve individual allegations of discrete acts.   The continuing violation doctrine has no application in individual lawsuits based on discrete acts.   Shomo, 579 F.3d at 181 (citing Morgan, 536 U.S. at 114). The doctrine thus does not apply here.   The EEOC's argument that it has alleged an overarching retaliatory practice sufficient to constitute something akin to a hostile work environment (EEOC Br. at 19) goes too far.   The EEOC's retaliation claims are based on individual, discrete employment decisions.   (Id. at 20

50

(citing refusal to promote, denial of transfer, reduction in
compensation).)  For the same reasons discussed supra, such
claims are not amenable to the application of the continuing
violation doctrine.  The EEOC's retaliation claims that accrued
prior to April 5, 2007 (300 days before the first retaliation
charge was filed) are time barred.

 D. Conclusion

 The upshot is as follows.  Any of the EEOC's discrimination
claims, whether based on section 706 or 707, that are based on
conduct that happened prior to May 28, 2005, are time-barred.
In the alternative to the Court's dismissal of the retaliation
claims for failure to conciliate, any of the EEOC's retaliation
claims that are based on conduct that happened prior to April 5,
2007, are time barred.

 Specifically, fourteen discrimination claimants ended their
employment relationships with Bloomberg prior to May 28, 2005.
(See EEOC Facts ¶¶ 25-38; Bloomberg Br. at 2 n.2 (listing
claimants).)  It is therefore impossible that they experienced
actionable discrimination, and their claims are dismissed.  The
EEOC's suit contains thirty discrimination claimants (see
Bloomberg Br. at 11 n.3) with allegations involving discrete
acts that may have happened prior to May 28, 2005.  Any of their
claims based on such acts are time-barred and dismissed on the
same basis.  Because the record is unclear as to the specific

claimants and claims that fall within the charge-filing period,
the Court leaves it to the parties to vet out the untimely
claims.

Finally, the EEOC alleges retaliation based on events that
occurred prior to April 5, 2007, on behalf of seventeen
claimants.  (See Bloomberg Br. at 18 n.4.)  To the extent that
these retaliation claims are based on such events, they are
dismissed as time-barred in the alternative to their dismissal
for failure to conciliate.  Here again, the record is not clear
as to which claims and claimants fall within the charge-filing
period.  The Court leaves it to the parties to determine which
claims are timely.

For the reasons stated above, Bloomberg's Motion for
Summary Judgment as to Time-Barred Claims [dkt. no. 99] is
GRANTED.

The parties shall confer and inform the Court by letter no
later than November 8, 2010 how they propose to proceed.


SO ORDERED.

October 25, 2010
New York, New York

LORETTA A. PRESKA
Chief U.S. District Judge


52