IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                      :

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                      :

                     Plaintiff,                      :         07-CV-8383 (LAP/HP)

                         v.                            :         ECF ACTION

BLOOMBERG L.P.,                            :

                     Defendant.                  :

------------------------------------------------------------- x
                                                      :

JILL PATRICOT, TANYS LANCASTER,
JANET LOURES, MONICA PRESTIA,      :
MARINA KUSHNIR and MARIA
MANDALAKIS,                                   :

                   Plaintiff-Intervenors,      :

                         v.                            :

BLOOMBERG L.P.,                            :

                     Defendant.                  :

------------------------------------------------------------- x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BLOOMBERG L.P.'S
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S PATTERN OR
PRACTICE DISCRIMINATION CLAIM**

**TABLE OF CONTENTS**

Page

I. ALLEGED BIAS AND SUBJECTIVE DECISIONMAKING DO NOT ESTABLISH A PATTERN OR PRACTICE OF DISCRIMINATION ABSENT A CONNECTION TO ADVERSE ACTIONS AGAINST THE CLASS .......................... 2

II. EEOC'S ANECDOTAL EVIDENCE IS LEGALLY INSUFFICIENT TO SHOW THAT DISCRIMINATION WAS BLOOMBERG'S STANDARD OPERATING PROCEDURE ................................................................................................................ 4

    1. EEOC Cannot Establish a Pattern or Practice of Discrimination in Compensation. ................................................................................................ 5

    2. EEOC Cannot Establish a Pattern or Practice of Discrimination in Demotions. ................................................................................................... 8

    3. EEOC Cannot Establish Systemic Discrimination in Other Practices .................... 9

    4. EEOC's Reliance on Inapposite Cases Does Not Withstand Scrutiny ................. 10

III. BLOOMBERG'S STATISTICAL EVIDENCE IS HIGHLY PROBATIVE ................. 12

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**SUPREME COURT CASES**

*Cooper v. Fed. Reserve Bank of Richmond,*
   467 U.S. 867 (1984)..................................................................................................10

*Harris v. Forklift Sys. Inc.,*
   510 U.S. 17 (1993)......................................................................................................5

*Int'l Bhd. of Teamsters v. United States,*
   431 U.S. 324 (1977)....................................................................................................6

*Reeves v. Sanderson Plumbing Prods.,*
   530 U.S. 133 (2000)....................................................................................................3

*Staub v. Proctor Hosp.,*
   131 S. Ct. 1186 (2011)................................................................................................3

**CIRCUIT COURT CASES**

*Anderson v. Douglas & Lomason Co.,*
   26 F.3d 1277 (5th Cir. 1994) ......................................................................................2

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
   365 F.3d 107 (2d Cir. 2004)........................................................................................3

*Holsey v. Armour & Co.,*
   743 F.2d 199 (4th Cir. 1984) ....................................................................................11

*King v. Gen. Elec. Co.,*
   960 F.2d 617 (7th Cir. 1992) ......................................................................................5

*Lettieri v. Equant, Inc.,*
   478 F.3d 640 (4th Cir. 2007) ......................................................................................4

*Robinson v. Metro-North Commuter R.R.,*
   267 F.3d 147 (2d Cir. 2001)......................................................................................11

*Sorlucco v. N.Y. City Police Dep't,*
   971 F.2d 864 (2d Cir. 1992)................................................................................3, 11

*Ste. Marie v. E. R.R. Ass'n,*
   650 F.2d 395 (2d Cir. 1981)........................................................................................2

## **TABLE OF AUTHORITIES**

Page(s)

**DISTRICT COURT CASES**

*Adorno v. Port Auth.*,
   258 F.R.D. 217 (S.D.N.Y. 2009) ...........................................................................3, 11

*Apsley v. Boeing Co.*,
   722 F. Supp. 2d 1218 (D. Kan. 2010), *reconsideration denied*, No. 05-1368-EFM,
   2011 WL 1118835 (Mar. 28, 2011)................................................................................14

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*,
   691 F. Supp. 2d 372 (S.D.N.Y. 2009).............................................................................4

*EEOC v. LA Weight Loss*,
   509 F. Supp. 2d 527 (D. Md. 2007)...............................................................................11

*EEOC v. McDonnell Douglas Corp.*,
   17 F. Supp. 2d 1048 (E.D. Mo. 1998), *aff'd*, 191 F.3d 948 (8th Cir. 1999)..................14

