1   1BLFEEOC

2   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
3   ------------------------------x
    EQUAL EMPLOYMENT OPPORTUNITY
4   COMMISSION,

5                   Plaintiff,

6              v.                        07 CV 8383 (LAP)

7   BLOOMBERG, L.P.,

8                   Defendant.
    ------------------------------x
9                                       New York, N.Y.
                                        November 21, 2011
10                                      2:30 p.m.
    Before:
11                      HON. LORETTA A. PRESKA,

12                                          District Judge

13                           APPEARANCES

14  EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
         Attorneys for Plaintiff
15  RAECHEL LEE ADAMS
    JUSTIN MULAIRE
16
    JONES DAY
17       Attorneys for Defendant Bloomberg, L.P.
    ERIC S. DREIBAND
18
    WILLKIE FARR & GALLAGHER LLP
19       Attorneys for Defendant Bloomberg
    THOMAS H. GOLDEN
20
    DEALY & SILBERSTEIN, LLP
21       Attorneys for Intervenor Plaintiffs
    MILO SILBERSTEIN
22  WILLIAM J. DEALY

23  THE ROTH LAW FIRM
         Attorneys for Intervenor Plaintiffs
24  JONAH GROSSERDT

25

1          (Case called)

2          (In open court)

3          THE COURT:  Good afternoon, friends.  What would you

4     like to discuss first?  Nobody wants to talk?

5          MR. DREIBAND:  Your Honor, Eric Dreiband for the

6     defendant.  We'd just like to discuss scheduling and page

7     limits for our summary judgment motions on the individual

8     claims.

9          THE COURT:  All right.  At some point in time

10    defendants talked about some of these claims were time barred.

11    What's that about?

12         MR. GOLDEN:  Tom Golden from Willkie Farr.  We had

13    moved for summary judgment on various claims being time barred.

14    Your Honor granted that.

15         THE COURT:  But that's not one of the motions here.

16         MR. GOLDEN:  No.

17         THE COURT:  Even for some of these individuals --

18         MR. GOLDEN:  A small number of the specific claimants

19    that we were able to identify we thought were actually subject

20    to your Honor's time barred order, I think we've worked that

21    out with EEOC now.

22         THE COURT:  Okay.  Thank you.

23         MR. DREIBAND:  Your Honor, if I could, there are some

24    claims that plaintiff intervenors had made that we asserted

25    were time barred.  I think that's what your Honor is referring

1    to.

2              THE COURT:  So what are they?  Is it individual, or

3    what's the basis for the claim of time barred?

4              MR. DREIBAND:  There are different statutes that apply

5    to the plaintiff intervenor claims, but either they're beyond

6    the 300-day period in Title VII or they're beyond the statute

7    of limitations that apply under the state and local law claims,

8    the claims that were asserted or in the case of the Family

9    Medical Leave Act as well.

10             THE COURT:  The question was whether those folks,

11   whether we would all benefit by grouping those folks together

12   for consideration of the time barred claim.

13             MR. DREIBAND:  Your Honor, yes, I think what we would

14   propose to do is file one brief and we would essentially say

15   here are the limitations periods for the claims asserted by the

16   plaintiff intervenors, some of which overlap, like Title VII

17   claims, and for those that don't, we simply lay out the time

18   barred claims for the other statutes and assert in our motion

19   for each one of them in one brief.  That's how we propose to do

20   it.

21             THE COURT:  Look, here's -- big picture, and putting

22   aside these time barred people for a minute.  What we would

23   like to see and what I think is going to end up being at least

24   easier on our end is having a law brief.  Whatever you people

25   think the law is, write it down.  That's a brief of a bunch of

1    pages.  Then as to each person you are moving against,

2    supplement for that person.  The supplement would have in it

3    whatever, an affidavit, I assume, with whatever documents are

4    applicable to that person, so that would be the fact papers,

5    and the legal argument as to that person, and the Rule 56.1 as

6    to that person.  So that then we could pick up the moving

7    supplement, the opposing supplement and the reply supplement as

8    to that person.  That's our general thought as opposed to

9    carrying around a 100-page moving brief and God knows how many

10   factual pages all in one bunch.  Do you understand what I'm

11   saying?

12            MR. DREIBAND:  Yes, your Honor.

13            THE COURT:  And on the supplement, doesn't have to be

14   fancy.  It can say supplement as to plaintiff such and such and

15   just go into it.  This is not intended to make extra work or

16   extra pages.  And so whatever number of pages you get, use it

17   any way you want as between your laying out of the law and your

18   supplements for each individual person.  Is there any reason we

19   can't generally do that?

20            MR. GOLDEN:  And, your Honor, did your Honor envision

21   sort of like one bound volume that would have each of those

22   pieces, in other words, one bound volume per claimant?

23            THE COURT:  Per person.

24            MR. GOLDEN:  That would have the supplement, the legal

25   arguments, affidavits and 56.1.

1    THE COURT:  Right, and I assume the document is not

2    going to be like this, right?

3    MR. GOLDEN:  That's right.

4    THE COURT:  I mean, you get my point again.  I don't

5    want to be carrying a 100-page brief, plus a 100-page

6    opposition brief, plus whatever the heck it is reply brief

7    every time I want to read about this case.  Right?  So just in

8    general.  Any reason we can't do that?

