UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                                :

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                  :

                                                                                               07-CV-8383 (LAP/HP)

           Plaintiff,        :

              v.                                       :

BLOOMBERG L.P.,   :

           Defendant.     :

------------------------------------------------------------- x

<u>SUPPLEMENTAL BRIEFING REGARDING DONNA VANNELLI</u>

SUPPLEMENTAL BRIEF:  **DONNA VANNELLI**

Summary judgment should be denied for EEOC's claims concerning Donna Vannelli. Because of sex/pregnancy, BLP cut her pay in 2005-2006, and in 2006-2007 excluded her from meetings, subjected her to heightened scrutiny, and put her on performance improvement plans.

Vannelli came to BLP in October 2000 with a master's degree in industrial psychology. ¶ 30.  At BLP, she started as a Human Resources training specialist, and in August 2004 took on an HR "generalist" position as an HR Representative.  ¶¶ 2-3, 31-32.  Her compensation trajectory at the company was quite positive:  in October of 2002, 2003, and 2004, she received pay raises of about 4%, 9%, and 11%, respectively.  In October 2004, she received an extremely positive performance evaluation, which rated her as exceeding expectations in every one of eight categories — "frequently" exceeding expectations in six of those.  ¶ 33.  One of the categories in which she was rated as frequently exceeding expectations was "Productivity/Proactivity."  ¶ 34. Among other things, that category measured the extent to which an employee "[p]ossesses a strong sense of urgency and drive to complete work [and] is self-starting."  ¶ 34.  In the same evaluation, HR Team Leader Kate Wheatley noted that Vannelli had been in her new HR role for two months and that "Donna has thrown herself into the role with a positive attitude and has hit the ground running.... Donna has certainly made a very promising start."  ¶ 35.

A few months later, Vannelli became pregnant, went on maternity leave on August 29, 2005, and gave birth in September 2005.  ¶ 36.  At this point, her fortunes at BLP changed markedly.  In October 2005, her total intended compensation was cut 4%.  ¶ 37.  Two individuals involved in setting her compensation award that year had made comments expressing hostility or skepticism about women with young children working at BLP.  ¶¶ 48-50.  Vannelli was also given a hard time about leaving early to pick her child up from daycare, while ▮▮▮▮▮ a

1

male coworker who left early to coach his children's sports activities, was not. ¶¶ 38-39.

Benny Tramo became Vannelli and ▮▮▮▮'s team leader four months after Vannelli returned from maternity leave in 2006. ¶ 12. Tramo spoke to Vannelli in a condescending manner and over-explained things, as if Vannelli were "completely clueless." ¶ 40. Tramo took over aspects of Vannelli's duties, such as conducting meetings with managers whom Vannelli was assigned to support. ¶ 41. Tramo excluded Vannelli from those meetings, but then reacted negatively when Vannelli did not know what had occurred during the meetings. ¶ 41. Tramo insisted that Vannelli clear with him every leave request that came to her for approval. ¶ 42. Tramo seized upon minor procedural gaps in Vannelli's work as a basis for criticizing her. ¶ 43. By contrast, Tramo did not take over ▮▮▮▮'s duties, and ▮▮▮▮ approved some leave requests without Tramo and otherwise deviated from procedures without consequence. ¶¶ 41-43.

Vannelli's October 2006 performance evaluation contained a vague comment questioning her "dedication" to her job. ¶ 44. Her pay was increased by just 2%. ¶ 45. Although her overall performance rating was "meets expectations," just two months later she was placed on a performance improvement plan. ¶¶ 51-52. Among other things, it instructed her to attend more meetings with the managers she supported — the same meetings that Tramo was excluding her from. ¶ 53. After being placed on a second, nearly identical PIP in May 2007, Vannelli realized that she was being "managed out" of the company, and she resigned in June 2007. ¶¶ 58-59.

Although BLP repeatedly refers to the duration of Vannelli's maternity leave, BLP has presented no evidence that any individual actually relied upon that as a reason for treating Vannelli in the manner described above. The disparities between Vannelli's treatment before and after pregnancy and between Vannelli and ▮▮▮▮ support an inference of discrimination. This is reinforced by the fact that beginning in the fall of 2006, HR was led by Ken Cooper, who

2

believed that women with children belong at home and not in the workplace. ¶ 47. BLP has acknowledged that Cooper was involved in setting Vannelli's compensation in 2006. ¶ 46.

Moreover, there is evidence that the criticism that Vannelli received after becoming a mother was pretextual. Her October 2006 review and her two PIPs focused on her arriving to work late, ¶ 55, but a review of BLP's badge data reveals that Vannelli's arrival pattern in the morning was the same as it was during the year preceding her (positive) October 2004 review, which made no reference to the issue. Leading up to her 2006 review, she arrived after 8:00 a.m. 64% of the time and on those occasions arrived on average at 8:08 a.m.; before her 2004 review, the figures were virtually identical: 63% and 8:07 a.m. ¶¶ 54, 56-57.

In 2004, Vannelli was deemed to be exceeding expectations, in 2005 she got pregnant, and thereafter her pay suffered and she was placed on a PIP. Considering the foregoing, a jury could reasonably conclude that her pregnancy and the fact that she became a mother account for the difference in treatment. See EEOC Omnibus Br. §§ III(a), (b)(2).