UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                           :      07 Civ. 8383 (LAP)
                                      :
            Plaintiff,                :      OPINION & ORDER
                                      :
     v.                               :
                                      :
BLOOMBERG L.P.,                       :      ┌─────────────────────────┐
                                      :      │ USDC SDNY               │
            Defendant.                :      │ DOCUMENT                │
--------------------------------X     │ ELECTRONICALLY FILED    │
JILL PATRICOT, TANYS LANCASTER,       │ DOC #:                  │
JANET LOURES, MONICA PRESTIA,         :      │ DATE FILED: 9-4-13      │
MARINA KUSHNIR and MARIA              :      └─────────────────────────┘
MANDALAKIS,                           :
                                      :
         Plaintiffs-Intervenors,      :
                                      :
     v.                               :
                                      :
BLOOMBERG L.P.,                       :
                                      :
            Defendant.                :
--------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

     Plaintiff, the Equal Employment Opportunity Commission

("EEOC"), filed this action against Defendant Bloomberg L.P.

("Bloomberg") after several current and former employees had

filed charges with the EEOC alleging sex/pregnancy

discrimination and retaliation[1] in violation of Title VII of the

---

[1] Claimants Jill Patricot, Tanys Lancaster, and Janet Loures
filed charges with the EEOC alleging sex/pregnancy
discrimination by Bloomberg.  (Second Amended Compl. ¶ 6.)  They
are referred to throughout as the "Charging Parties."  Later,
claimants Jill Patricot, Janet Loures, Maria Mandalakis, and
(cont'd)

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e(k), 2000e-2.  (Second Amended Compl. ¶¶ 1, 6.)  Generally, the complaint alleged that Bloomberg had discriminated and/or retaliated against the claimants and other similarly situated employees after they had announced their pregnancies and had returned to work following maternity leave.  (Id. ¶¶ 7, 9.)

Pending before the Court are two motions for summary judgment brought by Bloomberg.  One motion seeks summary judgment on all remaining Section 706 claims brought by the EEOC on behalf of twenty-nine[2] non-intervening claimants [dkt. no. 219] ("Bloomberg's Motion on Section 706 Claims").  The other seeks summary judgment on claims brought by Plaintiff-Intervenors Jill Patricot, Tanys Lancaster, Janet Loures, Monica Prestia, Marina Kushnir, and Maria Mandalakis (collectively, "Plaintiff-Intervenors") [dkt. no. 322].

---

(cont'd from prev. page)
Marina Kushnir filed charges with the EEOC alleging retaliation and sex/pregnancy discrimination by Bloomberg.  (Id.)  This set of claimants is referred to throughout as the "Retaliation Charging Parties."
[2] Since filing its Motion for Summary Judgment on All Remaining Section 706 Claims Asserted by EEOC on Behalf of the 32 Non-Intervening Claimants, three such claimants entered into voluntary agreements with Bloomberg resulting in the dismissal of their respective claims.  (See [dkt. nos. 549 & 551].)

For the reasons set forth below, the first of these motions by Defendant is GRANTED.[3]

I. BACKGROUND[4]

The basic allegations and the procedural history of this case as it pertains to the claims brought by the EEOC on behalf of the Non-Intervenor Plaintiffs are stated adequately in the Court's prior opinions, with which the Court assumes familiarity. EEOC v. Bloomberg L.P. (Bloomberg III), 778 F. Supp. 2d 458 (S.D.N.Y. 2011); EEOC v. Bloomberg L.P. (Bloomberg II), 751 F. Supp. 2d 628 (S.D.N.Y. 2010); EEOC v. Bloomberg L.P. (Bloomberg I), No. 07 Civ. 8383 (LAP), 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010). In addition to setting forth any new findings based on the parties' more recent submissions, some review of

---

[3] The analysis that follows only addresses Defendant's motion with respect to the claims asserted by the EEOC on behalf of the remaining twenty-nine non-intervening claimants. The Court's analysis with regards to each of the remaining claims involving the Plaintiff-Intervenors is addressed in today's companion Opinion and Order, [dkt. no. 558].

[4] Throughout this opinion, the Court looks to the Omnibus Declaration of Thomas H. Golden, dated January 18, 2012 ("Golden Decl.") [dkt. no. 222]; the Omnibus Declaration of Raechel L. Adams, dated May 7, 2012 [dkt. nos. 335, 363]; and the Reply Declaration of Thomas H. Golden, dated June 28, 2012 ("Golden Reply Decl.") [dkt. no. 443]. In addition, the Court considers the parties' Rule 56.1 Statements: Bloomberg's Omnibus Rule 56.1 Statement of Material Facts in Support of Its Motion for Summary Judgment on All Remaining Section 706 Claims Asserted by EEOC on behalf of the Non-Intervening Claimants ("Bloomberg R.56.1") [dkt. no. 221], the EEOC's Omnibus Rule 56.1 Statement of Material Facts in Opposition ("EEOC's R.56.1") [dkt. no. 330], and Bloomberg's Reply 56.1 Statement ("Bloomberg Reply R.56.1") [dkt. no. 442].

