UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                                                      :

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                     :         07-CV-8383 (LAP/HP)

                          Plaintiff,                :

                     v.                            :

BLOOMBERG L.P.,                          :

                          Defendant.          :

                                                      :
------------------------------------------------------------------- x

 

**MEMORANDUM OF LAW IN SUPPORT OF BLOOMBERG L.P.'S
MOTION FOR AN ORDER DECLARING ITS ENTITLEMENT TO
ATTORNEYS' FEES**

## TABLE OF CONTENTS

OVERVIEW ........................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ........................................................... 2

    A.    EEOC's Unreasonable Pre-Suit Conduct. ............................................ 2

    B.    EEOC Sues and Issues An Inflammatory Press Release About The Case. ............. 3

    C.    EEOC Improperly Uses Discovery to Identify 90 Claimants, Most of Whose Claims It Later Drops. ............................................ 4

    D.    EEOC Amends Its Complaint To Add Unconciliated Retaliation Claims. ............. 5

    E.    Expert Discovery Reveals That EEOC's Pattern-or-Practice Claims Were False. ............................................ 6

    F.    The Court Excludes Both Of EEOC's Proffered Experts. ..................... 7

    G.    The Court Dismisses Many Claims On Statute of Limitations Grounds. .............. 8

    H.    EEOC Drops More Claims And All Remaining Individual Claims Are Dismissed. ............................................ 8

ARGUMENT ..................................................................................................... 9

I.    The *Christiansburg* Standard ......................................................... 9

II.    Bloomberg Is Entitled To Attorneys' Fees Because EEOC's Conduct Was Unreasonable At Every Stage Of The Litigation. ............................ 11

    A.    EEOC Filed A Complaint With Unsupported and False Accusations. ................ 11

    B.    EEOC Refused To Comply With Its Pre-Suit Obligations Regarding Its Individual and Retaliation Claims. ............................ 13

    C.    EEOC Improperly Used Discovery To Identify Claimants .................. 15

    D.    EEOC Misled The Court. ............................................................. 16

    E.    EEOC Continued To Litigate After It Should Have Become Obvious To It That Its Claims Were Unreasonable. ............................ 17

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Cnty. of Nassau*,
    96 F.3d 644 (2d Cir. 1996) ............................................................................ 13

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*,
    691 F. Supp .d 372 (S.D.N.Y. 2009) ......................................................... 17

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978) ............................................................................. 9, 10

*EEOC v. Am. Fed'n of Teachers, Local 571*,
    761 F. Supp. 536 (N.D. Ill. 1991) ..........................................................14, 15

*EEOC v. Agro Distrib., LLC*,
    555 F.3d 462 (5th Cir. 2009) ...............................................................18, 19, 20

*EEOC v. Asplundh Tree Expert Co.*,
    340 F.3d 1256 (11th Cir. 2003) ............................................................... 14

*EEOC v. Bellemar Parts Indus., Inc.*,
    868 F.2d 199 (6th Cir. 1989) ................................................................... 12

*EEOC v. Bloomberg L.P.*,
    No. 07 Civ. 8383, 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) ("*Bloomberg I*")6, 16, 17

*EEOC v. Bloomberg L.P.*,
    751 F. Supp. 2d. 628 (S.D.N.Y. 2010) ("*Bloomberg II*") ...................................... *passim*

*EEOC v. Bloomberg L.P.*,
    778 F. Supp. 2d 458 (S.D.N.Y. 2011) ("*Bloomberg III*") ..................................... *passim*

*EEOC v. Bloomberg L.P.*,
    967 F. Supp. 2d  802 (S.D.N.Y. 2013) ("*Bloomberg IV*") ..................................... *passim*

*EEOC v. Bloomberg L.P.*,
    967 F. Supp. 2d  816 (S.D.N.Y. 2013) ("*Bloomberg V*") ............................................. 3, 5

*EEOC v. CRST Van Expedited, Inc.*,
    No. 07-cv-95, 2013 WL 3984478 (N.D. Iowa Aug. 01, 2013) ................................12, 14

*EEOC v. Datapoint Corp.*,
    457 F. Supp. 62 (W.D. Tex. 1978) ..........................................................16, 19

*EEOC v. Eagle Quick Stop*,
No. 05-cv-2074, 2007 WL 4268778 (S.D. Miss. Nov. 30, 2007)............................10, 19

*EEOC v. Global Horizons, Inc.*,
940 F. Supp. 2d 1316 (E.D. Wash. 2013) ..................................................................... 14

*EEOC v. Detroit-Macomb Hosp. Corp.*,
No. 91-1088, 1992 U.S. App. LEXIS 647 (6th Cir. Jan. 14, 1992) ............................... 10

*EEOC v. E.J. Sacco, Inc.*,
102 F. Supp. 2d 413 (E.D. Mich. 2000) ..........................................................11, 12, 19

*EEOC v. Harvey L. Walner & Assocs.*,
91 F.3d 963 (7th Cir. 1996)........................................................................................... 11

*EEOC v. Ipco Hosp. Supply Co.*,
565 F. Supp. 134 (S.D.N.Y. 1983) ................................................................................ 10

*EEOC v. Jordan Graphics Inc.*,
769 F. Supp. 1357 (W.D.N.C. 1991) ............................................................................. 19

*EEOC v. Original Honeybaked Ham Co. of Ga.*,
No. 11-cv-2560, 2013 U.S. Dist. LEXIS 26887 (D. Colo. Feb. 27, 2013).................... 16

*EEOC v. PeopleMark, Inc.*,
732 F.3d 584 (6th Cir. 2013)......................................................................................... 19

*EEOC v. Pierce Packing Co.*,
669 F.2d 605 (9th Cir. 1982)......................................................................................... 14