*EEOC v. Republic Servs. Inc.*,
   640 F. Supp. 2d 1267 (D. Nev. 2009)........................................................................2, 11

*EEOC v. Scolari Warehouse Mkts., Inc.*,
   488 F. Supp. 2d 1117 (D. Nev. 2007).............................................................................11

*In re W. Dist. Xerox Litig.*,
   850 F. Supp. 1079 (W.D.N.Y. 1994) ...............................................................................2

*Matthews v. Conn. Light & Power Co.*, No: 3:05-cv-226 (PCD),
   2006 WL 2506597 (D. Conn. Aug. 29, 2006) .................................................................3

*Port Auth. Police Asian Jade Soc'y v. Port Auth. of N.Y. & N.J.*,
   681 F. Supp. 2d 456 (S.D.N.Y. 2010).............................................................................3

*Seils v. Rochester City Sch. Dist.*,
   192 F. Supp. 2d 100 (W.D.N.Y. 2002), *aff'd*, 99 F. App'x 350 (2d Cir. 2004) ............5

*United States v. City of N.Y.*,
   713 F. Supp. 2d 300 (S.D.N.Y. 2010)...........................................................................11

*Wright v. Stern*,
   450 F. Supp. 2d 335 (S.D.N.Y. 2006).......................................................................3, 11

**STATUTES**

42 U.S.C. § 2000e(k) ..........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

EEOC Compliance Manual § 604.3(b), 2006 WL 4672682............................................................4

Bloomberg established in its Opening Brief ("Br.") that EEOC cannot prove a pattern or practice of discrimination because (1) it has no evidence comparing class member experiences to those of similarly situated non-class members, *i.e.*, Bloomberg employees who took leaves of similar duration; (2) it has no statistical evidence supporting its sweeping claims, even though such evidence is critical to proving a pattern or practice; (3) Bloomberg's statistical evidence refutes EEOC's compensation and demotion claims; and (4) EEOC's sporadic discriminatory anecdotes, even if credited for purposes of Bloomberg's motion, do not show that discrimination was Bloomberg's "standard operating procedure" or that it is "rotten to the core." *See* Br.

In response ("Opp."), EEOC claims that anecdotal evidence proves a pattern-or-practice claim, but EEOC cannot identify any case involving a large employer where anecdotal evidence alone was sufficient to do so despite statistical evidence that disproved discrimination. EEOC claims that bias against pregnant women purportedly established through stray comments by senior Bloomberg managers, combined with allegedly centralized and subjective decisionmaking, defeats summary judgment on its pattern-or-practice claim. But stray comments and subjective decisionmaking, even if proven, are not unlawful absent evidence that they caused adverse employment actions against the class, of which EEOC has none. EEOC also incorrectly suggests that the Court give no weight to Bloomberg's statistical evidence, re-hashing the same arguments that the Court already rejected when it denied EEOC's motion to exclude this evidence.

None of EEOC's arguments establishes a genuine issue of material fact for trial, and the Court should enter judgment in Bloomberg's favor on EEOC's class discrimination claims.[1]

---

[1] EEOC's claim (Opp. 1, n.1) that individual claims remain for trial because Bloomberg has not yet moved for summary judgment on them contradicts its concession that briefing on the individual claims should occur *after* EEOC's class claims are resolved, to which the Court agreed. Transcript of Court Conference (Mar. 25, 2010) at 54-55. Bloomberg plans to request permission to file these motions after this motion is resolved.

I. ALLEGED BIAS AND SUBJECTIVE DECISIONMAKING DO NOT ESTABLISH A PATTERN OR PRACTICE OF DISCRIMINATION ABSENT A CONNECTION TO ADVERSE ACTIONS AGAINST THE CLASS