9    MR. DREIBAND:  Fine with us, your Honor.

10   MS. ADAMS:  Just to clarify, if I may, you're talking

11   about the non-intervenor claimants as well, the EEOC portion.

12   THE COURT:  Absolutely.  Because there's thousands of

13   people here.

14   MS. ADAMS:  Not exactly thousands, but --

15   THE COURT:  So, then, back to my statute of

16   limitations question.  Should the statute of limitations be

17   treated differently or not?  Only you know what the overlap is

18   in the various arguments.

19   MR. DREIBAND:  Your Honor, the statute of limitations

20   issues that apply to intervenors are fairly simple, which is

21   there's a precise moment in time where the limitations period

22   cuts off claims and that's different for each claim and each

23   statute.  It's really up to your Honor.  We could do it as part

24   of our supplement for each person which we have a short

25   section, we would say here are the claims, here's the statute

1   of limitations period and anything before that is time barred.

2   Might be the easiest way to do it.

3         THE COURT:  Is it going to benefit us?  As to the

4   persons whose claims you are arguing are time barred, are there

5   additional arguments -- assuming you lose the time bar

6   argument, are there additional arguments that goes to each one

7   of those people?

8         MR. DREIBAND:  Yes, your Honor.  I would anticipate or

9   we would anticipate the plaintiff intervenors would assert a

10   continuing violation theory perhaps, I don't know, I'll leave

11   it to them to see how they plan to approach that.  But, yes, we

12   also intend to argue that if that limitations period is not a

13   persuasive argument to the Court that on the merits of the

14   claim that we think we're entitled to summary judgment as well.

15         THE COURT:  Let me ask you something else about the

16   merits.  In your original letter on October 28, it says

17   Bloomberg intends to move for summary judgment on all of the

18   claims asserted by EEOC on behalf of individual claimants on

19   the ground that EEOC has insufficient evidence that any

20   violation occurred.  What does that mean?  At this point in

21   time they just have to have some evidence from which a fact

22   finder could find a violation.

23         MR. DREIBAND:  Then I should clarify, your Honor.

24   What I mean by that is there's no evidence that a violation

25   occurred with respect to the individuals.

1        THE COURT:  And you people are telling me that in good

2    faith, there is a good-faith basis to make a motion as to every

3    one of these people?

4        MR. DREIBAND:  Yes.

5        THE COURT:  All right.  Let me ask a different

6    question, now.  Why are -- I see.  Why are we distinguishing in

7    your briefing proposal between the plaintiff intervenors and

8    the remaining individual claimants?  The law is not different,

9    right?

10        MR. DREIBAND:  Well, there are different claims that

11   the plaintiff intervenors are asserting.  The EEOC is asserting

12   at this point only individual claims for Title VII violations

13   for the 32 claimants and six additional plaintiff intervenors.

14   The plaintiff intervenors, on the other hand, are asserting

15   additional Title VII claims.  They still have retaliation

16   claims, they have New York state and local law claims, two of

17   them have Family and Medical Leave Act claims and two of them

18   have state law tort common law claims.

19        THE COURT:  Could you do that again for me, please?

20        MR. DREIBAND:  Sure.  The EEOC asserts, as we

21   understand their current posture, only Title VII sex pregnancy

22   claims for 32 claimants and six additional plaintiff

23   intervenors.  So for 38 total.  The plaintiff intervenors, the

24   six plaintiff intervenors with their own lawyers assert Title

25   VII sex pregnancy claims.  They assert -- to be more specific

they also assert Title VII hostile environment claims, they

assert Title VII retaliation claims, they assert New York State

and New York City antidiscrimination claims.  Two of them

assert Family and Medical Leave Act claims.  Those same two

assert state law and tort claims and I believe that's it.  So

their claims are broader than EEOC's and encompass many more

legal or laws and agenda violations than EEOC's do for those

six.

            THE COURT:  So the six plaintiff intervenors, the ones

with many more claims are the ones that you laid out in the

first part of your October 28 letter where you say plaintiff

intervenor briefs.

            MR. DREIBAND:  That's correct.

            THE COURT:  And then under the EEOC portion, that is

what you said, the Title VII claims.

            MR. DREIBAND:  Yes, your Honor.  And to be clear, my

understanding is that the EEOC brief section, that would be for

32 people, that the Commission has told us they do not intend

to file papers on behalf of the plaintiff intervenors.

            THE COURT:  Right, because they have their own

lawyers, right?

            MS. ADAMS:  Correct.

            THE COURT:  To the plaintiff intervenors, counsel, is

it all right to do it in the manner in which we suggested?

            MR. SILBBERSTEIN:  Yes, your Honor.

1          MR. GROSSBARDT:  Yes, your Honor.

2          THE COURT:  All right.  What else can we do to make

3     this more efficient?  Are you people still thinking about doing

4     25-page 56.1 statements?

5          MR. DREIBAND:  Your Honor, if that's directed to

6     defendant, we can do it in fewer pages if the Court would like.