this Court's previous findings is necessary, as well, insofar as those findings are relevant to the instant motion.[5]

The EEOC began its investigation into Bloomberg after the Charging Parties filed sex/pregnancy discrimination charges with the EEOC against Bloomberg. Bloomberg II, 751 F.Supp. 2d at 632. The Charging Parties alleged in their EEOC charges of discrimination that Bloomberg had a "pervasive bias" and discriminated against other women who had returned from maternity leave or had small children at home. Id.

Following these leads, the EEOC expanded its investigation into Bloomberg's related employment practices more generally. For example, the EEOC asked for and received from Bloomberg information with respect to hundreds of women who had taken maternity leave companywide and investigated the diminished number of employees who reported to females following their pregnancies. Id. It also interviewed other potential claimants, requested information from Bloomberg about twenty-four other employees who had been on parental leave, and received information about fourteen other similar claimants who were demoted. Id.

---

[5] With respect to this review of relevant findings, the Court draws generously from its October 25, 2010, Memorandum and Order, Bloomberg II, 751 F. Supp. 2d 628, which stands as law of the case. See Arizona v. California, 460 U.S. 605, 618 (1983).

On June 19, 2007, the EEOC received from Bloomberg a spreadsheet containing the names of women who had taken maternity leave between January 1, 2003, and June 12, 2007 (the "maternity leave list"). (See Letter from Raechel L. Adams, Supervisory Trial Att'y, EEOC, to The Hon. Loretta A. Preska, Chief Judge, S.D.N.Y. (May 23, 2013) [dkt. no. 556] ("EEOC May 23 Ltr."), at 3.)[6]  This spreadsheet contains the names of twenty of the twenty-nine remaining Non-Intervenors. (Id.)[7]  The EEOC represents in its May 23 Letter to the Court that the name of a twenty-first claimant was listed on another document provided by Bloomberg to the EEOC during the EEOC's class-wide investigation.  That document, however, was not introduced into the judicial record. (Id. at n.1)  As for the remaining eight Non-Intervenors, the EEOC admits that it only became aware of them after the EEOC filed its lawsuit. (Id. at 3-4.)

On June 27, 2007, the EEOC sent Bloomberg a Letter of Determination ("LOD") regarding the sex/pregnancy discrimination claims, a proposed conciliation agreement, and additional monetary demands from the Charging Parties.  Bloomberg II, 751

---

[6] The maternity leave list was attached as Exhibit 19 to the Declaration of Kam Wong in connection with the EEOC's prior Opposition to Bloomberg's Motion for Summary Judgment for Failure to Conciliate [dkt. no. 127].

[7] The EEOC represents that several of the Non-Intervenors listed on the spreadsheet also appear elsewhere in the EEOC's investigative file in documents not introduced into the judicial record.

F. Supp. 2d at 632.  The LOD laid out the Charging Parties'

basic allegation:

> They were all employees of [Bloomberg] and were well
> regarded for their work performance . . . until they
> took maternity leave.  Thereafter, job functions and
> responsibilities were taken away from them, the number
> of their direct reports was reduced, they were demoted
> and put under the supervision of persons whom they
> previously supervised, they experienced declines in
> compensation, and they were otherwise discriminated
> against . . . .

Id.[8]  The LOD then set forth examples from the Charging Parties'

specific allegations.  Id.

   Moreover, the LOD did not limit itself to the Charging

Parties' allegations but continues by stating that the Charging

Parties' claims of discrimination "were echoed by a number of

other female current and former employees who have taken

maternity leave.  EEOC's investigation shows that [these

additional employees'] careers lost momentum and that they were

transferred, displaced, and/or demoted."  Id.  As such, armed

with the Charging Parties' allegations and its own investigation

purporting to show that other employees suffered similar

discrimination, the EEOC set forth its reasonable cause

determination:  "The [EEOC] finds cause to believe that

[Bloomberg] discriminated against the three Charging Parties and

a class of similarly-situated women based on their sex/pregnancy

---

[8] The LOD is also reinserted into the record as Exhibit 2 of the
Golden Declaration.

by demoting them, decreasing their compensation, and otherwise discriminating against them in terms, conditions or privileges of their employment." Id.

Along with the LOD, the EEOC sent Bloomberg a proposed conciliation agreement. Bloomberg II, 751 F. Supp. 2d at 632-33. The agreement contained two sections pertaining to monetary relief being sought. (See Golden Decl. Ex. 2 at EE00017-19.) First, the EEOC set forth its proposal for "Monetary Relief to Charging Parties." (See id. at EE00017.) Under this proposal, the EEOC set forth specific, individual amounts of relief for each of the Charging Parties.[9] (Id.) Next, the EEOC's conciliation proposal provided for "Monetary Relief to Class Members." (See id. at EE00018-19.)