*EEOC v. Propak Logistics*,
746 F.3d 145 (4th Cir. 2014)......................................................................................... 12

*EEOC v. Shoney's, Inc.*,
542 F. Supp. 332 (N.D. Ala. 1982) ..........................................................................11, 16

*EEOC v. Target Corp.*,
No. 02-C-146, 2007 WL 1461298 (E.D. Wis. May 16, 2007) ...................................... 11

*EEOC v. TriCore Reference Labs.*,
No. 09-cv-956, 2011 U.S. Dist. LEXIS 158175 (D.N.M. Apr. 27, 2011)...................... 19

*EEOC v. United Parcel Serv.*,
587 F.3d 136 (2nd Cir. 2009)........................................................................................ 12

*EEOC v. W. Customer Mgmt. Grp., LLC*,
No. 10-cv-378, 2014 U.S. Dist. LEXIS 125129 (N.D. Fla. July 28, 2014).................... 10

*Faraci v. Hickey-Freeman Co.*,
    607 F.2d 1025 (2d Cir. 1979) ........................................................................... 13

*Gen. Tel. Co. of the N.W. v. EEOC*,
    446 U.S. 318 (1980) ...................................................................................... 19

*Greenberg v. Hilton Int'l Co.*,
    870 F.2d 926 (2d Cir. 1989) ............................................................................. 9

*Occidental Life Ins. Co. v. EEOC*,
    432 U.S. 355 (1977) ...................................................................................... 12

*Quintana v. Jenne*,
    414 F.3d 1306 (11th Cir. 2005) ....................................................................... 13

*Reiter v. Metro. Transp. Auth. of N.Y.*,
    No. 01 Civ. 2762, 2003 U.S. Dist. LEXIS 17391 (S.D.N.Y. Sept. 30, 2003) ................. 2

*Taylor v. Harbour Pointe Homeowners Ass'n*,
    690 F.3d 44 (2d Cir. 2012) ............................................................................. 13

## Statutes & Rules

42 U.S.C. § 2000e-5 (2013) ........................................................................... 1, 12

42 U.S.C. § 2000e-8 (2013) ............................................................................. 12

42 U.S.C. § 2000e-9 (2013) ............................................................................. 12

Bloomberg L.P. ("Bloomberg" or the "Company") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 54 of the Federal Rules of Civil Procedure and Section 706(k) of Title VII of the Civil Rights Act of 1964 ("Title VII"), for an order declaring its entitlement to attorneys' fees from the Equal Employment Opportunity Commission ("EEOC").

## OVERVIEW

This Court should award "a reasonable attorney's fee" to Bloomberg as the "prevailing party" under Title VII because the action brought by EEOC was frivolous, unreasonable, and without foundation, and because EEOC continued to litigate long after that became clear.  42 U.S.C. § 2000e-5(k) (2013).  A fee award is particularly appropriate here, given that:

- EEOC violated Title VII when it filed its original and amended complaints, in which it made false accusations against Bloomberg about a nonexistent "pattern or practice" of pay cuts and demotions and sought individual relief for individuals who were not subject to the statutorily-mandated pre-suit process;

- EEOC exacerbated its violations when it filed its second amended complaint adding a "class" retaliation claim after it refused to engage in a good faith conciliation process;

- EEOC continued its Title VII violations by using discovery to amass claimants that it never investigated pre-suit, and whose claims EEOC later admitted, in many instances, were unsupportable;

- EEOC misled the Court with mischaracterizations of its expert and anecdotal evidence; and

- EEOC continued to litigate its pattern-or-practice claim even after this Court's August 31, 2010, order excluding both of EEOC's experts, as well as the uncontroverted statistical evidence, effectively foreclosed that claim.

For these reasons, and as explained more fully below, Bloomberg respectfully asks this Court to determine that Bloomberg is entitled to reasonable attorneys' fees.

1

## FACTS AND PROCEDURAL HISTORY

A.   EEOC's Unreasonable Pre-Suit Conduct.

EEOC's pre-suit investigation turned up no support for its allegations that Bloomberg "engaged in a pattern or practice of unlawful discrimination against non-clerical female employees [("Class Members")] based on their sex and pregnancy by decreasing their pay [and] demoting them," as EEOC later alleged in its September 27, 2007 Complaint and subsequent amended complaints.  (Exs. 1-3.)[1]  EEOC never developed any evidence of a pattern or practice of pay cuts for a simple reason:  there was none.  In fact, before EEOC filed suit, it had no data that would enable it to assess whether cutting Class Members' compensation was Bloomberg's "standard operating procedure."  (Golden Decl. ¶ 27.)  In addition, EEOC did nothing to investigate the individual claims of Class Members on whose behalf it eventually sought relief.  Indeed, it is undisputed that "the statutorily-required investigation never occurred."  *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d  802, 814 (S.D.N.Y. 2013) ("*Bloomberg IV*").

EEOC issued a letter of determination in June 2007 with a proposed conciliation agreement that sought relief well beyond the boundaries of available remedies under Title VII. (Exs. 4, 5.)  For example, EEOC sought over $23 million in back pay, front pay, and compensatory damages for Jill Patricot, Janet Loures, and Tanys Lancaster, (the "Charging Parties"), $20.1 million of which was a frivolous front pay demand for two individuals who were current employees and a third whom EEOC determined lawfully separated from Bloomberg.[2]

---

[1]   References to "Ex. __" are to exhibits attached to the Declaration of Thomas H. Golden, dated December 12, 2014 (the "Golden Decl."), and submitted herewith.

[2]   A front pay claim for a current employee is frivolous.  *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2003 U.S. Dist. LEXIS 17391, at *46 (S.D.N.Y. Sept. 30, 2003), *rev'd in part on other grounds*, 457 F.3d 224 (2d Cir. 2006).