EEOC argues that Bloomberg's upper-level managers harbor bias against pregnant women, and that this bias, coupled with allegedly unchecked decisionmaking authority and subjective employment policies, establishes a pattern or practice of discrimination. Opp. 2-12. But as Bloomberg demonstrated (Br. 21, 23-24), neither so-called subjective decisionmaking nor stray alleged comments (even those purportedly reflecting gender stereotypes) can make out a pattern-or-practice claim absent proof of adverse effects on the class. The "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII," *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citations & quotation marks omitted), and "is not indicative of a pattern or practice of . . . discrimination." *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1295 (5th Cir. 1994). Courts have rejected pattern-or-practice claims when "Defendants' top executives . . . made . . . biased comments . . . and fostered a corporate culture of open hostility [toward the class]" absent evidence linking those comments and culture to widespread employment decisions. *EEOC v. Republic Servs. Inc.*, 640 F. Supp. 2d 1267, 1278 (D. Nev. 2009); *see also In re W. Dist. Xerox Litig.*, 850 F. Supp. 1079, 1088 (W.D.N.Y. 1994). Similarly, an employer's subjective employment policies, even if proven, raise an inference of discrimination only when the evidence shows "that the potential for disparate treatment by loose procedures has been realized on a significant scale." *Ste. Marie v. E. R.R. Ass'n*, 650 F.2d 395, 405 (2d Cir. 1981). Here, EEOC lacks such evidence.

*First*, EEOC has not presented any classwide evidence that the various alleged comments and subjective policies to which it points had any adverse effect on the class. Indeed, the available evidence establishes that it did not; Bloomberg compensated class members more

favorably than similarly situated employees, and did not remove direct reports in disproportionate numbers. Bloomberg's R. 56.1 Statement ("SF"), ¶¶ 48-54, 58-62. Nor does EEOC have any admissible classwide evidence of the other alleged practices that it claims resulted in adverse actions against individual class members. If, as EEOC alleges, a small group of biased managers controlled all decision making, and did so in a discriminatory manner, the result of this bias would appear in the statistical evidence, but it does not.

*Second*, the cases on which EEOC relies do not save its pattern-or-practice claim from summary judgment. In the pattern-or-practice or other class cases cited by EEOC in which discriminatory comments and subjective decisionmaking were deemed relevant, there was *also* statistical evidence showing that those factors contributed to adverse employment actions against the class. *See, e.g., Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 871-73 (2d Cir. 1992); *Wright v. Stern*, 450 F. Supp. 2d 335, 364-65 (S.D.N.Y. 2006); *Port Auth. Police Asian Jade Soc'y v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 460 (S.D.N.Y. 2010); *Adorno v. Port Auth.*, 258 F.R.D. 217, 232 (S.D.N.Y. 2009). Likewise, in the individual cases cited by EEOC, the alleged comments and/or decisionmaking practices were tied to an adverse employment action. *See, e.g., Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 152 (2000) (comments made by manager who was "the actual decisionmaker behind [plaintiff's] firing"); *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1193 (2011) (requiring showing that remarks actually influenced the alleged adverse employment action); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 126 (2d Cir. 2004) (comments made by "immediate supervisors . . . responsible for evaluating [plaintiff's] performance"); *Matthews v. Conn. Light & Power Co.*, No: 3:05-cv-226 (PCD), 2006 WL 2506597, at *7-8 (D. Conn. Aug. 29, 2006) (stray remarks usually inadequate, but can be considered if there is other evidence of an adverse employment action, and the

remarks were made by someone with a substantial role in the action); *Lettieri v. Equant, Inc.*, 478 F.3d 640, 649 (4th Cir. 2007) (nexus shown between remarks and employment action).

*Third*, EEOC's claims about Bloomberg's purportedly "subjective and unchecked discretionary" decisionmaking process are unsupported. In fact, Bloomberg's performance measures include objective standards, such as sales quotas and number of new accounts in Sales, and the number of published pieces (e.g., feature stories, exclusive stories) in News. Bloomberg Reply 56.1 Stmt. ("Reply SF"), ¶ 102. EEOC's claim that managers were given no written guidelines governing compensation awards (Opp. 10) is untrue; Bloomberg's Online Compensation System provided guidelines even though nothing in Title VII requires them, and it is undisputed that Bloomberg also provided manager *training* in how to make compensation decisions.[2] *Id.*

## II. EEOC'S ANECDOTAL EVIDENCE IS LEGALLY INSUFFICIENT TO SHOW THAT DISCRIMINATION WAS BLOOMBERG'S STANDARD OPERATING PROCEDURE

Bloomberg established (Br. 9-15) that a plaintiff seeking to prove a pattern or practice without meaningful statistics faces an exceedingly heavy burden, and explained why EEOC's non-statistical evidence is legally insufficient to satisfy that burden with respect to each practice alleged in the Complaint. EEOC concedes that statistical evidence is "extremely important" to a pattern-or-practice case, EEOC Compliance Manual § 604.3(b), *available at* 2006 WL 4672682, and courts have held that statistics are "critical to the success" of such a claim, *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 691 F. Supp. 2d 372, 388-89 (S.D.N.Y. 2009), yet