7          THE COURT:  I'm trying to picture how this is going to

8     look when it comes in as a motion.  I mean, you don't have to

9     use the 25 pages.

10         MR. DREIBAND:  You're right, your Honor.  It's not our

11    intention to use them.  We would be perfectly willing to go

12    with less if the Court would like.

13         THE COURT:  Fewer.

14         MR. DREIBAND:  Fewer.  Sure.  We had proposed 20 --

15         THE COURT:  I expect you not to use as many as I give

16    you just because I give them to you.  I expect you to use as

17    many as you need and only that many.  Right?  So don't tell me

18    that you are willing to use fewer if I'm going to order that.

19    I'm just asking why we need 25, and I really think you people

20    ought to think about how many you need to make your points.

21    Now, I understand some of these are going to be intensely

22    factual over a historic period, but not all of them are.  So I

23    ask for a little mercy here.

24         What else can we do to make this more efficient,

25    friends?

1          MS. ADAMS:  I just have another point of clarification

2     about the page limitations on the 56.1 statements.  Since your

3     Honor is talking about grouping by claimant, claimant by

4     claimant, and I'm just asking about the EEOC papers at the

5     moment, but are we talking about 25 pages total for defendant,

6     both opening brief and reply for a 56.1 statement per claimant?

7          THE COURT:  No, because you're going to group the

8     papers by plaintiff, right?  So they're not going to put in one

9     statement and you're not going to put in one statement.

10          MS. ADAMS:  By claimant, right.

11          THE COURT:  You're going to do it by claimant.  I

12     can't begin to imagine that you're going to need 25 pages per

13     claimant.  That's what I'm saying.  If I find 25 pages that are

14     useless, that's how I'm going to view them.  Useless.  So don't

15     waste your time writing them because I'm certainly not wasting

16     my time reading them, if I read it and it's useless.

17          MS. ADAMS:  Of course.  There are some claimants who

18     have been at Bloomberg for 15 years and some claimants --

19     understanding the time bar allegation --

20          THE COURT:  But not every fact of the 15 years is

21     relevant.

22          MS. ADAMS:  No, I understand.  But your Honor ruled

23     that certain background evidence will be relevant and we will

24     intend to use that.  I just want to make sure, obviously, from

25     the extent from EEOC's perspective and on an opposition if we

1    can put in 10 pages of facts for a plaintiff, obviously, if we

2    can do less than that we will do it.  I just wanted to be sure

3    we're talking about 25 pages maximum per claimant.

4            THE COURT:  Only because I already ruled on it, but

5    I'm not anxious to see 25 and I don't see you're going to have

6    to need 25.

7            MR. DREIBAND:  Your Honor, we understood the 25 pages

8    was as to the plaintiff intervenors, not the defendants.  We

9    think can do it in much fewer pages.

10           THE COURT:  Then do it.  You don't need my permission.

11   I'm begging you to do that.

12           MR. DREIBAND:  We can do it in fewer and we think it

13   would be fine for the Court to order that.

14           THE COURT:  How many do we feel we need for the

15   claimants, not the plaintiff intervenors.  I am reminded by my

16   excellent law clerk that there was no limit set on the

17   claimants.

18           MR. DREIBAND:  Your Honor, we have been assembling

19   that information.  We would ask that we could do it in

20   approximately five pages per claimant on average.

21           THE COURT:  Because we're talking only on the Title

22   VII claims.

23           MR. DREIBAND:  That's correct, for EEOC's claims.

24           THE COURT:  What do we think?

25           MS. ADAMS:  I think that is, on average, and we're not

1  talking in terms of every single one, but I think that on

2  average that is low.  You know, I've advocated for no page

3  limits.  We will certainly do this as efficiently as we

4  certainly can, but on opposition it is certainly hard for us

5  first of all to say what we're going to be doing in response to

6  something of an unknown.  We're going to have to respond to

7  defendant's facts as well as put forth affirmative facts.  It's

8  a little difficult for me to agree in the abstract.  I think

9  based on our pattern of practice briefing experience, I think

10  certainly 25 pages per claimant for us would be fine.

11           THE COURT:  That can't be true.

12           MS. ADAMS:  As a maximum.

13           THE COURT:  It can't be true on the -- and what does

14  the pattern and practice have to do with an individual Title

15  VII claim?  It has nothing to do with it.

16           MS. ADAMS:  No, I'm just using that as a guide because

17  it's something we did recently and we did address certain

18  individual claimant facts.

19           THE COURT:  All right, ten pages.  Five for you, ten

20  for you.

21           MS. ADAMS:  When you say ten for defendant, do you

22  mean ten total in the opening brief plus reply?

23           THE COURT:  You're not listening to me.  The 56.1 is

24  claimant specific.

25           MS. ADAMS:  I understand.

1          THE COURT:  You get to put one in for each claimant.

2     No, you're not getting 25 pages per claimant.

3          MS. ADAMS:  But when you say "you," defendant is doing

4     a 56.1 statement --

5          THE COURT:  Either side.  All right, listen to me.

6     Here's what the papers are going to look like.  Reading from

7     the October 28 letter.  The opening brief about the six

8     plaintiff intervenors will not exceed 90 pages.  Although I

9     think that's a little much.  It will be divided as follows:  A

10    main brief setting out the applicable law and to the extent

11    that there are facts applicable to everyone, you know,

12    Bloomberg is incorporated in so and so, whatever it is, those

13    will go in the main brief.