Under this latter section concerning monetary relief, the EEOC proposed that Bloomberg would pay a set amount ($7,500,000) "to establish the Claim Fund, which [would] be divided among all the Class Members by the [EEOC]." (Id. at EE00018.) The agreement refers generally to and defines "Potential Class [M]embers . . . as female employees who took maternity leave between January 1, 2003, and the present." (Id. (emphasis

---

[9] The agreement provided for $546,263 in back pay plus interest, $6,101,556 in front pay, and $250,000 in compensatory damages for Ms. Patricot; $1,199,416 in back pay plus interest, $6,412,277 in front pay, and $200,000 in compensatory damages for Ms. Lancaster; and $730,078 in back pay, $7,685,291 in front pay, and $300,000 in compensatory damages for Ms. Loures. (Id.)

added).)  Nowhere in the proposed agreement does the EEOC note whether any specific individual class members already have been identified.  Rather, the agreement simply notified Bloomberg that Class Members would be defined as:

> female employees who took maternity leave between January 1, 2003 and the present and who lost their job responsibilities, suffered a decline in job level or status, received less compensation, lost a scheduled increase, or otherwise experienced any reduction in the terms and conditions of their employment following notice to Bloomberg of their pregnancy or following their return from maternity leave.

(Id.)  Additionally, the agreement puts the onus onto Bloomberg to notify potential class members about their possible eligibility, while reserving power to the EEOC "to determine the eligibility of Potential Class Members" and "to make all determinations as to amounts of monetary relief to each Class Member."  (Id.)  Under the agreement, Bloomberg would receive notification of class member names and corresponding monetary relief, including back-pay and/or compensatory damages, only after the EEOC made its determinations.  (Id.)

The EEOC requested a counterproposal by July 11, 2007, by which time the parties evidently had discussed some logistical matters about the conciliation process and had met to discuss the EEOC's proposed agreement.  Bloomberg II, 751 F. Supp. 2d at 637.  Thereafter, in a letter dated July 12, 2007, the EEOC extended the date by which it expected a counterproposal and

explained that the proposal need not be a "fully developed draft." Id. The EEOC did, however, reiterate the three areas of relief on which it was focusing conciliation discussions: (1) monetary offers to each of the Charging Parties separately, (2) creation of a class fund, and (3) injunctive relief. (See Decl. of Kam S. Wong in Opp'n to Def.'s Mot. for Summ. J. on Pl.'s Failure to Conciliate (May 14, 2010) [dkt. no. 127], Ex. 28.)

After a series of meetings, on August 23, 2007, Bloomberg sent the EEOC a written counterproposal, which acknowledged the EEOC's three focal points of conciliation and stated that Bloomberg was "willing to engage in the conciliation process with a view towards" an amicable resolution. Bloomberg II, 751 F. Supp. 2d at 637-38 (citation omitted). Nevertheless, Bloomberg made clear it believed the charges lacked merit and countered by offering each of the Charging Parties $65,000 (in contrast to the EEOC's demand for more than $6 million on behalf of each). Id. at 638. Bloomberg's counterproposal also offered to discuss "policies and practices with the [EEOC] to identify gender-neutral enhancements that would address the particular needs of working parents . . . ." Id. (citation omitted). Finally, Bloomberg stated that it "[could not], however, agree to the establishment of a 'Claim Fund'" and that absent further information about other potential claimants, "any discussion of

monetary settlements should be limited" to the Charging Parties.
Id. (citation omitted).  The next day, the EEOC sent Bloomberg a
letter declaring that conciliation has been unsuccessful and
that further conciliation efforts would be futile.  Id.

     Approximately one month later, Plaintiff EEOC brought the
instant case on behalf of a class of similarly situated women
who were pregnant and took maternity leave ("Class Members").
The EEOC's suit alleges that Bloomberg reduced pregnant women's
or mothers' pay, demoted them in title or in number of directly
reporting employees (also called "direct reports"), reduced
their responsibilities, excluded them from management meetings,
and subjected them to stereotypes about female caregivers, any
and all of which violated Sections 706 and 707 of Title VII
because these adverse employment consequences were based on the
class members' pregnancy or the fact that they took leave for
pregnancy related-reasons.

     After extensive discovery, Bloomberg moved for summary
judgment on the EEOC's pattern and practice claims arising under
Section 707, and on August 16, 2011, this Court dismissed those
claims.  Bloomberg III, 778 F. Supp. 2d at 486.  The EEOC now
purports to continue the instant action by asserting individual
claims arising under Section 706 on behalf of twenty-nine

claimants.[10]  It is on these remaining individual claims that
Bloomberg presently moves for summary judgment.