(Ex. 5.)  EEOC also proposed that Bloomberg set up a $7.5 million "Claim Fund" for any "Potential Class Members" whom it determined to be eligible for an award, but it "refused to identify any individual claimants other than the [Charging Parties]."  *Bloomberg IV*, 967 F. Supp. 2d at 814.  EEOC did not identify a single individual on whose behalf it was pursuing claims (a "Claimant") until almost five months *after* commencing this litigation.  *Id.*

On August 24, 2007, EEOC declared conciliation unsuccessful.  *Id.* at 813.

B.    EEOC Sues and Issues An Inflammatory Press Release About The Case.

EEOC commenced this action on September 27, 2007.  In its complaint, EEOC claimed—with no basis, as Bloomberg later proved—that Bloomberg "engaged in a pattern or practice of unlawful discrimination against non-clerical female employees based on their sex and pregnancy."[3]  (Ex. 1.); *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 461 (S.D.N.Y. 2011) ("*Bloomberg III*").  EEOC specifically alleged that Bloomberg violated Title VII by "decreasing [Class Members'] pay, demoting them, diminishing their job duties and excluding them from other employment opportunities when they became pregnant and when they returned from maternity leave," and "subjected [them] to stereotypes regarding female caregivers."  (Ex. 1 at 1-3.)  EEOC also alleged violations of section 706 of Title VII (the individual claims), though the Complaint failed to identify a single Claimant other than the Charging Parties.  (*Id.*)

EEOC accompanied the filing with an inflammatory press release that announced that Bloomberg "had violated federal law" and "forced" women to "choose between motherhood and

---

[3]    EEOC filed an amended complaint on February 21, 2008, which was substantively the same as the original complaint and repeated the false accusations of a pattern or practice of decreased pay and demotions.  (Ex. 2.)  In addition, six individuals ultimately intervened as plaintiffs in EEOC's case (the "Plaintiff-Intervenors").  *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 829 (S.D.N.Y. 2013) (ECF No. 558) ("*Bloomberg V*").

[their] livelihood[s]."[4]  (Ex. 6.)  News organizations around the world reported on EEOC's spurious accusations.  (*See, e.g.*, Exs. 7, 8.)

       C.      <u>EEOC Improperly Uses Discovery to Identify 90 Claimants, Most of Whose Claims It Later Drops.</u>

Discovery began in early 2008.  Over the course of approximately two years, EEOC "present[ed] Bloomberg with a moving target of prospective plaintiffs" whose claims it was pursuing, and "resorted to discovery conducted in conjunction with its class-wide claims to find the individual claimants."  *Bloomberg IV*, 967 F. Supp. 2d at 814.  Between January 17, 2008 and February 12, 2010, EEOC identified, at one time or another, 90 Claimants against whom Bloomberg allegedly discriminated.  (Golden Decl. ¶ 30.)  In many instances, EEOC did not even meet the Claimant in person until right before her deposition.  (Ex. 9.)

Various news outlets reported on EEOC's inflated tally of Claimants.  For example, the day after the May 1, 2008 status conference in which EEOC informed the Court that 54 women had joined the case, the *New York Times* ran a headline, "54 More Women Accuse Bloomberg Firm of Bias."  (Ex. 10.)  That article also reported that EEOC predicted the "number was likely to grow."  (*Id.*)  And on at least three occasions in 2009, the *Times* reported that EEOC was proceeding "on behalf of more than 80 female employees."  (Ex. 11.)

During discovery, the parties took well over 250 days of deposition testimony and Bloomberg produced millions of pages of documents, including with respect to Claimants whom EEOC never investigated pre-suit, never mentioned during conciliation, and (as discussed below) dropped during and after discovery.  (Golden Decl. ¶¶ 28-34.)

---

[4]    The press release is still available on EEOC's website today, without reference to the Court's subsequent rejection of EEOC's claims.  (Golden Decl. ¶ 7; Ex. 6.)

D.    EEOC Amends Its Complaint To Add Unconciliated Retaliation Claims.

On February 6, 2008, EEOC informed Bloomberg that it was investigating a "classwide" retaliation claim in connection with a charge filed by a Plaintiff-Intervenor.[5]  (Ex. 13.)  During conciliation, EEOC once again "consistently stonewalled," refusing to provide Bloomberg with information about the class or the damages, despite Bloomberg's repeated requests.  *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 641 (S.D.N.Y. 2010) ("*Bloomberg II*").

EEOC's pre-suit conduct in connection with the retaliation claims was unreasonable in other ways.  For example, EEOC made frivolous multi-million dollar front pay demands for current employees, and, rather than neutrally attempt to resolve the claims, "us[ed] the proposed [conciliation] agreement as a 'weapon to force settlement.'"  *Id.* at 642 (citation omitted).  Additionally, two charges pointed to Bloomberg's media statements about the case, but EEOC repeatedly refused to say whether it recognized those statements to be protected by the First Amendment.[6]  (Ex. 14 at EE10981; Ex. 15 at EE11581; Ex. 16 at 207-09, 214–15, 225; Ex. 17; Ex. 18 at EE 11589–90.)

After declaring conciliation unsuccessful, in March 2009, EEOC filed a second amended complaint to add a class retaliation claim, repeating the false accusations about a pattern-or-practice of "decreased" pay and demotions.  (Ex. 3 at ¶ 9.)

On October 25, 2010, the Court dismissed EEOC's class-wide retaliation claims for failure to satisfy Title VII's pre-suit conciliation requirement.  *Bloomberg II*, 751 F. Supp. 2d at

---

[5]   Five Plaintiff-Intervenors filed retaliation charges with EEOC.  *Bloomberg V*, 967 F. Supp. 2d at 838, 863, 868, 876, 890.