---

[2] Bloomberg vigorously denies the allegations that its mangers harbor bias and made alleged discriminatory comments, but even if these allegations are presumed true for summary judgment purposes, they are legally irrelevant. Moreover, the testimony on which EEOC relies—even if credited and admissible (which it is not, Br. 23-26)—does not support EEOC's conclusions. Reply SF ¶¶ 83, 84a, 84b, 85a, 85b. EEOC's inflammatory rhetoric strays far from the facts it cites, and cannot be credited even on summary judgment.

EEOC relies only on anecdotal evidence as the required "substantial proof" of its broad allegations. *King v. Gen. Elec. Co.*, 960 F.2d 617, 624 (7th Cir. 1992). EEOC's evidence of the three discriminatory practices described in its Opposition—compensation, demotions, and all other allegedly discriminatory acts—does not satisfy its heavy burden to prove "pervasive, systemic discrimination." *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 118-19 (W.D.N.Y. 2002), *aff'd*, 99 F. App'x 350 (2d Cir. 2004).

1. <u>EEOC Cannot Establish a Pattern or Practice of Discrimination in Compensation</u>

EEOC alleges that 77 of 78 claimants "and other class members" received either (a) less total intended compensation following maternity leave;[3] (b) a flat base salary following leave; or (c) a decrease in the number of EECs awarded either as compared to their own pre-pregnancy trajectory, or as compared to other non-class members. Opp. 15-16. EEOC broadly claims that "Class Members experienced consistent increases in compensation until announcing their pregnancy or taking maternity leave," when their "compensation trajectory" took a "negative turn." Opp. 15-16. EEOC's anecdotal evidence, even if it were true, could not prove this sweeping claim.[4]

*First*, EEOC has no anecdotal evidence about 87% of the 603-person class. Opp. 15; EEOC 56.1 Stmt. ¶¶ 111-123 (noting compensation claims for 77 claimants and one additional class member, out of 603 class members, or 12.9%). Without such systemic evidence, EEOC

---

[3] "Total intended compensation" is comprised of base salary and the projected or "intended" value of Equity Equivalence Certificates ("EECs"). EECs are assigned an intended value when awarded, which may differ from the actual value when paid based on Company performance. Reply SF ¶ 111b, 113.

[4] EEOC implicitly suggests that the Court should reconsider its *Daubert* ruling because it did not have this anecdotal evidence when it ruled on those motions. Opp. 28, n.21. But EEOC has it backwards – anecdotal evidence cannot transform irrelevant and unreliable statistics into admissible evidence. Statistics establish classwide discrimination; anecdotes "br[ing] the cold numbers convincingly to life." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977). EEOC argues the opposite, but cites no authority that would support such a claim.

cannot prove that compensation discrimination against pregnant women was Bloomberg's "standard operating procedure." EEOC's claim that "Defendant's own statistical findings are consistent with EEOC's allegations," Opp. 16, is untrue, as both Drs. Ward and Johnson found that on average class members were compensated more favorably than other similar employees. SF ¶¶ 48-54, 58-62.

*Second*, EEOC's anecdotal evidence suffers from the same flaw as its rejected statistical analysis: by EEOC's own admission, it fails to compare "Class Members to non-Class Members taking similar amounts of leave." Opp. 15, n.11. EEOC is wrong that this legally mandated comparison is "essentially impossible" because Bloomberg "does not consistently track leave . . . and because very few Class Members worked alongside and were otherwise comparable to long-leave-takers." *Id.* All three statistical experts made this comparison—and it establishes no evidence of discrimination against the class. SF ¶¶ 47-62; Reply SF ¶ 112.

*Third*, EEOC's anecdotal evidence manipulates the available compensation data to create the appearance of adverse results when none exists. EEOC offers [Claimant 43] as an example, arguing that (1) her total intended compensation decreased in 2003, while she was on maternity leave; (2) the number of certificates that she was awarded decreased in 2004 and 2005; (3) her base salary remained flat in 2005; and (4) she received her lowest base salary increase ever in April 2006. Opp. 17. EEOC also claims that [Claimant 43] fared poorly compared to a male co-worker who held the same job title. But these cherry-picked claims are misleading.