14         In addition, the papers on the motion will have

15    supplement plaintiff intervenor X.  In the supplement will be

16    bound the legal argument as to that plaintiff intervenor, the

17    normal factual material.  So if you're putting -- I assume

18    there will be an affidavit attaching documents.  To the extent

19    that there's an affidavit of the plaintiff intervenor herself,

20    that will be there, too.  And the third item in the supplement

21    will be the 56.1 statement applicable to that plaintiff

22    intervenor.  So that's -- and then there will be supplement -

23    plaintiff intervenor Y.  The legal argument in all of those

24    briefs will not exceed 90 pages.

25         In the opposition papers, there will be the main

opposition brief with any facts applicable across the board and

the law that is generally applicable.  Then there will be

mirroring, exactly mirroring the moving papers, supplement –

plaintiff intervenor X with the legal argument for that

plaintiff intervenor, the factual papers relating to her and

the 56.1 relating to her.

On the reply, same/same.  Do we understand?  So we'll

have the three main briefs and we will have three supplements

for each individual.

MR. DREIBAND:  Your Honor, one point of clarification.

THE COURT:  And reply 45 pages.

MR. DREIBAND:  If I could, on the page numbers, does

that include the supplements, the total package?

THE COURT:  Yes.  Because it was the whole brief.  You

don't need 90 pages to set out all the law.  And you may

distribute it among your individuals any way you want.  And I'm

telling you, in the briefs, in the supplements, you don't even

need to put the box on.  It's a supplement.  Supplement --

obviously at the very top put the name of the case and the

docket number and say supplement – plaintiff intervenor X.  So

you won't lose any pages.  Right?  Okay?  Yes, ma'am.

MS. ADAMS:  What I was hoping to clarify was any page

limitation on those 56.1 statements.  I understand they will be

by claimant in supplements.  But to the extent your Honor is

ordering page limitations on the 56.1 statements and asking how

much we think we can do it in, I wanted to first of all clarify

that given that defendant has two briefs, plaintiff has one --

THE COURT:  That's the way it always is, counsel.

That's the way it always is.  They're the moving party.

MS. ADAMS:  And their page limitation will be a total

page limitation.

THE COURT:  I just said that to counsel.  Did you not

hear me say 45 pages on your reply?

MS. ADAMS:  That's for the legal brief.

THE COURT:  That's right and your 90 on the opposition

brief is the same/same.  What are you asking me?  That all the

legal arguments total 90 pages in the moving briefs and

supplements.  90 pages in the opposition brief and supplements.

Supplementally briefing, not the factual stuff.

MS. ADAMS:  I understand.

THE COURT:  I don't get what you're asking me.

MS. ADAMS:  I think I can hopefully clarify with

defendant.

THE COURT:  What is it you want to know?

MS. ADAMS:  To the extent defendant is submitting a

56.1 statement in its moving papers and defendant is submitting

a reply set of 56.1 statements.

THE COURT:  Right.

MS. ADAMS:  I want to just be clear that you're

talking about a page limitation and it's total the same as the

1  plaintiff's page limitation.

2          THE COURT:  Oh, you're asking -- on the 56.1's?

3          MS. ADAMS:  Correct.

4          THE COURT:  Okay.  They said they could do their

5  plaintiff intervenor 56.1's in five.  You want ten.  You got

6  ten.  You have five to reply.

7          MR. DREIBAND:  Your Honor, we're bouncing between the

8  plaintiff intervenors and the claimants?

9          THE COURT:  I thought you were talking -- what were

10  you talking when you said five pages?

11          MR. DREIBAND:  I was talking about the claimants,

12  EEO's claimants.

13          THE COURT:  Forgive me.  I had it backwards.  You're

14  right.  It's only the ones that are asserting Title VII claims.

15          MR. DREIBAND:  That's EEOC claimants.

16          THE COURT:  Right.

17          MR. DREIBAND:  I thought what you were just going

18  through were the plaintiff intervenor briefs.

19          THE COURT:  Let me show you this.  Do you see what you

20  have here in the October 28 paper, letter?  Do you see the page

21  limits?

22          MR. DREIBAND:  Yes, your Honor.

23          THE COURT:  The briefing page limits I guess I have to

24  give you, and thus I am giving them to you, but they are the

25  total number of legal argument pages in the main brief and in

1   the supplement.  And I guess what you're concerned about is I

2   said 90 when you wanted me to say 100, right?

3           MR. DREIBAND:  Well, I think that's -- we had proposed

4   100 for EEOC's briefs.

5           THE COURT:  Yes.  Why you think you need 100 is quite

6   beyond me.  I don't get it, because it's only the Title VII

7   claims.  Why do we need 100 pages?

8           MR. DREIBAND:  Well, because, your Honor, there are 32

9   claimants and of those EEOC has asserted dozens in a totality,

10  hundreds of total claims if you add them all up together in

11  terms of the claimant compensation claims, these alleged

12  emotion claims and these terms, conditions and privileges

13  claims.