II.  LEGAL STANDARD

   A.   Summary Judgment Standard

   In considering a motion for summary judgment, the Court
resolves all ambiguities and draws all reasonable inferences
against the moving party.  Lindsay v. Ass'n of Prof'l Flight
Attendants, 581 F.3d 47, 50 (2d Cir. 2009).  "Summary judgment
is appropriate only 'if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.'"  Kwan v. Schlein, 634
F.3d 224, 228 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a));
see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).
"An issue of fact is genuine if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
A fact is material if it might affect the outcome of the suit
under the governing law."  Lindsay, 581 F.3d at 50.  "The
inquiry performed is the threshold inquiry of determining
whether there is the need for a trial — whether, in other words,

---

[10] The EEOC also brought a retaliation case on behalf of several
individual claimants, but that portion of this lawsuit has been
dismissed for failure to conciliate those claims out of court.
Bloomberg II, 751 F. Supp. 2d at 643.  The EEOC did not bring a
hostile work environment claim.

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.

Rule 56 mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted). In the face of insufficient evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

B.   Title VII

"Title VII of the Civil Rights Act of 1964, § 703(a), 42 U.S.C. § 2000e et seq., prohibits various forms of employment discrimination on the basis of race, color, religion, sex, or national origin." United States v. City of N.Y., 713 F. Supp. 2d 300, 316 (S.D.N.Y. 2010). As amended by the Pregnancy

Discrimination Act of 1978 ("PDA"), Title VII prohibits "discrimination based on a woman's pregnancy [because it] is, on its face, discrimination because of her sex." <u>Newport News Shipbuilding & Dry Dock Co. v. EEOC</u>, 462 U.S. 669, 684 (1983). Specifically, the PDA adds this definition to Title VII:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k); <u>see</u> <u>id.</u> § 2000e-1(a)-(b). Thus, to make out a pregnancy discrimination claim, the plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy. <u>Velez v. Novartis Pharm. Corp.</u>, 244 F.R.D. 243, 264 (S.D.N.Y. 2007) ("It has been repeatedly affirmed that the PDA does not require the creation of special programs for pregnant women; nor does it mandate any special treatment. To the contrary, the statute specifically requires that pregnant women be treated the same as all other employees with similar disabilities." (quoting <u>Dimino v. N.Y.C. Transit Auth.</u>, 64 F. Supp. 2d 136, 157 (E.D.N.Y. 1999)); <u>see</u> <u>Fisher v. Vassar Coll.</u>, 70 F.3d 1420, 1448 (2d Cir. 1995),

rehard en banc on other grounds, 114 F.3d 1332 (2d Cir. 1997),
abrogated on other grounds by Reeves v. Sanderson Plumbing
Prods., Inc., 530 U.S. 133 (2000).

An action for violation of Title VII can be brought by the
person affected or by the EEOC.  Here, the EEOC has brought an
enforcement action under 42 U.S.C. § 2000e-5(f) on behalf of the
twenty-nine Non-Intervenor Plaintiffs.  In this type of action,
the EEOC can request injunctive or monetary "relief for a group
of aggrieved individuals."  Gen. Tel. Co. of the Nw. v. EEOC,
446 U.S. 318, 324 (1980).  Individuals can also intervene to
assert their own claims, as has been done here by the Plaintiff-
Intervenors.

Before initiating this type of enforcement action, however,
Congress requires that the EEOC engage in specific pre-
litigation activities, including investigating the claim and
attempting to "eliminate any such alleged unlawful employment
practice by informal methods of conference, conciliation, and
persuasion," id. § 2000e-5(b).  See EEOC v. Johnson & Higgins,
Inc., 91 F.3d 1529, 1534-35 (2d Cir. 1996).  Specifically, prior
to filing suit the EEOC must: (1) receive a formal charge of
discrimination against the employer; (2) provide notice of the
charge to the employer; (3) investigate the charge; (4) make and
give notice of its determination that there was reasonable cause
to believe that a violation of Title VII occurred; and (5) make

14

a good faith effort to conciliate the charges.  See 42 U.S.C. § 2000e-5(b).

These pre-litigation requirements represent "sequential steps in a unified scheme for securing compliance with Title VII." EEOC v. Hickey—Mitchell Co., 507 F.2d 944, 948 (8th Cir. 1974) (emphasis in original); see also EEOC v. E.I. DuPont de Nemours & Co., 373 F. Supp. 1321, 1336 (D. Del. 1974), aff'd, 516 F.2d 1297 (3d Cir. 1975).  As for the notice requirement, notice of the particulars of the investigation is not required, and the scope of the EEOC's initial investigation does not limit the scope of the lawsuit alleging Title VII violations it may later bring.  "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." EEOC v. Caterpillar, Inc., 409 F.3d 831, 833 (7th Cir. 2005) (quoting Gen. Tel. Co. v. EEOC, 446 U.S. 318, 331 (1980)).  In other words, the EEOC may bring any claims reasonably related to the charge it investigated.  EEOC v. Golden Lender Fin. Corp., No. 99 Civ 8591, 2000 WL 381426, at *4 (S.D.N.Y. Apr. 13, 2000) (Koeltl, J.).