[6]   Although EEOC ultimately disavowed reliance on the media statements as a basis for its retaliation allegations (Ex. 19 at 3), EEOC's vague and ambiguous responses to Bloomberg's requests for clarification on the issue were bitterly ironic:  EEOC, a federal civil rights agency which issued a press release when it sued Bloomberg, apparently hoped to chill Bloomberg's (and other litigants') exercise of First Amendment rights.

643.  As a result of EEOC's unreasonable pre-suit conduct, the Court concluded "that dismissal is the appropriate sanction in these circumstances." *Id.*

    E.     <u>Expert Discovery Reveals That EEOC's Pattern-or-Practice Claims Were False.</u>

All three labor economists who conducted a statistical analysis of Bloomberg's pay practices—including EEOC's proposed expert—determined that, contrary to the allegations in EEOC's complaints, Bloomberg did not engage in a pattern or practice of "decreasing" Class Members' pay.  All three also agreed that Bloomberg treated Class Members more favorably than other employees who took leaves of similar duration.  Indeed, EEOC's own proposed expert, Dr. Louis Lanier, found that Bloomberg typically *increased* Class Members' pay and that "class members tend to have better pay outcomes upon return from leave than non-class members who took the same amounts of leave." *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383, 2010 WL 3466370, at *12 (S.D.N.Y. Aug. 31, 2010) ("*Bloomberg I*").  Similarly, Dr. Michael Ward (one of Bloomberg's experts) found "no support for the allegation that Class Members who returned from maternity leave typically experienced a reduction in intended compensation" (Ex. 20 at 15.); to the contrary, he found that "women who take maternity leave fare slightly better, in terms of intended compensation, than other Bloomberg employees on leave for similar amounts of time." *Bloomberg I*, 2010 WL 3466370, at *3.  And Bloomberg's other expert, Dr. John Johnson, likewise found that "the increase in compensation of the Class Members following a maternity leave was at least as high as, if not higher than, the change in compensation of non-maternity leave takers following a leave, when controlling for other factors related to the timing of the leave and various pre-leave characteristics of the employees."  (Ex. 21 at 6.)

EEOC's allegation that Bloomberg "engaged in a pattern or practice of . . . demot[ing]" Class Members in terms of the "number of directly reporting employees" was also exposed as false. *Bloomberg III*, 778 F. Supp. 2d at 462.

F.      The Court Excludes Both Of EEOC's Proffered Experts.

Neither of EEOC's two proffered experts met *Daubert*'s requirements for admissibility,

based in part on EEOC's unreasonable conduct, resulting in an August 31, 2010 order excluding

their testimony. *Bloomberg I*, 2010 WL 3466370, at *17-18. The Court concluded that Dr.

Lanier missed the mark because he failed to compare Class Members to other leave takers. *Id.* at

*12. The Court also observed that Dr. Lanier's conclusion that Bloomberg discriminated against

Class Members in terms of compensation was supported "[o]nly by engaging in an atypical

methodology" that was "unsupported by any professional literature or other source that would

suggest his methodology is recognized by other statisticians." *Id.* at *12.

Likewise, the Court excluded Dr. Borgida's testimony because he (i) relied on a biased

selection of material "fed to him by the EEOC," (ii) did not use "any reliable method; rather, the

opinions in the report [were] supported by what appears to be a 'because I said so' explanation,"

and (ii) improperly "reject[ed] testimony that contradicted his opinion." *Id.* at *14–17.

EEOC's conduct in connection with Dr. Borgida's analysis contributed to its exclusion.

EEOC cherry-picked evidence it provided to Dr. Borgida, and provided excerpted, out-of-context

portions of an email chain from the Company's Chairman about Bloomberg's "no-rehire policy"

that EEOC apparently thought supported its case, while excluding the parts that Dr. Borgida later

admitted "would have made him 'reconsider' his conclusion" about the discriminatory effect of

the no-rehire policy.[7] *Id.* at *16. Additionally, EEOC inaccurately asserted that Dr. Borgida did

---

[7]     EEOC provided Dr. Borgida with two emails of a seven-email exchange, which was a gross
misrepresentation of Chairman Peter Grauer's views on the "no rehire policy." In the excerpt
EEOC provided to Dr. Borgida, an HR Representative asked Mr. Grauer for his thoughts on
revising Bloomberg's employee manual to remove "'rais[e] a family' as an exception to the
no rehire policy," to which Mr. Grauer responded, "Was it in before? I am inclined to take it
out." (Ex. 22 at 20-21; Ex. 23 at BLP-0189254.) In the ensuing exchange, however, Mr.
Grauer explained that "if [that exception] has been there for years, I would be inclined to

not make credibility determinations in reviewing sworn deposition testimony. (ECF No. 144 at 5.) However, this Court properly determined that Dr. Borgida improperly "engaged in credibility determinations" and "ignore[d] completely . . . 'disconforming' examples in his report," which "troubled" the Court. *Bloomberg I*, 2010 WL 3466370, at *17.

> G.    The Court Dismisses Many Claims On Statute of Limitations Grounds.

In April 2010, Bloomberg moved for summary judgment on claims that were subject to Title VII's statute of limitations. The Court granted the motion in October 2010. *Bloomberg II*, 751 F. Supp. 2d. at 643-50. As a result, all claims of 13 Claimants, and 69 claims of another 32 Claimants were dismissed. (ECF No. 177.) Despite the Court's unambiguous order dismissing time-barred claims, EEOC refused to acknowledge the plain import of the Court's ruling. (Ex. 12.)

Although EEOC identified 90 Claimants at one time, it withdrew 12 during discovery (Golden Decl. ¶¶ 30, 31.), and with the dismissal of another 13, EEOC was left with 65 Claimants.

> H.    EEOC Drops More Claims And All Remaining Individual Claims Are Dismissed.