- Although [Claimant 43]'s total intended compensation decreased by 4.3% in 2003, this followed an 8.4% decrease in 2002, *before* [Claimant 43] became pregnant. Reply SF ¶ 117a. The relative improvement in her compensation from 2002 to 2003 undercuts any claim that the 2003 decrease was due to her pregnancy or her leave.

- While the number of certificates that [Claimant 43] was awarded decreased from 2003 to 2005, the number of certificates awarded decreased companywide in these years. *Id.* ¶ 113. Moreover, the intended value of her certificate award—which

- all three statistical experts agreed was the appropriate measure (*id.*)—*increased* over this period, from $18,829 to $28,473 between 2003 and 2004, and from $28,473 to $34,097 between 2004 and 2005. *Id.* ¶ 117a.

- Although [Claimant 43]'s base salary remained flat in 2005, her total intended compensation *increased* that year, from $122,473 to $128,097. *Id.* All three statistical experts determined that total intended compensation was the most reliable measure of employee compensation; Bloomberg also views this as the most relevant measure. *Id.* ¶ 111b, 113.

- Although [Claimant 43] received only a modest base salary increase in 2006, she received a greater increase in total intended compensation, because her number of certificates, and their intended value, increased. *Id.* ¶ 117a.

- EEOC compares the percentage compensation increases between [Claimant 43] and a male training specialist. Opp. 17 n.14. But EEOC fails to mention that [Claimant 43]'s intended compensation was far more than that male every single year that the two held the same job title. In 2004, her intended compensation was more than twice as much as his ($122,473 versus $54,200), and her intended compensation was higher than his in 2005 ($128,097 versus $75,629), 2006 ($132,110 versus $97,839), and 2007 ($148,393 versus $126,149). Reply SF ¶¶ 117a, 117b.

The data belie EEOC's selective presentation of [Claimant 43]'s compensation. Although it was on a downward trend prior to her first pregnancy, [Claimant 43]'s total intended compensation *increased* every year since she returned from her first maternity leave in 2003, and was consistently greater than EEOC's only cited comparator. *Id.*

These facts do not establish compensation discrimination even as to [Claimant 43], much less as to a class. They demonstrate the danger of relying on select pieces of data to draw broad conclusions, and illustrate the critical importance of statistical evidence to establishing systemic discrimination. Statistics look at *all* of the available data, aggregate it, control for confounding factors, and thus provide a reliable measure of events at a systemic level. In this case, those statistics show that Bloomberg did not discriminate against class members in compensation. SF ¶¶ 48-54, 58-62. EEOC's cherry-picked examples cannot undermine that conclusion.[5]

---

[5] Bloomberg focuses on Ms. [Claimant 43]'s compensation because it is highlighted in EEOC's brief, and thus EEOC presumably considers it compelling. Other EEOC examples are

2. <u>EEOC Cannot Establish a Pattern or Practice of Discrimination in Demotions</u>

EEOC conclusorily alleges that forty-nine class members were variously demoted during the class period. Opp. 18. These allegations do not support a pattern or practice of discrimination.

*First*, Bloomberg showed that class members suffered no systemic loss of direct reports or decreases in compensation compared to similarly situated employees. SF ¶¶ 48-62. EEOC has not substantively challenged Dr. Ward's admissible conclusion that class members did not lose more direct reports than similarly situated employees. Mem. & Order, Aug. 31, 2010, ECF No. 166. EEOC cites no evidence to support its claim that the underlying data are incomplete and unreliable (*see* EEOC 56.1 Statement at 150-51). And EEOC's assertion that few class members had direct reports does not undermine Bloomberg's analysis of those who did.

*Second*, forty-nine alleged demotions out of a class of over 600 does not establish that it was Bloomberg's "standard operating procedure" to demote class members. Put differently, EEOC has no evidence that nearly 92% of the class was affected by a supposed policy to demote pregnant women and, indeed, the systemic evidence available suggests that there was no such policy. Under these circumstances, EEOC cannot prove a pattern or practice.