14          THE COURT:  All right.  You have the pages you

15  mentioned, okay?  Even though it breaks my heart.  What else do

16  you want me to say?  The number of legal pages of argument may

17  not exceed what you've written in the October 28th letter.

18  Total.  Main brief, supplements.

19          MS. ADAMS:  And I am clear as to the legal briefs and

20  the page limitations there.

21          THE COURT:  Okay.

22          MS. ADAMS:  I'm getting clear with respect to the 56.1

23  statements.  I do have one additional proposal and that is

24  because the claimants that EEOC is briefing are so disparate in

25  terms of the number of claims we're presenting on their behalf,

1    the number of years we're talking about, the number of

2    different managers they've had who have been deposed, etc., I

3    would ask for an average of ten pages per claimant on the 56.1

4    statement that EEOC submits.

5            THE COURT:  All right.

6            MS. ADAMS:  Thank you.

7            THE COURT:  Counsel, did you folks have anything you

8    wanted to add?  Gentlemen?

9            MR. SILBBERSTEIN:  Your Honor, just to clarify.  I

10   think the defendant is going to move in one omnibus brief with

11   respect to the six plaintiff intervenors.  My firm represents

12   four of the intervenors and Joel and his firm represent the

13   other two, so I think the way we're envisioning this is for us

14   to work collaboratively on that brief.  I just want to make

15   sure, so it's --

16           THE COURT:  Sure.  So it would make sense that you

17   would put in together a main brief with whatever facts you

18   think are generally applicable, which probably won't be that

19   many, together with all the law you think is applicable.  God

20   knows you have plenty of time to get the brief together.  And

21   then you'll put in your four supplements and counsel will put

22   in his two supplements, all right?

23           MR. SILBBERSTEIN:  Okay and for the legal arguments

24   contained in those six supplements together plus the brief,

25   that has to be no more than 90 pages?

1          THE COURT:  You got it.

2          MR. SILBBERSTEIN:  Understood.

3          THE COURT:  What else, friends?

4          MR. DREIBAND:  Your Honor, I think the other issue

5     that remains I think a little bit in dispute between EEOC and

6     claimants is this abandoned claims and claimants.  As you can

7     see in the letter we've asked for anything that the Commission

8     is not pursuing --

9          THE COURT:  Let me ask the Commission.  I don't

10    understand why this is not fish or cut bait time.  If you do

11    not pursue the claim now, this is the time to do it, it's

12    abandoned.  Why is that not the case?

13         MS. ADAMS:  I think the question is what do you mean

14    by abandoned.  We have fished or cut bait and we've understood

15    your Honor's orders and we've complied with them.

16         THE COURT:  But if you are not putting in evidence now

17    or getting ready to try XYZ whatever it is, that's the end of

18    XYZ.  It's finished for all time.  Now, orders that you appeal

19    obviously you get a do-over if you get a reversal on those, but

20    things that you are not pursuing today are finished.

21         MS. ADAMS:  That is precisely what we have said to

22    defense counsel.

23         THE COURT:  With prejudice.  That's finished.

24         MS. ADAMS:  I'm going to let Mr. Mulaire argue this

25    because he has briefed it or written on it.

1          THE COURT:  Mr. Mulaire.

2          MR. MULAIRE:  I think, your Honor, that's precisely

3     the result that we try to make sure we secure.  Our concern is

4     that if the individuals we're not seeking relief for right now

5     were not subject to an order of dismissal with prejudice, that

6     even if we then prevailed on appeal on pattern of practice

7     claim, for example, the defendant would then use that on remand

8     to argue that we could not under a pattern of practice claim

9     obtain relief for those individuals, because anything

10    pertaining to them had been dismissed with prejudice.

11         And for that reason we had proposed to proceed in the

12    manner outlined in one of the cases we outlined in our letter,

13    Purdy v. Zeldes, in which the plaintiff was permitted to

14    voluntarily dismiss something with prejudice but subject to the

15    condition that if the plaintiff prevailed on appeal, on a

16    different claim, that on remand the plaintiff would be

17    permitted to reassert the voluntarily dismissed claims.  And

18    setting aside whether we used the word "dismissal" or something

19    else, that's the regime that we were trying to capture with our

20    papers.

21         THE COURT:  Counsel?

22         MR. DREIBAND:  Your Honor, the Purdy case is different

23    than this case.  First of all, in that case the only issue on

24    appeal were two cases in which the district court granted

25    summary judgment.  The abandoned separate independent claim in

1    that case was unrelated to the claims on appeal.

2              THE COURT:  Well, let me ask you this:  I'm sorry.  I

3    think I now understand counsel to be saying the only claims at

4    issue in this dispute are pattern and practice claims on behalf

5    of claimants or plaintiff intervenors, I don't know, who have

6    no other claim other than the pattern and practice claim.  Is

7    that correct?  What I had thought was the case was the dispute

8    was about individuals who have, who had heretofore asserted

9    claims in addition to the pattern and practice claim, but they

10   did not wish to pursue those non-pattern and practice claims at

11   this time and it was those non-pattern and practice claims that

12   were the subject of a dispute.