Finally, the EEOC may sue only after exhausting conciliation efforts.  42 U.S.C. § 2000e-5(b); Johnson & Higgins, 91 F.3d at 1534.  In doing so, the EEOC must give notice of the charges it seeks to conciliate.  EEOC v. Thomas Dodge Corp. of N.Y., 524 F. Supp. 2d 227, 236 (E.D.N.Y. 2007).

15

The EEOC fulfills this mandate if it "1) outlines to the employer the reasonable cause for its belief that the employer is in violation . . . , 2) offers an opportunity for voluntary compliance, and 3) responds in a reasonable and flexible manner to the reasonable attitude of the employer." Johnson & Higgins, 91 F.3d at 1534; EEOC v. New Cherokee Corp., 829 F. Supp. 73, 80 (S.D.N.Y. 1993). Ultimately, the EEOC must make a good faith effort to conciliate before bringing suit. Sears, 650 F.2d at 18-19; see EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981) ("[T]he fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances."); New Cherokee, 829 F. Supp. at 81.

The contours of the conciliation process will vary from case to case, but the process is designed to "allow[] the employer and the EEOC to negotiate how the employer might alter its practices to comply with the law, as well as how much, if any, the employer will pay in damages." Johnson & Higgins, 91 F.3d at 1535; accord Marshall v. Sun Oil Co., 605 F.2d 1331, 1334 (5th Cir. 1979). The Court's role in reviewing efforts to conciliate, while not inert, is modest; the EEOC, as the enforcement agency, has discretion to formulate conciliation efforts in each situation, but it must do so in good faith. See Sears, 650 F.2d at 18-19 ("Although in general the [EEOC] should be given wide latitude in shaping [conciliation efforts], the

16

[EEOC]'s discretion is not unlimited . . . ." (citation omitted)); see also Johnson & Higgins, 91 F.3d at 1534; EEOC v. Keco Indus., Inc., 748 F.2d 1097, 1102 (6th Cir. 1984). As this Court noted in Bloomberg II, however, the EEOC cannot "attempt conciliation on one set of issues and having failed, litigate a different set." Sears, 650 F.2d 14, 19. As part of attempting conciliation, then, the EEOC has to provide sufficient notice to the employer of the nature of the charges against it so as to set the stage for fruitful conciliation discussions. See, e.g., id.; EEOC v. Chesapeake & Ohio Ry. Co., 577 F.2d 229, 232 (4th Cir. 1978) (stating that EEOC should "notify an employer of the [its] findings and . . . provide common ground for conciliation"); see also EEOC v. Outback Steakhouse of Fla., Inc., 520 F. Supp. 2d 1250, 1262 (D. Colo. 2007).

III. DISCUSSION

Congress has afforded the EEOC a number of tools under Title VII to address different types of discrimination; it has also imposed limits on its enforcement authority. Just as Congress has charged the EEOC with helping ensure that employers do not single out employees on account of certain characteristics, this Court is charged with ensuring that any actions brought before it by the EEOC are within the parameters of the law as set forth by Congress, regardless of how well-intentioned the EEOC's purpose.

17

Congress was very mindful when enacting and later amending Title VII that it provide a scheme emphasizing voluntary proceedings and informal conciliation as opposed to one encouraging litigious proceedings.  See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367-68 (1977) ("Congress, in enacting Title VII, chose "(c)ooperation and voluntary compliance . . . as the preferred means of achieving" its goals." (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974)).[11]  The legislative history of Title VII is replete with statements illustrating as much.[12]  Additionally, as other courts have

---

[11] Prior to 1972, "the sole purpose for the EEOC's existence . . . was conciliation," and when Congress amended Title VII in 1972 and granted litigation authority to the EEOC, "such amendment was not to provide an alternative to the prior procedures but to supplement the EEOC's existing administrative process." EEOC v. Pierce & Stevens Chem. Corp., 434 F. Supp. 1162, 1166 (W.D.N.Y. 1977).