After the Court dismissed EEOC's pattern-or-practice claim in August 2011, Bloomberg indicated that it would move for summary judgment on EEOC's individual claims. Consequently, the Court instructed EEOC to inform Bloomberg of the individual claims it was asserting so that Bloomberg could focus its motion papers accordingly. (ECF No. 207.) Only then did the EEOC concede that the claims of 27 more Claimants were insupportable and dropped them wholesale. (ECF No. 209.) Even as to the 32 remaining non-intervening

---

leave it in." (Ex. 23 at BLP-0189254.) Moreover, after he learned that Bloomberg had in fact rehired a number of women who had left to raise a family, he affirmed his decision to "leave it in." (Ex. 23 at BLP-0189254.)

Claimants, EEOC abandoned scores of their particular claims.  (*Id.*)  And, after Bloomberg briefed all of the remaining individual claims identified by EEOC, EEOC explicitly abandoned 20 additional claims and implicitly abandoned 42 others by not presenting any evidence to support them.  (Golden Decl. ¶¶ 38, 39.)

The remainder of EEOC's claims were dismissed, and its case was over, when the Court granted summary judgment on the individual Claimants' section 706 claims.  The Court dismissed all of those claims (other than those filed separately by the Plaintiff-Intervenors) due to EEOC's failure to satisfy its pre-suit requirements with respect to them.  *Bloomberg IV*, 967 F. Supp. 2d at 816.  In doing so, the Court found that EEOC "completely abdicate[d] its role in the administrative process."  *Id.*  The Court also recognized Bloomberg as the "prevailing party" under Title VII's fee-shifting provision.  *Id.*

## ARGUMENT

### I.     The *Christiansburg* Standard

Under Title VII's fee-shifting provision, a prevailing defendant is entitled to attorneys' fees when the plaintiff's claim was "frivolous, unreasonable, or groundless, or [when] the plaintiff continued to litigate after it clearly became so."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).  This standard is "objective rather than subjective."  *Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 940 (2d Cir. 1989).  Thus, to recover fees, the defendant need not show that the plaintiff acted in bad faith, although such a showing provides "an even stronger basis for charging him with the attorney's fees incurred by the defense."  *Christiansburg*, 434 U.S. at 421–22.

Congress enacted Title VII's fee-shifting provision, in part, to "protect defendants from burdensome litigation having no legal or factual basis."  *Christiansburg*, 434 U.S. at 420.  That protection takes on special significance when the plaintiff is the federal government, because

"[t]he United States and its agencies with superior time, money and manpower should not be able to subject defendants, even corporate defendants, to unnecessary and wasteful depletion of resources in order to pursue an untenable position." *Detroit-Macomb*, Nos. 91-1088, 91-1278, 1992 U.S. App. LEXIS 647, at *13; *see also EEOC v. W. Customer Mgmt. Grp., LLC*, No. 10-cv-378, 2014 U.S. Dist. LEXIS 125129, at *18 (N.D. Fla. July 28, 2014) ("The court also is aware, however, of the impact baseless lawsuits have on employers and businesses, particularly when they are backed by the full force, and seemingly unlimited purse, of the government."), *modified by* 2014 U.S. Dist. LEXIS 125126 (N.D. Fla. Sept. 8, 2014).  Moreover, even if the defendant prevails years later, the federal government's charging it with civil rights violations can cause substantial reputational harm.

Consequently, under *Christiansburg*, "there is a significant distinction in how the Court can and does view the reasonableness of the EEOC's litigation efforts compared with those of a less sophisticated litigant, while the standard of frivolity remains unchanged." *EEOC v. Eagle Quick Stop*, No. 05-cv-2074, 2007 WL 4268778, at *6 (S.D. Miss. Nov. 30, 2007); *accord Christiansburg*, 434 U.S. at 422 n.20 ("a district court may consider distinctions between the Commission and private plaintiffs in determining the reasonableness of the Commission's litigation efforts").  As this Court explained in *EEOC v. Ipco Hospital Supply Co.*, "where an official agency decides to inject the power of government into a dispute between private persons, such agency should at least satisfy itself that the claim it is supporting is *bona fide.*"  565 F. Supp. 134, 135 (S.D.N.Y. 1983).

Here, EEOC acted unreasonably throughout this case.  First, it filed a complaint with demonstrably false accusations that violated Title VII.  Then, EEOC added a "class" retaliation claim without satisfying its pre-suit duties to conciliate.  To make matters worse, EEOC

improperly used discovery "'as a fishing expedition' to uncover more violations," *EEOC v. Target Corp.*, No. 02-C-146, 2007 WL 1461298, at *3 (E.D. Wis. May 16, 2007) (quoting *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996)), and sponsored misleading and inadmissible expert testimony.  Finally, EEOC unreasonably continued to litigate its claims long after it became apparent that they were unsupported and unreasonable.  Therefore, and as discussed more fully below, Bloomberg is entitled to a fee award.

**II.      Bloomberg Is Entitled To Attorneys' Fees Because EEOC's Conduct Was Unreasonable At Every Stage Of The Litigation.**

        A.      EEOC Filed A Complaint With Unsupported and False Accusations.

        EEOC's complaints made false accusations about a nonexistent "pattern or practice" of pay cuts and demotions for which it had no evidence, and which never occurred.  As Bloomberg proved, those accusations were demonstrably false at the time EEOC filed the complaint and they remained so throughout the entire case.  Indeed, this Court found that Bloomberg "prove[d] that it did not engage in a pattern or practice of discrimination as alleged by the EEOC." *Bloomberg III*, 778 F. Supp. 2d at 484.  Rather, "Class Members were paid well, received increases in compensation (even after taking maternity leave), were promoted, and the like, even after their pregnancies."  *Id*. at 478.