*Third*, EEOC misrepresents or overstates its evidence of demotions, characterizing as demotions job changes that the class member saw as a promotion, that the claimant requested, or that resulted from a reorganization that affected employees other than the claimant. *See* Reply SF ¶¶ 127-28, 130, 132, 135. For example, EEOC claims that [Class Member 4] was

───────────────────────

(continued…)

similarly flawed. EEOC claims that [Claimant 13]'s certificates remained flat, her total intended compensation decreased, and her base salary remained flat after her pregnancy, but [Claimant 13]'s total intended compensation *increased* every year from 2002 (the year prior to her leave) through 2006. Reply SF ¶ 121.

demoted after announcing her pregnancy, but [Class Member 4] received several significant pay increases (see *infra* at 14), and she viewed the reassignment—to Relationship Manager for [REDACTED], one of Bloomberg's largest customers—as a promotion. *Id.* ¶ 135. She testified that she had "an excellent experience as a working mother at Bloomberg." *Id.*

      3.    <u>EEOC Cannot Establish Systemic Discrimination in Other Practices.</u>

EEOC finally claims that its anecdotal evidence about an amalgamation of other allegedly discriminatory practices establishes a pattern or practice of discrimination. It does not.

*First*, EEOC has legally insufficient evidence of a pattern or practice of discrimination in the only two areas that it alleges in its complaint or interrogatory responses seeking identification of all alleged discriminatory practices: exclusion from management meetings, and negative performance evaluations. Br. 21-23; 2d Am. Compl. ¶ 7(a); EEOC's Responses and Objections to Bloomberg's Fifth Set of Interrogatories, No. 1. Fewer than 3% of class members allege exclusion from meetings or any other form of isolation. SF ¶¶ 64-65. Likewise, only fifty claimants allege negative performance evaluations (*id.* ¶ 66); EEOC has no evidence that class members received disproportionately negative evaluations compared to other employees.

*Second*, EEOC again mischaracterizes the evidence. For example, it alleges that manager Max Linnington identified a less qualified male as a hypothetical successor over [Class Member 2] [Class Member 2] allegedly because of her "family situation." Opp. 7. EEOC omits [Class Member 2]'s own testimony that she "told Max I wouldn't want his job" because "It's just too demanding. A family is more important to me. You make your choices." Reply SF ¶ 86b. Similarly, EEOC claims that [Claimant 36] was not promoted in favor of a "lower-rated man." (EEOC 56.1 Stmt. ¶ 138). But the man hired for the architectural design job at issue was not a Bloomberg employee, and thus had not been "rated"; he also trained under internationally renowned

architect I.M. Pei and had won numerous international awards for design, whereas Claimant 36' primary experience was designing fire houses on Long Island.  Reply SF ¶ 138.

*Finally*, even if all of EEOC's "other" pattern or practice allegations were admissible and credited, they would not establish a pattern or practice of discrimination for two reasons.  First, the allegations of even 78 individuals, without any statistical support, are legally insufficient to establish a pattern or practice.  EEOC has no evidence at all to show that 87% of class members were affected by Bloomberg's supposed discriminatory practices, and it therefore cannot show that such discrimination was Bloomberg's "standard operating procedure."  As the Supreme Court has cautioned, "court[s] must be wary of a claim that the true color of a forest is better revealed by reptiles hidden in the weeds than by the foliage of countless free-standing trees." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 879 (1984) (citation & quotation marks omitted).  And the far-ranging allegations that EEOC alleges—some claimants received too much training, some not enough; some were encouraged to work part-time, while others were discouraged from doing so—reveal no companywide "pattern" of discrimination at all.  Br. 29.  Indeed, any such policy to discriminate against individuals in these varied and intangible ways, but to pay them more favorably than similarly situated employees, defies common sense.

    4.    <u>EEOC's Reliance on Inapposite Cases Does Not Withstand Scrutiny</u>

Bloomberg demonstrated (Br. 11-14) that courts routinely reject pattern-or-practice claims supported only by anecdotal evidence—particularly when the defendant introduces statistics that negate discrimination.  EEOC nevertheless insists that anecdotal evidence alone may suffice, and that in evaluating anecdotal evidence, "courts have eschewed numeric claimant minimums."  Opp. 13-14, 23-27.  But the cases on which EEOC relies do not defeat summary judgment on this record of isolated anecdotal evidence.