13             MR. DREIBAND:  Yes.  That's how I understand it also,

14   your Honor.  The EEOC has sought relief for, has left in the

15   case 59 individuals and six additional plaintiff intervenors.

16   The Commission has told us that for 27 of those 59 they are not

17   going to pursue individual relief at this time.

18             THE COURT:  So they can't come back some other day,

19   let's just say, post reversal of the pattern and practice claim

20   and seek individual relief.  Right?

21             MR. DREIBAND:  That's correct.  If they don't seek

22   it --

23             THE COURT:  Right?  Right?

24             MR. MULAIRE:  No, your Honor, that's not our position.

25             THE COURT:  Why should they be able to pursue

1    individual relief later if they're not doing it today?

2            MR. MULAIRE:  Because on a pattern of practice claim

3    we believe that both evidentiary burdens --

4            THE COURT:  I'm not asking about pattern and practice.

5    We know that if the pattern and practice claim gets reversed

6    then we come back and we do pattern and practice for everybody

7    who was originally a pattern and practice plaintiff, right?

8            MR. MULAIRE:  That's the EEOC's intention.

9            THE COURT:  All right.  But as to any, and I use the

10   word plaintiff loosely, as to any person who had been a

11   plaintiff heretofore and who at this point in time says no, I'm

12   not going to pursue individual damages, that's finished.  If

13   there are pattern and practice damages to be had later, fine,

14   but no individual damages that aren't pursued today.

15           MR. MULAIRE:  I think we would agree with that if by

16   pattern of practice damages that would include, for example,

17   back pay for the individuals who are affected by the pattern of

18   practice of wage discrimination.  That's what the EEOC wants to

19   insure.  For example, if you have claimant Jane Doe who right

20   now we're saying we're not going to try to prove for her as an

21   individual an isolated wage discrimination claim, but she would

22   be on remand.  If we were to litigate the pattern of practice

23   claim some day, she would be one of the people who we're

24   alleging is part of the pattern of practice of wage

25   discrimination.  And if we obtain that reversal and on remand

1    prevailed on a pattern of practice claim, then we would want to

2    seek back pay for Jane Doe and any other claimant who was part

3    of the pattern or practice wage discrimination claim.  So if

4    that's what the Court is describing, then that's consistent

5    with what the EEOC is seeking.

6         THE COURT:  What is the difference in the measure of

7    damages that Jane Doe would receive if she prevailed in

8    pursuing her individual claim now and what she would receive if

9    the pattern and practice claim were reversed and the pattern

10   and practice claim prevailed down the road?

11        MR. MULAIRE:  I don't think there would be a

12   difference in the measure of damages.  It would be the method

13   of proving and the burdens of proof for the claims themselves

14   that would be different.

15        MR. DREIBAND:  Your Honor, may I respond to that last

16   point?

17        THE COURT:  As soon as he finishes talking, you may.

18        MR. MULAIRE:  I think I got my main thought out.

19        MR. DREIBAND:  Our position would be that compensatory

20   and punitive damages are not available in a pattern and

21   practice case.  They are available to EEOC only under Section

22   706 of Title VII and Section 46 United States Code 1981(a).

23   Those provisions do not encompass a pattern and practice claim

24   which is limited to Section 707 of Title VII and as a result if

25   EEOC doesn't pursue individual relief now, and they are not

1   doing that, any claim for compensatory and punitive damages are

2   done even if the pattern and practice is reversed.

3          THE COURT:  Isn't this an argument for down the road?

4   They should be dismissed with prejudice today and then if

5   there's a reversal of the pattern and practice ruling, then

6   each side will argue these damages are or are not recoverable

7   under the pattern and practice.

8          MR. DREIBAND:  Yes, your Honor.  I think that makes

9   perfect sense to us.

10         MR. MULAIRE:  That's correct, so long as their

11  dismissal with prejudice is conditioned in the manner set forth

12  in Purdy v. Zeldes, which I thought I described a little while

13  ago.

14         THE COURT:  I thought that was a little different, but

15  let me be clear that we are reserving for another day if

16  necessary what relief may be obtained under a pattern and

17  practice claim.  Specifically, whether it includes such things

18  as back pay.  Is that good enough?  In other words, if there's

19  a reversal on the pattern and practice order, then you people

20  can fight about whether or not back pay is recoverable as part

21  of a pattern and practice claim.  However, the individuals who

22  declined to pursue their individual claims now may not pursue

23  individual claims in the future.  Clear enough?

24         MR. MULAIRE:  I think so, your Honor.

25         THE COURT:  All right, thank you counselor.  Is there

anything else?

MR. GOLDEN: Your Honor, another subject that will warm your Honor's heart is the timing of the filing of our motion papers. In the correspondence we had proposed a schedule.

THE COURT: I guess I had bitten the bullet on that. It seems lengthy, especially as to the six. Although, I guess it's the April date that I'm worried about, that's three and a half months to do six folks.

MR. DREIBAND: Your Honor, I'll let plaintiff intervenors speak for themselves. I think the parties can pick dates where there will be one filing of the EEOC's brief and claimants and plaintiff intervenors on the same day, and in terms of response dates, if the Court wants us to move that up we can do that.