[12] For example, when Congressman Perkins introduced the Conference Report on the Equal Employment Opportunity Act of 1972, he said:  "The conferees contemplate that the Commission will continue to make every effort to conciliate as it is required by existing law. Only if conciliation proves to be impossible do we expect the Commission to bring action in federal district court to seek enforcement."  118 Cong. Rec. 7563 (1972).  Such an emphasis can be traced to Congress's enactment of Title VII as part of the Civil Rights Act of 1964. See, e.g., 110 Cong. Rec. 14190 (1964) ("[W]e have leaned over backward in seeking to protect the possible defendants by means of . . . conciliation, arbitration, and negotiation. I believe it will be found in most instances that after the investigation begins, the parties will voluntarily arrive at a settlement of the contest.") (statement of Sen. Morse); id. at 14443 ("What have we sought to do in the Civil Rights Act of 1964—the greatest piece of social legislation of our generation. . . . We have attempted to establish a framework of law wherein men of (cont'd)

observed, Congress recognized via Title VII that the overburdened Federal judicial system often is not the preferred medium to resolve employment discrimination disputes.  See, e.g., Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1237, 1241 (M.D. Ala. 2001); Pearce v. Barry Sable Diamonds, 912 F. Supp. 149, 153 (E.D. Pa. 1996).  Against this backdrop, Congress set forth the specific pre-litigation requirements discussed supra and created two principal avenues through which the EEOC could remedy discrimination: (1) individual claims under Section 706 and (2) pattern-or-practice claims under Section 707.

Here, the EEOC initiated an investigation of Bloomberg based on the Charging Parties' allegations of discrimination. The LOD addressed those allegations and continued by alerting Bloomberg that the EEOC had determined that the alleged discriminatory conduct extended to "other female current and former employees who have taken maternity leave." (See LOD.) The LOD concluded by setting forth a reasonable cause determination that Bloomberg "discriminated against the three

_____

(cont'd from prev. page)
good will and reason can seek to resolve these difficult and emotional issue of human rights. . . . We have placed emphasis on voluntary conciliation—not coercion.") (statement of Sen. Humphrey); id. at 2565 (statement of Rep. Lindsay addressing concerns and explaining how conciliation procedures are aimed at encouraging voluntary compliance and are designed to offer extra protection to employers).

Charging Parties and a class of similarly-situated women based
on their sex/pregnancy." (Id.)

According to the EEOC, "this Court already held that [the]
EEOC met its statutory conciliation obligation with respect to
its class-wide sex/pregnancy discrimination claims." (See
EEOC's Omnibus Mem. of Law in Opp'n to Bloomberg's Motion on
Section 706 Claims [dkt. no. 328] ("EEOC's Omnibus Br."), at 25
(citing Bloomberg II, 751 F. Supp. 2d 628).) From this
observation, the EEOC argues that the Court's holding with
respect to the EEOC's statutory pre-litigation obligations in
the context of its class-wide claims also should apply to its
obligations in the context of the individual claims it pursues
now. Nowhere in the LOD, however, does the EEOC mention the
names of any individual claimants other than the Charging
Parties. And nowhere in the Bloomberg II Order does the Court
state that Title VII allows the EEOC to use class-wide claims
brought under Section 707 to conduct an end run around the pre-
litigation requirements that must be satisfied before bringing
suit on behalf of individual claimants under Section 706.
Indeed, Section 706 and 707 claims are based on distinct
theories and are adjudicated under different standards.
Allowing the EEOC to subvert its pre-litigation obligations with
respect to individual claims by yelling far and wide about class
claims would undermine the statutory policy goal of encouraging

20

conciliation.  Thus, the Court holds that its prior finding that
the EEOC satisfied its pre-litigation obligations with respect
to a class-wide claim applies to that class-wide claim only and
that it must look independently at whether the EEOC fulfilled
its statutory pre-litigation requirements with respect to the
individual claims upon which it purports to continue this
litigation.  See Sears, 650 F.2d 14, 19 (explaining that EEOC
cannot "attempt conciliation on one set of issues and having
failed, litigate a different set"); see also 110 Cong. Rec.
14191 (statement of Sen. Morse responding to concerns that the
Commission could abuse its discretion by explaining that federal
courts provide a check against abuses).

Although the EEOC became aware before filing suit that at
least twenty-one of the Non-Intervenors took maternity leave,
the record reflects that several of the Non-Intervenors were not
contacted by the EEOC until after the instant suit was filed.
(See, e.g., Adams Am. Decl. in Opp'n to Def.'s Mot. for Summ. J.
as to EEOC's Pattern-or-Practice Claim [dkt. no. 192], Ex. 9
(Stefanie Batcho-Lino Dep.), at 38.; Golden Reply Decl., Ex. J
(Sofia Fernandez Dep.), at 5; Decl. of Thomas H. Golden
Concerning Aimee Picchi [dkt. no. 276], Ex. 2 (Picchi Dep.), at
287.)  Additionally, nothing in the record indicates that the
EEOC requested contact information for claimants included on the
maternity leave list prior to January 23, 2008.  (See Bloomberg

21

56.1 ¶ 5; EEOC 56.1 ¶ 5.)  On the other hand, the record does reflect that less than ten days after Bloomberg provided the maternity leave list, the EEOC issued its LOD.