        EEOC's filing of three pleadings with demonstrably false accusations of systemic civil rights violations is unreasonable under *Christiansburg*.  "It is indeed deplorable that attorneys employed by the government, who should be knowledgeable in Title VII matters, apparently could not recognize this as a meritless case."  *EEOC v. Shoney's, Inc.*, 542 F. Supp. 332, 338 (N.D. Ala. 1982).  This is particularly so because EEOC, unlike private parties, is "granted broad administrative authority to conduct extensive pre-litigation discovery precisely so that it can ably determine how the agency's resources can best be utilized to fight the scourge of unlawful

11

discrimination." *EEOC v. E.J. Sacco, Inc.*, 102 F. Supp. 2d 413, 419 (E.D. Mich. 2000); *see* 42 U.S.C. §§ 2000e-8, 2000e-9 (2013) (EEOC investigative authority); *EEOC v. United Parcel Serv.*, 587 F.3d 136 (2d Cir. 2009) (describing EEOC's very broad pre-suit subpoena power).

Moreover, unlike private litigants, EEOC has two in-house services that enable it to analyze data—(i) the Office of Research, Information, and Planning and (ii) Research and Analytic Services.[8]  EEOC could have used either of these services to determine whether any pattern or practice of pay cuts or demotions occurred.  Indeed, Title VII *requires* the EEOC to investigate such claims before it files suit and makes such allegations.  42 U.S.C. § 2000e-5(b) (2013); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355 (1977).  Therefore, there is no excuse for EEOC's demonstrably false allegations, and it should foot the bill for the consequences of such unreasonable misconduct.  *See EEOC v. Propak Logistics*, 746 F.3d 145, 154 (4th Cir. 2014) (affirming fee award where "the EEOC acted unreasonably in initiating this litigation"); *EEOC v. Bellemar Parts Indus., Inc.*, 868 F.2d 199, 200 (6th Cir. 1989) (affirming fee award where "EEOC did not bother to properly consider the facts presented to it before forging ahead and hailing [defendant] into court"); *EEOC v. CRST Van Expedited, Inc.*, No. 07-cv-95, 2013 WL 3984478, at *13 (N.D. Iowa Aug. 01, 2013) (EEOC's claims unreasonable under *Christiansburg* where supported by "little more than . . . bald assertions"), *appeal argued*, No. 13-3159 (8th Cir. Sept. 11, 2014); *E.J. Sacco, Inc.*, 102 F. Supp. 2d at 419 (awarding fees because "[a]t no point did the EEOC ever have before it *evidence* of discrimination") (emphasis in original).

---

[8]     *See* http://www.eeoc.gov/eeoc/litigation/manual/4-1-c_services_orip.html (describing Office of Research, Information and Planning); http://www.eeoc.gov/eeoc/litigation/manual/4-1-b_services_ras.cfm (describing Research and Analytic Services).

Furthermore, the fact that, after years of discovery, EEOC had no evidence to establish even a *prima facie* case demonstrates that it was unreasonable to sue in the first place. *See Quintana v. Jenne*, 414 F.3d 1306, 1310 (11th Cir. 2005) (upholding fee award based solely on plaintiff's failure to state a *prima facie* case).[9]  And the fact that Bloomberg affirmatively *disproved* EEOC's allegations sets this apart from a garden variety case in which the plaintiff's proof is ultimately found insufficient. *See Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1027 (2d Cir. 1979) (upholding fee award where defendant's evidence of non-discrimination was "uncontradicted").

B.   EEOC Refused To Comply With Its Pre-Suit Obligations Regarding Its Individual and Retaliation Claims.

EEOC's complaint not only contained demonstrably false and fabricated allegations, but it also violated Title VII.  Indeed, this Court found that EEOC could not litigate its class retaliation claim or its Section 706 individual discrimination claims because, in both instances, EEOC failed to follow Title VII's pre-suit requirements before filing the complaint. *Bloomberg II*, 751 F. Supp. 2d at 642–43*; Bloomberg IV*, 967 F. Supp. 2d at 816. The Court's findings in this regard demonstrate that EEOC's conduct was unreasonable.

With respect to the classwide retaliation claim, the Court found, for example, that EEOC "refused to offer any additional information about [the] determinations" that led it to request a "grand total of over $41 million in monetary demands" and that EEOC "abandoned its role as a

---

[9]   To be sure, a plaintiff's inability to establish a *prima facie* case does not automatically entitle a defendant to attorney's fees, but it is a key factor the Second Circuit considers when applying *Christiansburg*.  *Compare Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 50 (2d Cir. 2012) (reversing a denial of attorney's fees where the plaintiff was unable to make out a *prima facie* case and where her inability to do so should have been apparent) *with Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Cnty. of Nassau*, 96 F.3d 644, 652 (2d Cir. 1996) (reversing an award of fees where the plaintiff established a *prima facie* case and where its evidence, if credited, was sufficient to prevail).

neutral investigator" by seeking to "coerce a settlement" with an inflexible "take-it-or-leave-it demand." *Bloomberg II*, 751 F. Supp. 2d at 641–43 (citations omitted).

Similarly, with respect to the individual discrimination claims, the Court found, for example, that "EEOC completely abdicate[d] its role in the administrative process" by: (i) "refus[ing] to disclose to [Bloomberg] the identity of any potential class members during the course of its investigation or conciliation efforts or even engage in a discussion of any individual claims it might later bring on behalf of class members;" (ii) not investigating or making a reasonable cause determination with respect to any of the individual claims prior to filing suit; and (iii) "spurn[ing]" Bloomberg's "efforts to conciliate" any of the individual claims other than those of the Charging Parties. *Bloomberg IV*, 967 F. Supp. 2d at 813, 815, 816.