Several of the cases on which EEOC relies involved the very type of statistical evidence that EEOC lacks here. *See, e.g., Sorlucco*, 971 F.2d at 871-73; *Adorno*, 258 F.R.D. at 232; *Wright*, 450 F. Supp. 2d at 374-75. Others establish that anecdotal evidence may be sufficient when coupled with the "inexorable zero," *i.e.*, evidence that no class member was treated in a non-discriminatory manner. *See, e.g., Holsey v. Armour & Co.*, 743 F.2d 199, 204-05 (4th Cir. 1984); *United States v. City of N.Y.*, 713 F. Supp. 2d 300, 317-18 (S.D.N.Y. 2010). *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 533-34 (D. Md. 2007), involved express admissions by the employer's managers that that the employer adopted a concrete discriminatory policy. And *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1123 (D. Nev. 2007), is an outlier involving hostile work environment claims, which are not at issue here.

EEOC cannot escape the governing law. "[T]he liability phase [of a pattern-or-practice case] is largely preoccupied with class-wide statistical evidence directed at establishing an overall pattern or practice of intentional discrimination," with anecdotal "evidence regarding specific instances of alleged discrimination . . . simply provid[ing] 'texture' to the statistics." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 168 (2d Cir. 2001). And courts have routinely granted summary judgment on pattern-or-practice claims when, as here, EEOC has no statistical evidence to support its claim, and the defendant presents statistical evidence refuting it. *See* Br. 13-15.[6] Lacking any such statistical evidence, and based only on anecdotal evidence that at most shows isolated and sporadic proof of discrimination, EEOC's pattern-or-practice claims cannot survive summary judgment.

---

[6] EEOC assumes that *Republic Services* would have been decided differently "if EEOC had shown more centralization." Opp. 9, n.8. *Republic* says no such thing. Instead, it says that "[a]t most . . . EEOC created a genuine issue of fact as to whether individuals were terminated because of their age. With such a large company with numerous supervisors and lines of business, possible instances of age discrimination do not create a genuine issue of fact as to whether it was Defendants' usual practice to discriminate . . . ." 640 F. Supp. 2d at 1319.

## III. BLOOMBERG'S STATISTICAL EVIDENCE IS HIGHLY PROBATIVE

EEOC bears a substantial burden of proof in this case that its affirmative anecdotal evidence fails to satisfy. Even absent Bloomberg's affirmative statistical evidence, Bloomberg is entitled to judgment as a matter of law on EEOC's class discrimination claims. Bloomberg's statistical evidence confirms, however, that it did not discriminate against class members in either compensation or elimination of direct reports; for the reasons this Court has already held, that statistical evidence is admissible. Mem. & Order, Aug. 31, 2010, ECF No. 166; *see also* ECF Nos. 115, 117-18, 121, 123-26, 130-31, 144-50, 153-62, 166, incorporated in full by reference. EEOC disputes none of this, but argues that this evidence should be given little weight because it allegedly answers the wrong legal question by comparing class members to other leave-takers, and because the statistics "contradict Defendant's anecdotal evidence" in an undefined way. Opp. 29. EEOC is wrong.

*First*, EEOC misrepresents the allegations at issue. EEOC's complaint alleges that class members experienced discrimination "once they announced their pregnancy and once they returned to work after taking maternity leave," Second Am. Compl. ¶ 7(a), and all of the statistical experts "only analyzed the compensation of class members with identifiable maternity leaves." ECF No. 130 at 2, n.2. Nobody has defined the class to include all mothers, and EEOC has presented no evidence about any other mothers allegedly included in the class. Therefore, the relevant class definition includes only individuals who took maternity leave during the class period. Indeed, this Court has already implicitly rejected EEOC's efforts to recharacterize its allegations in this way. Mem. & Order, Aug. 31, 2010, ECF No. 166.

*Second*, were EEOC correct that the class includes all mothers, and not just the 603 women who took maternity leave during the class period, EEOC's anecdotal evidence would be

that much less significant than it already is. If all "mothers" are included in the class, the total class size would rise significantly to include many mothers—such as, for example, manager Beth Mazzeo, who has three children (Reply SF ¶ 126)—not presently counted, thus making EEOC's percentages even smaller and less significant.