THE COURT: Can we do that? I understand January 13 is tomorrow, but as to the six, you're only going to be doing four and two.

MR. SILBBERSTEIN: Your Honor, we would like our papers served contemporaneously with the EEOC.

THE COURT: Why?

MR. SILBBERSTEIN: We are working together with them on the Title VII claims. It is, as counsel for defendant said, our claims are much more multifaceted. We have city, state, federal, retaliation claims. They're much more involved and we

1  do have a small firm.  We would like to have the April 30 date

2  put in our briefs.

3         MR. GROSSBARDT:  Your Honor, I concur with

4  Mr. Silberstein.

5         THE COURT:  Of course you do.

6         MS. ADAMS:  If I may, just from the EEOC's

7  perspective, I think it makes a lot of sense to have the EEOC

8  brief and the plaintiff intervenors briefs due at the same

9  time.

10        THE COURT:  Why?

11        MS. ADAMS:  We will be working together.  We are still

12 including the plaintiff intervenors as claimants in our case

13 and we're working as fast as we can to develop their claims as

14 well as the other claimants, but they really are hand in hand.

15        THE COURT:  Fine.  You people understand that this is

16 an enormous burden to send us 190 pages just of briefing on one

17 day.  That's craziness.  But, if that's what you want, that's

18 what you get.

19        What are we doing about the confidential information,

20 folks?  And I also wanted to know why the stipulation as to

21 what we're doing and not doing in terms of the individuals, why

22 is that confidential?  It's a judicial paper saying what claims

23 are going forward and what aren't.

24        MR. DREIBAND:  Your Honor, the defendant has no

25 objection one way or the other on publicizing or filing under

1   seal and keeping confidential.  I think this is more EEOC's

2   issue with respect to the claims.

3          THE COURT:  We can't just do it willy-nilly.  The

4   Second Circuit yells at us when we do that.

5          MS. ADAMS:  Of course.  We felt particularly since

6   defendant agreed there's no need to put the claimants --

7          THE COURT:  What's the affirmative need for

8   confidentiality as to which claims are proceeding and which are

9   not?

10         MS. ADAMS:  It's really the claimants' names which at

11  this point have not been in the public record for the most part

12  and to be consistent with the summary judgment papers that were

13  already filed where the Court did endorse our approach as to

14  confidentiality, it would --

15         THE COURT:  I'm not even sure why I did it then.  I

16  mean, these are judicial papers.  There's no privacy concern

17  here.  I don't understand.  In fact, I don't understand why the

18  other ones were under seal, to tell you the truth.

19         MS. ADAMS:  Well, the way this all started was that

20  defendant talked about privacy concerns as to non-claimants,

21  comparators, managers, class members who were not actively

22  participating as claimants in the EEOC's case.

23         THE COURT:  Okay, but that's something different than

24  someone who is coming to court for relief.

25         MS. ADAMS:  It's the EEOC who is coming to court for

1    relief and these claimants are participating with us, yes, but

2    to the extent that we're talking about individually

3    identifiable medical information, for example, with some of

4    these claimants and compensation information which defendant

5    holds to be sacrosanct -- I have trouble with that word --

6    those were the very narrow categories of information we felt

7    were just gratuitous to put into the public record at this

8    point.

9         THE COURT:  Okay.  So how are you going to handle that

10    in these papers?

11         MS. ADAMS:  Well, we propose to approach it the same

12    way we did with the pattern of practice briefing, I no it's a

13    complicated paragraph in this October 28 letter.

14         THE COURT:  It was.

15         MS. ADAMS:  I lifted it right from the order that your

16    Honor had endorsed, a letter that we had described.  It was

17    particularly complicated at the pattern of practice briefing

18    time because the parties were not able in advance to decide

19    what documents -- mostly defendant's -- we asked what are you

20    going to claim to be confidential and subject to the protective

21    order.  Defendant had trouble doing that beforehand, so we

22    allowed some extra time at the time we saw defendant's brief

23    for defendant to say what it thought it should be confidential

24    and what EEOC understood to be covered by the protective order.

25    I believe that now we're in the position where we came to

1  agreement, the Court endorsed our approach, and we can go

2  forward with all the same categories, the same redaction

3  process.  The mechanics of it took longer than everyone

4  expected, I think, but the concept is that we talk and we see

5  each other's papers and we have discussion about what each side

6  believes should be confidential.

7         We were able to come to agreement on all the sets of

8  papers at the time of the pattern of practice briefing, but

9  consistent with the protective order in this case, the idea is

10 that should there be a dispute the party that believes there

11 should be confidentiality has the burden to make a motion.

12        THE COURT:  Well, let me ask you this:  On these

13 papers now, I take it there is the possibility that we will

14 have salaries of comparators, right?

15        MS. ADAMS:  Absolutely.

16        THE COURT:  And under this method you would assign a

17 number to a comparator, right, but leave that person's salary

18 in the papers.

19        MS. ADAMS:  Consistent with how we did it before.

20        THE COURT:  What about the medical information?

21        MS. ADAMS:  For -- yes, consistent with how we did it

22 in the pattern of practice briefing for those limited instances

23 we would redact the name and call for --

24        THE COURT:  For the comparator or for the plaintiff?

25        MS. ADAMS:  We didn't have comparators, but we did

1    have a couple of non-claimants with individually identifiable

2    medical information in the pattern of practice.