Throughout the course of this litigation, the EEOC identified more than eighty claimants (including the Claimant Parties) as the action progressed.  After this Court dismissed the Section 707 claims, however, the EEOC continued this litigation on behalf of only thirty-two individual claimants. The record shows that the EEOC spurned any efforts to conciliate individual claims beyond those of the Claimant Parties, let alone offer Bloomberg an opportunity to tailor any class-wide conciliatory efforts to the breadth of legitimate claims it might face.  On August 23, 2007, Bloomberg explicitly offered to discuss cases of "identified individuals [the EEOC believed] may have legitimate grievances against the Company as a result of their experiences following their return from maternity leave" and "explore whether there is a basis on which their (and the Commission's) concerns can be addressed." (Golden Decl. Ex. 3, at EE00034.)  Rather than identify to Bloomberg any additional potential claimants (or even respond to this request), the EEOC declared conciliation unsuccessful the very next day and filed suit a month later.  The EEOC did not formally identify to Bloomberg any of the Non-Intervenors until nearly five months later on January 17, 2008.  And never did the EEOC attempt to

revisit conciliation with respect to any individual claims upon identifying each to Bloomberg.

The EEOC may bring any claims reasonably related to the charge it investigated.  But such a principle does not grant the EEOC authority to abdicate its statutory responsibility to provide sufficient notice and pursue a pre-suit resolution in good faith.  The Court is not aware of any binding legal authority, and the EEOC has provided none, that allows the EEOC to do what it is attempting to do here—namely level broad accusations of class-wide discrimination to present Bloomberg with a moving target of prospective plaintiffs and, after unsuccessfully pursuing pattern-or-practice claims, substitute its own investigation with the fruits of discovery to identify which members of the class, none of whom were discussed specifically during conciliation, might have legitimate individual claims under Section 706.  The EEOC's conduct here blatantly contravenes Title VII's emphasis on resolving disputes without resort to litigation and lands far and wide of any flexibility Title VII might provide with respect to pre-litigation conciliation requirements where both individual and class-wide claims are asserted and potential claimants are discovered throughout the course of discovery.

Rather than presenting evidence that an investigation was commenced into any of the remaining Non-Intervenor's claims

23

prior to filing suit, the EEOC tries to divert the Court's
attention from the absence of any such investigation by
stringing together citations from cases standing for the
proposition that courts should refrain from reviewing the
sufficiency of the underlying investigation.  (See May 23 Ltr.,
at 1-3.)  While such an argument patently conflates the
principle of granting deference to the discretionary actions of
federal agencies with the Court's duty to ensure that a required
action was performed at all, the undisputed facts in the record
make it apparent that the statutorily-required investigation
never occurred, and thus, there is no such to review.  Because
the record discloses that the EEOC issued an LOD within ten days
of receiving the maternity leave list, that the EEOC refused to
identify any individual claimants other than the Claimant
Parties during conciliation discussions, that after commencing
litigation the EEOC identified a total of approximately seventy-
eight claimants to Bloomberg as class members between January
17, 2008, and January 10, 2010, and that there is no other
evidence of pre-suit investigation, the only inference to be
drawn is that the EEOC resorted to discovery conducted in
conjunction with its class-wide claims to find the individual
claimants.  Thus, the Court holds that no genuine issue of fact
remains as to whether the EEOC investigated any of the Section
706 individual claims prior to commencing litigation.

Nevertheless, even assuming the EEOC can satisfy its pre-litigation obligation of investigation, it remains apparent that the EEOC completely contravened its other obligations under Title VII.

The EEOC's pre-litigation conduct also failed to meet the requirements of the statute insofar as it failed to make a reasonable cause determination as to the specific allegations of any of the Non-Intervenors prior to filing the Complaint[13] or to afford Bloomberg a meaningful opportunity to conciliate any individual claims beyond those brought by the Claimant Parties. In a sense, the EEOC would like the Court to treat its subsequent narrowing of the claimant pool as fulfilling the requirement that it make a reasonable cause determination prior to pursuing Section 706 claims on behalf of the remaining individuals.  Regardless of whether the EEOC should be permitted flexibility with respect to this requirement under certain circumstances, any assertion that this case presents such circumstances begs the question.  Additionally, the EEOC spurned Bloomberg's offer to conciliate additional individual claims by

---

[13] Tellingly, the EEOC now purports to assert an individual claim on behalf of one individual whose complaint centers upon conduct that occurred after litigation commenced.  Catherine McGonigle did not take maternity leave at Bloomberg until March 2009. (See Bloomberg's R. 56.1 Statement Regarding Claims Asserted on Behalf of Catherine McGonigle [dkt. no. 263] ¶ 18.)