These blatant Title VII violations further highlight the extent of EEOC's unreasonable (at best) prosecution of this case. Courts routinely award fees to defendants in such circumstances. For example, in *EEOC v. Asplundh Tree Expert Co.*, the Court affirmed dismissal and a fee award because EEOC did not conduct a good faith conciliation process. 340 F.3d 1256, 1260 (11th Cir. 2003). The Court found that "it cannot be said that EEOC acted in good faith" where "its conduct smack[ed] more of coercion than of conciliation." *Id.* (internal quotations omitted). Likewise, in *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982), the Court affirmed a fee award because EEOC failed to fulfill pre-suit conciliation obligations. *See also CRST Van Expedited*, 2013 WL 3984478, at *14 (fees awarded because EEOC's "failure to exhaust Title VII's administrative remedies was unreasonable"); *EEOC v. Global Horizons, Inc.*, 940 F. Supp. 2d 1316, 1325-26 (E.D. Wash. 2013) ("[A] failure by the EEOC to satisfy its statutory notice, investigation, reasonable-cause determination, and conciliation requirements exposes the EEOC to an award of reasonable attorney's fees and costs against it."); *EEOC v. Am. Fed'n of Teachers,*

*Local 571*, 761 F. Supp. 536, 542 n.8 (N.D. Ill. 1991) (awarding fees because defendant "won a dispositive motion against the EEOC and established that the EEOC had no authority to file suit against it in the first place.").

      C.      <u>EEOC Improperly Used Discovery To Identify Claimants.</u>

      Armed with a demonstrably false complaint filed in violation of Title VII, EEOC launched a campaign to recruit Claimants, apparently as part of an effort to pressure Bloomberg to settle.  In many cases, EEOC did not even meet Claimants until immediately before their depositions (Ex. 9.) and, by skipping the pre-suit process, EEOC never provided Bloomberg an opportunity to respond to any allegations about those Claimants or to avoid unnecessary litigation through conciliation.  This unlawful "shoot first, ask questions later" approach helped EEOC recruit 90 Claimants over the course of the case, leading to two years of Claimant-specific discovery.

      Much of that discovery focused on claims that EEOC ended up not pursuing.  For starters, in *Bloomberg II*, this Court dismissed 13 Claimants in their entirety on limitations grounds, as well as 69 specific allegations from 32 other Claimants (ECF No. 177; Golden Decl. ¶ 35)—but only after Bloomberg had produced reams of documents and electronic data about them, deposed all 45 of them, and defended their managers' depositions, all based on the full scope of EEOC's time-barred allegations.  (Golden Decl. ¶ 32.)  Bloomberg also produced substantial documents and electronic data concerning the 12 Claimants whom EEOC dropped before they reached the deposition stage.  (*Id.* ¶ 31.)

      Then, after this Court dismissed the pattern-or-practice claim, EEOC dropped 27 more Claimants in their entirety and abandoned 65 specific allegations from 25 others, effectively conceding that it could not meaningfully argue that those claims had any merit.  (ECF No. 209; Golden Decl. ¶ 36.)  Of course, by then Bloomberg had already deposed all of those Claimants,

produced other discovery about them, and defended their managers' depositions.  (Golden Decl. ¶¶ 33-34.)

Finally, after Bloomberg moved for summary judgment on the remaining 32 Claimants, EEOC dropped an additional 62 specific allegations that it had informed Bloomberg, right before briefing, that it still intended to pursue.  (Golden Decl. ¶¶ 38-40.)  Thus, Bloomberg briefed those claims unnecessarily.

In short, because EEOC failed to investigate any of these individual claims prior to pursuing them, Bloomberg was forced to defend itself against hundreds of frivolous allegations. EEOC's abusive misconduct should result in an award of fees against it.  *See EEOC v. Original Honeybaked Ham Co. of Ga.*, No. 11-cv-2560, 2013 U.S. Dist. LEXIS 26887, at *4 (D. Colo. Feb. 27, 2013) (ordering EEOC to pay fees because its "flip-flopping" "required the Defendant to pay its attorneys more than should have been required and has multiplied and delayed these proceedings unnecessarily."); *EEOC v. Datapoint Corp.*, 457 F. Supp. 62, 66 (W.D. Tex. 1978) (*Christiansburg* standard met because, among other things, EEOC abandoned most of its claims right before trial).

> D.     EEOC Misled The Court.

Fees are also appropriate here because EEOC misled both its own expert and the Court, a "course of conduct which cannot be tolerated, particularly from a government agency charged with protecting civil rights."  *Shoney's*, 542 F. Supp. at 336.  To prepare expert testimony for the Court, EEOC "fed" Dr. Borgida one-sided evidence, even going so far as to provide an incomplete version of an email from Bloomberg's Chairman that gave the false impression that he opposed a "family reasons" exception to the Company's "no-rehire" policy, when the complete email chain showed that he said no such thing.  (Ex. 23 at BLP-0189254); *Bloomberg I*, 2010 WL 3466370 at *14-16.  When presented with the entire email, Dr. Borgida admitted that

"it would have made him 'reconsider' his conclusion" about the discriminatory effect of the "no-rehire policy." *Id.* at *16. Furthermore, EEOC told the Court that Dr. Borgida did not make credibility determinations even though he did so, which the Court found "troubling." *Id.*

EEOC likewise mischaracterized its evidence when it sought to avoid summary judgment on its pattern-or-practice claim. This Court properly found that "[s]ome evidence the EEOC offers simply does not support the EEOC's assertions" and that "other evidence shows that the individual's characterization of what occurred contradicts the EEOC's characterization." *Bloomberg III*, 778 F. Supp. 2d at 474. The Court then noted several examples; one suffices here: EEOC claimed that a class member suffered a demotion, but in fact, her pay increased from $173,135 to $463,980, and she "said that Bloomberg 'has been very good to me,' that she 'had an amazing experience there,' and that she has 'had excellent experiences as a working mother at Bloomberg.'" *Id.* at 475 (citation omitted); *accord id.* at 473–78.