*Third*, EEOC ignores the legal standard that governs its allegations. Under the PDA, upon which EEOC's claim is based, "women affected by pregnancy, childbirth, or related medical conditions *shall be treated the same* for all employment-related purposes . . . *as other persons not so affected but similar in their ability or inability to work* . . . ." 42 U.S.C. § 2000e(k) (emphasis added). Therefore, as this Court has correctly held, a court will not find discrimination on the basis of pregnancy unless there is evidence that an employer treated women who took maternity leave differently than those who took other types of leave. Mem. & Order 18, 31, Aug. 31, 2010, ECF No. 166; *see also* ECF No. 118 at 9-11. Here, therefore, class member compensation must be compared to that of individuals who have taken non-maternity leaves, which is exactly what Bloomberg's experts studied. *Id.*

*Fourth*, EEOC misunderstands the basis for deciding which employees are similarly situated, claiming that the experts should not have studied leave because Bloomberg does not consider it in setting compensation. Opp. 29. The relevant legal standards, and not company policy, determine which employees are similarly situated to class members, and the PDA makes clear that pregnant women who take leave must be compared to other employees who took leave. *See supra* at 13. Under EEOC's theory, an expert analysis that studied gender in a gender discrimination case, or race in a race discrimination case, would be "irrelevant" to the allegations if company policy prohibited consideration of gender or race in setting compensation. This Court has properly rejected any such suggestion. Mem. & Order, Aug. 31, 2010, ECF No. 166

*Finally*, EEOC claims that Defendant's statistical analysis "contradicts" Bloomberg's anecdotal evidence, because Bloomberg has not argued that it treats all leave-takers badly. But Bloomberg's statistics do not show that it treated other leave-takers badly; instead, they show that Bloomberg treated class members more favorably than other leave-takers. And there are many anecdotes that establish just that. For example, class members [Claimant 33] and [Claimant 58] [Claimant 58] each received steady pay increases following their respective maternity leaves, and thereafter. *See* Reply SF ¶ 86a ([Claimant 58]'s intended compensation increased from $173,184 in 2004, the year of her first leave, to $229,690 in 2005, $273,885 in 2006, and $314,310 in 2007); ¶ 131 ([Claimant 33]). Similarly, [Class Member 4] received substantial pay increases following her maternity leave. *Id.* ¶ 135. Her intended compensation in 2004, just prior to her leave, was $239,000; post-leave, it rose to $325,000 in 2005, $373,000 in 2006, $410,000 in 2007, and $464,000 in 2008. *Id.*

There is no basis to reject or discount Bloomberg's statistical analysis. That analysis is admissible, compelling, and dispositive of EEOC's pattern-or-practice claim.

\* \* \*

In the end, EEOC simply lacks sufficient evidence to prove its claim that Bloomberg systematically discriminated against the class. Indeed, courts have rejected pattern-or-practice claims in the face of far more evidence, including (1) affirmative statistical evidence; (2) allegations of discriminatory statements by the company CEO and other high level managers; (3) subjective decisionmaking; (4) admissible expert testimony about a biased culture; and (5) class member anecdotal evidence. *See Apsley v. Boeing Co.*, 722 F. Supp. 2d 1218 (D. Kan. 2010), *reconsideration denied*, No. 05-1368-EFM, 2011 WL 1118835 (Mar. 28, 2011); *EEOC v. McDonnell Douglas Corp.*, 17 F. Supp. 2d 1048 (E.D. Mo. 1998), *aff'd*, 191 F.3d 948 (8th Cir.

1999). Though EEOC claims that these courts simply "found [the anecdotal evidence] weak and/or insufficient," Opp. at 25, it ignores that plaintiffs presented the statistical evidence in these cases that EEOC lacks here, yet *still* failed to prove a pattern or practice of discrimination. Bloomberg's statistical evidence in this case is fatal to EEOC's pattern-or-practice claim, because it affirmatively refutes EEOC's claim of systemic bias. And it makes no sense to suggest, as EEOC does, that Bloomberg engaged in a "pattern" of discrimination by paying class members more than other similarly situated employees, but targeting them in a variety of less tangible ways. EEOC's pattern-or-practice claim must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Bloomberg respectfully requests that the Court enter judgment in Bloomberg's favor on EEOC's pattern-or-practice class discrimination claim.

Dated: April 18, 2011

WILLKIE FARR & GALLAGHER LLP

By: /s/ Thomas H. Golden
Thomas H. Golden (TG 1467)
tgolden@willkie.com
(A Member of the Firm)
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

- and -

JONES DAY

By: /s/ Eric S. Dreiband
Eric S. Dreiband *(admitted pro hac vice)*
edreiband@JonesDay.com
(A Member of the Firm)

51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939