3            THE COURT:  Same thing then.

4            MS. ADAMS:  We called them manager 1.

5            THE COURT:  To the extent it's a non-party,

6    non-claimant, non-plaintiff, then you should do what you do.

7            MS. ADAMS:  Absolutely.

8            THE COURT:  My concern going forward, though, is as to

9    the people who are plaintiffs and who are making claims, and I

10   think I don't see why this -- this doesn't have to be on the

11   public record but I do think people need to know the basis on

12   which decisions are made.

13           MS. ADAMS:  In terms of the basis on which decisions

14   are made that information will all be in the public record.

15           THE COURT:  So we'll say plaintiff X made $2 a year

16   before she took pregnancy leave and a dollar a year when she

17   came back.

18           MS. ADAMS:  Correct.

19           THE COURT:  Okay.  So do you not need the time lag

20   that you had before, probably not?

21           MS. ADAMS:  I think we do in that the parties need to

22   go back and forth and make sure that we agree that with

23   different documents being filed, etc., that the categories

24   squarely apply and the mechanics take some time especially

25   given that these are longer papers than the last time around.

1          THE COURT:  You can make them shorter.

2          MS. ADAMS:  We will try to make them shorter, but I do

3     think it will, the discussion and the negotiation should go

4     faster because we do have the categories clear and we all know

5     what documents we're talking about, so I think it would go a

6     little more quickly, but we proposed, I forget if we proposed

7     specific dates, but I think something along the lines, the same

8     framework we did before should work and shouldn't affect the

9     filing dates.

10          THE COURT:  Okay.  It shouldn't affect the filing

11    dates.  How are you going to file them -- you're going to

12    confer beforehand?

13          MS. ADAMS:  Well, what I meant was we serve unredacted

14    papers but we don't file them.

15          THE COURT:  I see.  Okay.

16          MR. GOLDEN:  I think also that unredacted courtesy

17    copies would be submitted to your Honor.

18          MS. ADAMS:  That's right.  As we did before and my

19    colleague reminds me it's actually unaffected service dates.

20    The dates that we put here would be service dates.

21          THE COURT:  Okay.  Sounds good.

22          When we are preparing our order of dismissal with

23    prejudice, may we still rely on all the materials that you

24    folks had in your proposed stipulations and orders that came in

25    with the November 7 letter?

1        MR. GOLDEN:  I think, your Honor, there had just been

2  a handful of claims that EEOC identified as claims they were

3  still pursuing which they've agreed are in fact either time

4  barred or they're not pursuing.

5        MS. ADAMS:  I need to submit an amended document.

6        THE COURT:  Why don't you two put your heads together

7  and figure out a new proposed order, please.

8        MR. GOLDEN:  Sure.

9        THE COURT:  Okay.

10       MR. DREIBAND:  Your Honor, if I could just add a point

11  of clarity on that.  The parties have obviously taken different

12  approaches here.  The Commission had listed claims that they

13  are asserting.

14       THE COURT:  I don't see why we need that, I guess.

15       MR. DREIBAND:  What we had proposed are claims that

16  should be dismissed based on what -- is that what the Court

17  would like?

18       THE COURT:  I don't think we need to say what we're

19  asserting, do we?  The reason for listing the claims you're

20  asserting is to give counsel notice.

21       MR. GOLDEN:  Right, so we know what we're moving

22  against.

23       THE COURT:  So put that in a letter to counsel so we

24  have that.

25       MS. ADAMS:  Our initial purpose in talking about a

1  stipulation was to guide this summary judgment briefing

2  process.

3         THE COURT:  Exactly.  Because they needed to know what

4  they wanted to move against, they needed to know what they

5  didn't need to consider because you weren't going to pursue.

6         MR. GOLDEN:  Your Honor, there was also the other

7  purpose which is to make clear what was dismissed with

8  prejudice.

9         THE COURT:  Obviously.

10        MR. GOLDEN:  Ms. Adams and I, I think --

11        THE COURT:  You guys work it out.  Send it in.  What

12  else?

13        MR. DREIBAND:  On that, your Honor, there's a slight

14  difference here, we don't object to entering dismissed claims

15  under seal or as the Commission wants.  We don't see a need for

16  that.

17        THE COURT:  Why should it be?  I'm giving you trouble

18  on that.  The Second Circuit says nothing under seal unless

19  there's a reason for it.

20        MR. DREIBAND:  We don't see a reason for it.

21        THE COURT:  Well, neither do I.  So don't tell me you

22  don't object.

23        MR. DREIBAND:  We don't object.  We agree.

24        THE COURT:  So what else?  All right.  Remember,

25  somebody has to read these, kids.  So to the extent you can

1    make them briefs, that would be useful.  Same thing with the

2    56.1.  If you don't need to set out the history of the world

3    since day 1, then don't do it.

4              All right, kids.  Look forward to seeing your papers.

5              COUNSEL:  Thank you, your Honor.

6              (Adjourned)