declaring conciliation efforts unsuccessful the next day.  Where
the EEOC

- pursues a pattern-or-practice claim based on the
  allegations of three identified individuals and on behalf
  of an unidentified number of potential class members,

- refuses to disclose to the defendant the identity of any
  potential class members during the course of its
  investigation or conciliation efforts or even engage in a
  discussion of any individual claims it might later bring on
  behalf of class members,

- identifies approximately seventy-eight members of the class
  after commencing litigation,

- then only pursues thirty-two claims on behalf of individual
  class members after dismissal of its class-wide claims, and

- has not offered any evidence indicating that its narrowing
  of the number of claims from seventy-eight to thirty-two
  was based on information gathered through its pre-suit
  investigation and not as a result of bootstrapping its
  investigation to discovery,

the Court holds that the EEOC failed to satisfy its pre-
litigation obligations with respect to all of the remaining Non-
Intervenor claims of making a reasonable cause determination or
ensuring that additional claims were reasonably related to the

charge contained within the LOD so as to afford Bloomberg a reasonable opportunity to conciliate.

In so holding, the Court adopts the following reasoning from Chief Judge Linda R. Reade's analysis in EEOC v. CRST Van Expedited, Inc., No. 07-CV-95-LRR, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009), aff'd, 679 F.3d 657 (8th Cir. 2012), a case dismissed under similar circumstances as those presented here: "To rule to the contrary would severely undermine if not completely eviscerate Title VII's integrated, multistep enforcement procedure, expand the power of the EEOC far beyond what Congress intended[,] and greatly increase litigation costs. . . . To accept the EEOC's view of its own authority would also impose an untenable burden upon the federal district courts, as the EEOC might avoid administrative proceedings for the vast majority of allegedly aggrieved persons." Id. at *17-18 (internal quotation marks and citations omitted).  Moreover, to the extent that Bloomberg knew or should have known many other women were complaining of pregnancy discrimination, "[e]ven the most recalcitrant employer who flouts Title VII's prohibitions against unlawful employment discrimination . . . is due the process that Title VII mandates.  Congress surely did not intend that employers, even ones whose workplaces might be rife with [sex discrimination], face the moving target of allegedly aggrieved persons that [Bloomberg] faced in both the

administrative and legal phases of this dispute." Id. at *18 (citation omitted).  As in CRST, the EEOC's actions—or more appropriately, inaction—"foreclosed any possibility that the parties might settle all or some of this dispute without the expense of a federal lawsuit," id., as Title VII prefers.[14]

Having found the EEOC's efforts to fulfill its pre-litigation obligations with respect to all of the remaining Non-Intervenor claims insufficient to meet the requirements of the statute, the Court now must determine whether this litigation can continue further.  The EEOC points out that where a court finds "conciliation efforts deficient, the preferred remedy [is not] dismissal but a stay to permit serious settlement discussions.  (See EEOC Omnibus Br., at 25 n.16 (citing Sears, 650 F.2d at 19, and EEOC v. David Lerner Assocs., Inc., No. 3:05CV292(MRK), 2005 WL 2850080, at *1 n.2 (D. Conn. Oct. 27, 2005).)  Nevertheless, where, as here, the EEOC completely abdicates its role in the administrative process, the appropriate remedy is to bar the EEOC from seeking relief on behalf of the Non-Intervenors at trial and dismiss the EEOC's Complaint.

---

[14] The Court's holding herein is not to say that the EEOC must identify each and every potential claimant before filing a lawsuit.

The Court does not impose this severe sanction lightly and recognizes that certain of the Non-Intervenor claims may be meritorious but now will never see the inside of a courtroom. However, the Court finds that allowing the EEOC to revisit conciliation at this stage of the case—after shirking its pre-litigation investigation responsibilities and spurning Bloomberg's offer of conciliation and instead engaging in extensive discovery to develop the Non-Intervenor claims—already has and would further prejudice Bloomberg.  Moreover, if such a sanction were not imposed, the Court, in turn, would be sanctioning a course of action that promotes litigation in contravention of Title VII's emphasis on voluntary proceedings and informal conciliation.

IV.   CONCLUSION

Bloomberg's motion for summary judgment on all remaining Section 706 claims brought by the EEOC on behalf of the Non-Intervenors [dkt. no. 219] is GRANTED, and the EEOC is barred from seeking claims on behalf of those individuals.  Under 42 U.S.C. § 2000e-5(k), Bloomberg is now a "prevailing party" as to the EEOC and may file an application for attorneys' fees from the EEOC within twenty days after disposition of the entire case.  Formal judgment shall not enter against the EEOC and in favor of Bloomberg until the Court enters judgment on the pending claims of the remaining Plaintiff-Intervenors.


SO ORDERED.

Dated:      New York, New York
            September 9, 2013




                              _____
                              LORETTA A. PRESKA
                              Chief U.S. District Judge