E.   EEOC Continued To Litigate After It Should Have Become Obvious To It That Its Claims Were Unreasonable.

Fees are also appropriate here because EEOC continued to litigate both its section 707 pattern-or-practice claim and its section 706 individual claims after it became obvious that they were unreasonable. With respect to its pattern-or-practice claim, after the Court's *Daubert* decision excluded EEOC's statistical analysis, any reasonable litigant would have realized that it would be unable to establish a *prima facie* case.[10] That is because "statistical evidence is critical to the success of a pattern-or-practice disparate treatment claim." *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 691 F. Supp. 2d 372, 388-89 (S.D.N.Y. 2009). Here, EEOC had

---

[10]   Bloomberg maintains that EEOC should have realized before it filed the complaint that it could not establish a *prima facie* case and that it would not have been able to do so even if the Court had not disqualified EEOC's experts. However, without expert evidence, it is beyond peradventure that EEOC's pattern-or-practice claim was doomed.

*no statistical or comparative evidence whatsoever* from which a fact finder could conclude "that the employee in the protected class was treated differently because she was in that class." *Bloomberg III*, 778 F. Supp. 2d at 473.  To the contrary, the admissible statistical evidence proved that Bloomberg paid Class Members *more favorably* than similarly situated employees. No court has ever found any pattern or practice when the statistics showed that a defendant *favored* the alleged victims, and EEOC knew or should have known that these facts would preclude it from establishing a *prima facie* case of classwide discrimination.

Similarly, EEOC continued to press frivolous individual claims well after it should have conceded that they were meritless.  Indeed, EEOC's cavalier approach to the case, and its indifference to the burden being imposed on Bloomberg, is aptly illustrated by its response to the Court's directive, after the pattern-or-practice claims were dismissed, to identify the individual claims it intended to pursue, and as to which Bloomberg would be moving for summary judgment.  One would have expected EEOC to assess carefully those claims before committing to their continued pursuit.  Indeed, as noted above, knowing that the day of reckoning was finally at hand, in response to the Court's direction EEOC abandoned another 27 Claimants—but only after forcing Bloomberg to take discovery as to them, and trumpeting those Claimants as supposedly indicative of Company-wide civil rights violations.  But EEOC's recklessness did not stop there:  It affirmatively represented to Bloomberg that it intended to prove 62 claims that it then abandoned after forcing Bloomberg to brief them.[11]  (Golden Decl. ¶¶ 38-40.)

In continuing to litigate both the pattern-or-practice claims and the individual claims, EEOC violated its "duty to cease enforcement attempts after learning that an action lacks merit."

---

[11]   The claims EEOC did pursue were also unreasonable, as shown by Bloomberg's briefing on the individual Claimants.  (ECF Nos. 219–321, 441–538.)

*EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 473 (5th Cir. 2009). This underscores the propriety of a fee award. *See Peoplemark*, 732 F.3d at 592 (affirming fee award against EEOC for the period after it became "unreasonable to continue to litigate the Commission's pleaded claim because [discovery revealed] the claim was based on a companywide policy that did not exist"); *EEOC v. TriCore Reference Labs.*, No. 09-cv-956, 2011 U.S. Dist. LEXIS 158175, at *8 (D.N.M. Apr. 27, 2011) (EEOC's suit was frivolous and unreasonable because it should have stopped litigating once it realized it could not establish a *prima facie* case for one claim), *aff'd*, 493 F. App'x 955 (10th Cir. 2012); *Eagle Quick Stop*, 2007 WL 4268778, at *6 (EEOC liable for fees from point where it "should have known that it could not establish a *prima facie* . . . case against [defendant]"); *EEOC v. Jordan Graphics Inc.*, 769 F. Supp. 1357, 1385 (W.D.N.C. 1991) (fees awarded from close of discovery because "Plaintiffs should have been aware of the frivolous nature of the action shortly after the discovery period had ended").

*     *     *

EEOC's game plan all along could not have been clearer: get a suit filed, and then use powers unique to the federal government (including an inflammatory press release that remains on EEOC's web site to this day), overbroad discovery, and the lack of any class certification requirement, *Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318 (1980), to add as many Claimants as possible, maximizing the pressure to settle. Many companies would have capitulated; "[t]he government is a wealthy litigant and can, if it so chooses, make litigation so expensive as to prohibit the defense of legal rights." *Datapoint*, 457 F. Supp. at 65 n.10. EEOC should be discouraged from engaging in such conduct, and from squandering "precious taxpayer resources where no legal wrong has been done by the targeted defendant." *E.J. Sacco*, 102 F. Supp. 2d at 420.

19

## CONCLUSION

"The EEOC must vigorously enforce [Title VII] and ensure its protections to affected workers, but in doing so, the EEOC owes duties to employers as well: a duty reasonably to investigate charges, a duty to conciliate in good faith, and a duty to cease enforcement attempts after learning that an action lacks merit." *Agro Distrib.*, 555 F.3d at 473.  As in *Agro*, here "the EEOC abandoned its duties and pursued a groundless action with exorbitant demands."  *Id.* Therefore, and for the reasons stated above, Bloomberg respectfully submits that the Court should find that Bloomberg is entitled to a fee award in connection with defending EEOC's claims.

Dated: December 12, 2014
       New York, New York

JONES DAY                                WILLKIE FARR & GALLAGHER LLP

Eric S. Dreiband                         By: /s/ Thomas H. Golden
51 Louisiana Avenue, N.W.                    Thomas H. Golden (tgolden@willkie.com)
Washington, DC 20001-2113                    (A Member of the Firm)
(202) 879-3720                               787 Seventh Avenue
                                             New York, New York 10019
                                             (212) 728-8000

Attorneys for Defendant Bloomberg L.P.

*13202407*

20