UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                          :

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,                                 :

                                       07-CV-8383 (LAP/HP)

                Plaintiff,             :

                v.                    :

BLOOMBERG L.P.,                   :

                Defendant.         :

------------------------------------------------------------ x
                                            :

JILL PATRICOT, TANYS LANCASTER,    :
JANET LOURES, MONICA PRESTIA,
MARINA KUSHNIR and MARIA        :
MANDALAKIS,

                                            :

                Plaintiff-Intervenors,  :

                v.                    :

BLOOMBERG L.P.,                   :

                Defendant.         :
------------------------------------------------------------ x

## EEOC'S MEMORANDUM IN OPPOSITION
## TO BLOOMBERG L.P.'S MOTION FOR AN ORDER
## DECLARING ITS ENTITLEMENT TO ATTORNEY'S FEES

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ..................................................................................................................3

ARGUMENT ......................................................................................................................4

I.      The Legal Standard for Awarding Fees to a Defendant Under Title VII Is
        Stringent ...................................................................................................................4

II.     Bloomberg Is Not Entitled to Attorney's Fees ........................................................6

        A.      Prevailing on Procedural Prerequisites Is Not Prevailing on the Merits ...................6

        B.      EEOC's Position That It Satisfied Its Procedural Prerequisites to Suit
                Was Not Frivolous, Groundless, or Unreasonable.........................................9

                1.   Conciliation Efforts For The Retaliation Claim...................................9

                2.   Investigation and Conciliation Efforts for the Class Discrimination
                     Claim.........................................................................................................12

        C.      The Pattern-or-Practice Claim of Pregnancy Discrimination Was Not
                Frivolous, Groundless, or Unreasonable Because It Was Supported By
                Evidence That, If Credited, Would Have Supported the Claim ..............................15

        D.      The Other Matters Cited by Bloomberg Do Not Provide a Basis for Fees..............19

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

In re 60 East 80th Street Equities, Inc., 218 F.3d 109 (2d Cir. 2000)..............................5

American Federation of State, County and Municipal Employees, AFL-CIO
 (AFSCME) v. County of Nassau, 799 F. Supp. 1370 (E.D.N.Y. 1992)...........................18

American Federation of State, County and Municipal Employees, AFL-CIO
 (AFSCME) v. County of Nassau, 96 F.3d 644 (2d Cir. 1996) .............................17, 18, 19

Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277 (2d Cir. 2011)..........................10

Brentwood Academy v. Tenn. Secondary Sch. Athletic Association, 531 U.S.
 288 (2001).........................................................................................................6

Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978) .................................4, 5, 14

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)..........................18

EEOC v. America National Bank, 652 F.2d 1176 (4th Cir. 1981)................................13

EEOC v. CRST Van Expedited, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009).........................8

EEOC v. CRST Van Expedited, 679 F.3d 657 (8th Cir. 2012) ....................................14

EEOC v. CRST Van Expedited, —F.3d —, 2014 WL 7238024 (8th Cir. Dec.
 22, 2014) .........................................................................................................8

EEOC v. David Lerner Associates, Inc., No. 3:05-cv-292, 2005 WL 2850080
 (D. Conn. Oct. 27, 2005)...................................................................................11

EEOC v. Elmer W. Davis, Inc., No. 07-cv-6434, 2008 WL 4415177 (W.D.N.Y.
 Sep. 24, 2008) ...............................................................................................11

EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529 (2d Cir. 1996) .............................9, 11

EEOC v. Keco Industrial, Inc., 748 F.2d 1097 (6th Cir. 1984) ...................................13

EEOC v. Mach Mining LLC, 738 F.3d 171 (7th Cir. 2013), cert. granted 134 S.
 Ct. 2872 (2014) ...............................................................................................14

EEOC v. Rhone-Poulenc, Inc., 876 F.2d 16 (3d Cir. 1989) .......................................13

EEOC v. Sears, Roebuck & Co., 650 F.2d 14 (2d Cir. 1981) ...................................................9, 12

EEOC v. Thomas Dodge Corp., 524 F. Supp. 2d 227 (E.D.N.Y. 2007) ......................................13

EEOC v. UPS, 94 F.3d 314 (7th Cir. 1996)...............................................................................13

EEOC v. UPS, 860 F.2d 372 (10th Cir. 1988)..........................................................................13

Elmer W. Davis, 2008 WL 4415177 (W.D.N.Y. Sep. 24, 2008) .................................................11

Farrar v. Hobby, 506 U.S. 103 (1992) .......................................................................................6

Fluker v. County of Kankakee, 741 F.3d 787 (7th Cir. 2013)........................................................7

Gerena-Valentin v. Kock, 739 F.2d 755 (2d Cir. 1984) .............................................................17

Greenberg v. Hilston Intern. Co., 870 F.2d 926 (2d Cir. 1989)...................................................19

Hanrahan v. Hampton, 446 U.S. 754 (1980) ...............................................................................6

Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir.1990)................................................20

Holcombe v. U.S. Airways, Inc., 369 Fed. App'x 424 (4th Cir. 2010) ..........................................7

Hughes v. Rowe, 449 U.S. 5 (1980) ...........................................................................................6

International Brotherhood of Teamsters v. U.S., 431 U.S. 324 (1977) .........................................19

Jones v. U.P.S., Inc., 502 F.3d 1176 (10th Cir. 2007) ..................................................................7

LeBlanc-Sternberg v. Fletcher, 143 F.3d 765 (2d Cir. 1998)...........................................5, 12, 14

Marquart v. Lodge 837, International Association of Machinists & Aerospace
   Workers, 26 F.3d 842 (8th Cir.1994)....................................................................................6

Mathirampuzha v. Potter, 548 F.3d 70 (2d Cir. 2008)..................................................................7

Meeks v. Computer Associates Intern., 15 F.3d 1013 (11th Cir. 1994) .......................................10

Reiter v. Metropolitan Transport Authority of N.Y., 2003 WL 22271223
   (S.D.N.Y. Sep. 30, 2003)...................................................................................................10

Rester v. Stephens Media, LLC, 739 F.3d 1127 (8th Cir. 2014) ....................................................7

Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012).........................................................12, 13

Sista v. CDC Ixis North America, Inc., 445 F.3d 161 (2d Cir. 2006) ............................................6

Tancredi v. Metropolitan Life Insurance, 378 F.3d 220 (2d Cir. 2004) ..............................5, 6, 14

Thorson v. Epps, 701 F.3d 444 (5th Cir. 2012) ............................................................................7

U.S. v. City of New York, 717 F.3d 72 (2d Cir. 2013) ........................................................19, 20

## STATUTES

42 U.S.C. § 2000e-5(f)(1) ............................................................................................................9

# INTRODUCTION

The dismissal of EEOC's claims in this suit largely rested on two rulings:  (a) EEOC's statistical analysis did not control adequately for a factor that Bloomberg admitted it does not actually use in making employment decisions; and (b) EEOC's pre-suit, administrative efforts did not comport with an interpretation of Title VII's pre-suit obligations first articulated by an Iowa federal district court in 2009 — two years after this case was filed.  Bloomberg's request for attorney's fees on these claims relies on precisely the sort of hindsight logic the Supreme Court has prohibited in Title VII fee determinations.  EEOC's positions on these matters, while ultimately not accepted by this Court, plainly have a basis in law and fact.  They were not frivolous, unreasonable, or without foundation.

Bloomberg's memorandum overlooks other key principles of law that govern its application for fees.  First, the Supreme Court has stated that in order to obtain attorney's fees under Title VII, a party must not simply prevail, but must prevail *on the merits*.  Since a victory on procedural prerequisites grounds is not a victory on the merits of the underlying claims, no extensive analysis is required to conclude that Bloomberg is not eligible for fees with respect to the retaliation claim or the discrimination claim alleging discrimination against a class of individuals, both of which were dismissed on non-merits grounds.

Second, even if the rejection of claims on non-merits grounds could be the basis for attorney's fees, EEOC's position had a basis in law and fact.  The Second Circuit has made clear that a position backed by persuasive authority (and not foreclosed by binding authority) is not frivolous.  EEOC's position that claimants need not be individually identified during pre-suit administrative proceedings is supported by the decisions of five federal courts of appeals and numerous district courts in this circuit and elsewhere — and no decision of the Second Circuit is

1

to the contrary.  Likewise, EEOC presented evidence of its efforts to conciliate its retaliation claim, as well as evidence that Bloomberg had no genuine interest in conciliation and never had any intention of settling even with respect to the individual claimants it was familiar with.  The Court found those efforts to be insufficient, but the issue was closely contested, and EEOC's position was reasonably supported with record evidence and with citations to legal authority.

Moreover, it is beyond dispute that the scope of judicial review of conciliation has been a matter of considerable debate in courts nationwide in recent years.  Indeed, the issue is presently before the Supreme Court.  Though this Court disagreed with EEOC's interpretation, given the unsettled nature of this area of law, EEOC's position cannot fairly be called frivolous.

The only claim by EEOC that was actually decided on the merits in this case was the pattern-or-practice claim of pregnancy discrimination, and Bloomberg cannot satisfy the Christiansburg standard with respect to that claim, either.  The Court granted summary judgment largely because EEOC lacked statistical evidence.  EEOC, however, had attempted to introduce statistical evidence of a disparity in wages which, if credited, would have supported the pattern-or-practice claim of pregnancy discrimination.  Under controlling Second Circuit authority, this is enough to preclude fees.  Moreover, although the Court ultimately rejected that statistical evidence as methodologically flawed and unreliable, it only did so because the regression analysis did not control adequately for employee leave history, which Bloomberg's experts used as a proxy for ability or inability.  However, EEOC's expert did account for employee ability: He controlled for, among other things, employee performance ratings — *i.e.*, the company's own assessment of employee ability.  *Both parties'* experts concluded that a statistically significant disparity exists between class members and others *even after applying that control.*  Bloomberg's experts eliminated that disparity — or at least its statistical significance — only by additionally

controlling for leave history.  Since Bloomberg admits that it does not consider an employee's history of being on leave in making employment decisions and setting compensation, however, it was not unreasonable for EEOC's expert to omit that variable from his initial analysis.

Moreover, EEOC also offered anecdotal evidence of pregnancy bias to support the pattern-or-practice claim, including evidence of bias among high-level managers at Bloomberg. Although the Court found that evidence, by itself, to be insufficient, Bloomberg cites no controlling authority that precludes a pattern-or-practice claim in the absence of statistical evidence.  When some of this anecdotal evidence was later offered to prove discrimination against individual claimants, the Court observed that certain of the claims "may be meritorious."

Despite its caustic rhetoric, Bloomberg's memorandum does not meet the stringent standard for awarding a defendant attorney's fees.  For these reasons, and as explained more fully below, EEOC respectfully requests that Bloomberg's application for fees be denied.

## **BACKGROUND**

EEOC brought claims of pregnancy discrimination and retaliation, all of which Bloomberg moved in 2010 to dismiss with prejudice in a motion for summary judgment that challenged EEOC's pre-suit administrative efforts.  See ECF No. 108 (requesting order "granting summary judgment ... and dismissing Plaintiff's discrimination claims under § 706 and § 707 of Title VII").  The Court granted the motion with respect to the retaliation claim, concluding that EEOC "failed to meet its duty to conciliate."  ECF No. 168 at 32.  With respect to the discrimination claims, the Court stated that EEOC's "efforts were sufficient to satisfy the conciliation requirement in this context," that "the EEOC made respectable conciliation efforts, but its proposals were, in effect, rebuffed," and that Bloomberg instead "sought to negotiate on a claim-by-claim basis. Its response was, effectively, a refusal of EEOC's invitation to conciliate."

Id. at 21, 23, 25.  The motion was denied with respect to the discrimination claims.

The Court also dismissed certain claims for relief as time-barred.  ECF No. 168, 177.

Thereafter, the Court granted Bloomberg's Daubert motion to exclude EEOC's expert witnesses, including Dr.  Louis Lanier, who had conducted statistical analyses of compensation at Bloomberg.  ECF No. 166.  With this statistical evidence excluded, Bloomberg sought, and the Court granted, summary judgment on "the EEOC's pattern or practice claim."  ECF No. 202 at 64.  In response to the motion, EEOC offered non-statistical, "anecdotal" evidence of company-wide pregnancy bias.  Id. at 10-12.

Thereafter, what remained was a claim alleging pregnancy discrimination against a class of individuals ("class discrimination claim") that required proof on an individual (non-pattern-or-practice) basis.  EEOC voluntarily dismissed parts of that claim.  ECF No. 209.

Finally, Bloomberg moved for summary judgment on the remaining class discrimination claim, and the Court granted that motion on the ground that "the EEOC failed to satisfy its pre-litigation obligations" with respect to the remaining individuals.  ECF No. 557 at 26.

## ARGUMENT

## I.    The Legal Standard for Awarding Fees to a Defendant Under Title VII Is Stringent

Although Bloomberg briefly recites the standard for awarding a defendant fees under Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978), its memorandum fails to fully describe the controlling legal principles that govern — and foreclose — its application for fees.

Unmentioned entirely is the Supreme Court's instruction, set forth in Christiansburg itself, cautioning against precisely the sort of post hoc reasoning that Bloomberg's motion relies upon:  "[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  Christiansburg, 434 U.S. at 421-22.  The

Supreme Court made clear that such "hindsight logic" is not permitted because it "could discourage all but the most airtight claims." Id. at 422.

Indeed, the Supreme Court has made clear that attorney's fees may be awarded to defendants only in very limited circumstances, so as to avoid deterring the future vindication of civil rights claims, Title VII's "highest priority." See id. at 418.  "In order to avoid chilling the initiation and prosecution of meritorious civil rights actions, fees are not to be awarded to a prevailing defendant unless the plaintiff's action was 'frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.'" LeBlanc-Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir. 1998) (quoting Christiansburg, 434 U.S. at 422).

The role of controlling authority in the application of the Christiansburg standard is also not explained in Bloomberg's presentation of the law.  The Second Circuit has made clear that "the determination as to whether ... claims were frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof *in light of the controlling principles of substantive law*." See LeBlanc-Sternberg, 143 F.3d at 770 (emphasis added); accord In re 60 East 80th Street Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000) (affirming award of attorney's fees in bankruptcy case where findings of fact "together with controlling legal authority" showed that litigant's position had no basis in law or fact).

Thus, for example, in the absence of controlling law establishing that a § 1983 plaintiff's allegation of state action was deficient, the Second Circuit held that it was an abuse of discretion to award fees to the prevailing defendant.  See Tancredi v. Metropolitan Life Ins., 378 F.3d 220, 229-30 (2d Cir. 2004).  This was so, the court explained, even though "a majority of courts have not found state action under similar circumstances." Id. at 229 (internal quotation marks omitted).  Pointing to a single district court decision from Maine that supported the plaintiff's

position, the Second Circuit said that this was sufficient to show "some foundation" and defeat the application for fees, because it demonstrated that "debate" on the issue was possible.  See id. The court's ruling was also informed by the fact that what constitutes state action "is a matter of normative judgment, and the criteria lack rigid simplicity."  See id. at 229 (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).  Much the same could be said about the application of the conciliation standard and other issues in this case.

The Supreme Court has described the Christiansburg standard as "stringent."  See Hughes v. Rowe, 449 U.S. 5, 14 (1980).  An unsuccessful claim may in fact be "very weak," but that does not establish that it is frivolous, unreasonable, or without foundation.  See Tancredi, 378 F.3d at 230.  Unsurprisingly, therefore, the Second Circuit has noted that "[i]t is very rare that victorious defendants in civil rights cases will recover attorneys' fees."  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 178 (2d Cir. 2006).

This is not one of the "very rare" cases in which the defendant is entitled to fees.

## II.    Bloomberg Is Not Entitled to Attorney's Fees

### A.    Prevailing on Procedural Prerequisites Is Not Prevailing on the Merits

As a threshold matter, Bloomberg is not entitled to attorney's fees on the retaliation or class discrimination claims because, although it prevailed, it did not prevail *on the merits* of those claims.  This precludes an award of attorney's fees for these claims.

"Congress intended to permit the ... award of counsel fees only when a party has prevailed on the merits."  Hanrahan v. Hampton, 446 U.S. 754, 758 (1980); see also Farrar v. Hobby, 506 U.S. 103, 109 (1992) (same) (quoting Hanrahan); Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers, 26 F.3d 842, 852 (8th Cir. 1994) ("[P]roof that a plaintiff's case is frivolous, unreasonable, or groundless is not possible without a judicial determination of the plaintiff's case on the merits.").

The Court's dismissal of EEOC's retaliation claim was based entirely on the Court's conclusion that the agency "failed to meet its duty to conciliate." ECF No. 168 at 32. The Court likewise dismissed EEOC's class discrimination claim because "the EEOC failed to satisfy its pre-litigation obligations" with respect to that claim. ECF No. 557 at 26.

These resolutions were not decisions on the merits of the underlying claims because administrative prerequisites to suit are not part of the "merits" of claims under Title VII. For example, while there is a "requirement" that an individual Title VII plaintiff file an administrative charge of discrimination prior to suit, the determination of whether the plaintiff has done so is separate from the analysis of the claim "on the merits." See Mathirampuzha v. Potter, 548 F.3d 70, 75, 79 n.8 (2d Cir. 2008) (where defendant waived argument that employee failed to file administrative complaint prior to suit, court would consider claim "on the merits"). Courts regularly distinguish between a determination "on the merits" of a civil rights claim and a determination that the plaintiff failed to exhaust his administrative remedies. See, e.g., Rester v. Stephens Media, LLC, 739 F.3d 1127, 1130 n.2 (8th Cir. 2014) (affirming dismissal of Title VII claims "on the merits" and declining to address "defendants' argument that [plaintiff] failed to exhaust her administrative remedies"); Fluker v. County of Kankakee, 741 F.3d 787, 793-94 (7th Cir. 2013) (§ 1983 case distinguishing between exhaustion and merits); Thorson v. Epps, 701 F.3d 444, 445-46 (5th Cir. 2012) (same); Holcombe v. U.S. Airways, Inc., 369 Fed. App'x 424, 428 (4th Cir. 2010) (EEOC right-to-sue notice is "a procedural requirement" that "does not give rise to the [plaintiff's] ADA claim"); Jones v. U.P.S., Inc., 502 F.3d 1176, 1183, 1195 (10th Cir. 2007) (ADA plaintiff satisfied "prerequisite to suit" of filing of a charge, but summary judgment for defendant affirmed "on the merits").

Indeed, the Court has already acknowledged this distinction in this case. In dismissing

EEOC's class discrimination claim, the Court observed that "certain of the Non-Intervenor claims may be meritorious." ECF No. 557 at 29. Needless to say, it would be illogical to describe a claim as potentially having merit if it had just been dismissed on the merits. Accordingly, the retaliation and class discrimination claims were not resolved on the merits and cannot be the basis for an award of attorney's fees.

This conclusion is reinforced by the Eighth Circuit's reversal of attorney's fees in EEOC v. CRST Van Expedited. In that case, the Court of Appeals for the Eighth Circuit held that "the district court's dismissal of 67 claims for the EEOC's failure to satisfy Title VII's presuit obligations does not constitute a ruling on the merits." EEOC v. CRST Van Expedited, — F.3d —, 2014 WL 7238024, at *10 (8th Cir. Dec. 22, 2014). Accordingly, the court concluded that the defendant could not recover fees based on that non-merits resolution. See id.

That conclusion applies with equal force here. As the Court has observed, the claims in CRST were "dismissed under similar circumstances as those presented here." ECF No. 557 at 27 (citing EEOC v. CRST Van Expedited, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009)). In dismissing the class discrimination claim, the Court expressly "adopt[ed]" the CRST district court's reasoning. See ECF No. 557 at 27 (citing EEOC v. CRST Van Expedited, 2009 WL 2524402 (N.D. Iowa Aug. 13, 2009)).[1]

As in CRST, Bloomberg's victory here was not a victory on the merits of the retaliation or class discrimination claims. Therefore, fees are not available for those claims.[2]

---

[1] Any attempt by Bloomberg to distinguish CRST now should be given no weight. Bloomberg relied so heavily on CRST to support its conciliation arguments in this case that the table of contents of its first conciliation brief records it as appearing passim. See ECF No. 104 at ii.

[2] The Eighth Circuit considers whether a determination was "on the merits" to be part of its analysis of whether the defendant is a "prevailing party." See CRST, 2014 WL 7238024, at *10. Bloomberg may point to that to argue that this issue has already been resolved in this case, because the Court briefly referred to Bloomberg as the "prevailing party" at the end of a

**B.**    **EEOC's Position That It Satisfied Its Procedural Prerequisites to Suit Was Not Frivolous, Groundless, or Unreasonable**

**1.**    **Conciliation Efforts For The Retaliation Claim**

EEOC's position that its efforts to conciliate the retaliation claim satisfied the Second Circuit's conciliation standard was not frivolous, unreasonable, or without foundation.

Title VII authorizes the agency to file suit "[i]f within thirty days after a charge is filed with the Commission ..., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission."  42 U.S.C. § 2000e-5(f)(1).  "EEOC fulfills its duty to conciliate before initiating litigation if it 1) outlines to the employer the reasonable cause for its belief that the employer is in violation of the Act, 2) offers an opportunity for voluntary compliance, and 3) responds in a reasonable and flexible manner to the *reasonable* attitude of the employer."  EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2d Cir. 1996) (emphasis added).  "If the defendant refuses the invitation to conciliate ..., the EEOC need not pursue conciliation and may proceed to litigate the question of the employer's liability for the alleged violations."  Johnson & Higgins, 650 F.2d at 1535.

EEOC had a reasonable basis for arguing that it satisfied the first two prongs of this standard.  Through its letter of determination and conciliation proposal, and by directing Bloomberg to the facts set forth in the various charges, EEOC outlined the reasonable cause for its belief that Bloomberg had engaged in retaliation and offered the company an opportunity for voluntary compliance.  ECF No. 127, Exhs. 36-39 (charges and letters of determination).  EEOC

---

summary judgment order.  ECF No. 557 at 30.  However, that would be an argument about semantics and not substance.  Bloomberg has, of course, "prevailed" in the sense that it got all of EEOC's claims dismissed.  But Bloomberg's entitlement to fees is the issue in this motion, and whether its victory was on the merits is part of that issue, and thus appropriately addressed here. To suggest otherwise would be to say that the Court has already partially resolved Bloomberg's entitlement to fees in a brief remark at the end of an order, without analysis, and without providing the parties an opportunity to be heard on the matter.  That is not so.

made separate monetary proposals for each charging party as well as for a claim fund for other victims.  ECF No. 136 ¶ 235; ECF No. 127, Exh. 42.

There was also a factual foundation for EEOC's argument that it satisfied the third prong of the conciliation standard.  Record evidence showed that EEOC granted Bloomberg extensions of time, conducted an in-person conciliation conference, modified its monetary demands in response to Bloomberg's comments (including withdrawing one claim for front pay and offering to do so for the other[3]), expressed openness to further modifications, and provided Bloomberg repeated opportunities to demonstrate that it genuinely had interest in a resolution by making a monetary offer.  ECF No. 127, Exhs. 42-61; ECF No. 136 ¶¶ 232-259.

There was also a factual basis for the agency's position that it was reasonable to ask Bloomberg to make at least *some* monetary offer in order to proceed further.  Bloomberg's initial reaction to the retaliation charges was to tell EEOC that the company was *not* interested in participating in further administrative proceedings.  ECF No. 127, Exhs. 37-38.  In light of this, EEOC asked in conciliation that Bloomberg make a monetary offer to indicate that it was genuinely interested in conciliating:  EEOC explained that it preferred to see "[i]f we can make progress in regard to monetary relief," and, if so, "we can discuss the other, non-monetary aspects of the Conciliation Agreement...."  ECF No. 127, Exh. 45; ECF No. 136 ¶ 238.

_____

[3] Bloomberg asserts, in passing, that a claim for front pay by a current employee is "frivolous." ECF No. 599 at 2 n.2.  However, Bloomberg offers no analysis of this and does not identify any controlling authority that would foreclose such a claim.  "An award of front pay is an alternative to reinstatement where reinstatement is inappropriate."  Bergerson v. N.Y. State Office of Mental Health, 652 F.3d 277, 287 (2d Cir. 2011) (internal quotation marks omitted).  The lone case Bloomberg cites is an unpublished district court decision involving an employee *who was awarded reinstatement*.  See Reiter v. Metropolitan Transp. Auth. of N.Y., 2003 WL 22271223, *15 (S.D.N.Y. Sep. 30, 2003).  Front pay can be (and has been) awarded to a current employee who has experienced pay discrimination.  See Meeks v. Computer Associates Intern., 15 F.3d 1013, 1016 (11th Cir. 1994) (district court found that plaintiff "continues to suffer wage diminution, as a result of Defendant's pay discrimination, at an amount equal to $5,000 per year" and "awarded [plaintiff] two years front pay differential or $10,000").

Moreover, EEOC's obligation is to respond flexibly only to the "*reasonable* attitude of the employer." See Johnson & Higgins, 91 F.3d at 1534 (emphasis added).  For example, district courts have found that EEOC could reasonably terminate its conciliation efforts after an employer "repeatedly denied any wrongdoing, had instead attacked [the charging party's] credibility, and had indicated that it was not interested in a monetary settlement to any claimant." See EEOC v. Elmer W. Davis, Inc., No. 07-cv-6434, 2008 WL 4415177, at *4 (W.D.N.Y. Sep. 24, 2008); see also EEOC v. David Lerner Assocs., Inc., No. 3:05-cv-292, 2005 WL 2850080, at *2 (D. Conn. Oct. 27, 2005) ("Once [defendant] rejected the EEOC's counter proposal, the EEOC had no further duty at that point to conciliate any further.").

There was evidence that Bloomberg's conduct during conciliation was not reasonable. First, Bloomberg would not offer any relief whatsoever — even for the victims it knew the most about (the charging parties). This provided some foundation to believe that Bloomberg "was not interested in a monetary settlement to any claimant." Elmer W. Davis, 2008 WL 4415177, at *4.

Second, Bloomberg's correspondence misrepresented EEOC's conciliation efforts on a number of occasions.  Bloomberg incorrectly attributed to EEOC the charging parties' additional monetary demands under state and local law — even though EEOC's opening proposal expressly advised the company otherwise.  ECF No. 127, Exh. 41.  Bloomberg also claimed that it lacked any evidence of emotional distress, when in fact the charging parties had provided Bloomberg with extensive medical records.  ECF No. 136 ¶ 246; ECF No. 127, Exh. 47 & Exh. 60 ¶ 3. Relying on a typo in EEOC's original and first amended complaints, Bloomberg also accused the agency of having *already* sued the company for retaliation.  R. 127, Exh. 50.  The Court noted that "neither complaint contained any factual allegations of retaliation whatsoever" and concluded that Bloomberg's position "vault[ed] form over substance."  ECF No. 168 at 13-14.

On another occasion, Bloomberg's correspondence described EEOC's proposal as a "take-it-or-leave-it" demand, ECF No. 127, Exh. 54 at 5, even though EEOC had previously stated: "you are free to respond with a counter-offer that you believe is reasonable," ECF No. 127, Exh. 51.

Third, there was evidence that Bloomberg had no genuine interest in conciliation. During the parties' in-person conciliation meeting, when EEOC's representatives briefly stepped out of the room, Bloomberg's attorney openly stated to charging parties' counsel that Bloomberg had no intention of offering any monetary relief or settling. ECF No. 127, Exh. 60 ¶ 11 ("Mr. Dreiband then said words to the effect that there was no chance that Bloomberg was going to offer any money to settle the charges, and that the case was not going to settle."); see also ECF No. 127, Exh. 61 ¶ 10; ECF No. 136 ¶ 249.

Given the "wide latitude" the agency has under the Second Circuit conciliation standard to shape "both the general framework of conciliation and the specific offers made," see EEOC v. Sears, Roebuck & Co., 650 F.2d 14, 18 (2d Cir. 1981), it was not unreasonable for EEOC to argue that its approach to conciliation negotiations under these circumstances was within its discretion and that the agency satisfied Title VII's presuit requirements. Bloomberg has pointed to no *controlling* authority that makes EEOC's defense of these conciliation efforts untenable. Thus under the controlling principles of law in the Second Circuit, see LeBlanc-Sternberg, 143 F.3d at 770, EEOC's defense of its efforts to conciliate its retaliation claim was not frivolous, unreasonable, or without foundation.

**2. Investigation and Conciliation Efforts for the Class Discrimination Claim**

Courts of appeals in five circuits support EEOC's position that class-wide investigation and conciliation efforts are sufficient to permit it to litigate a claim alleging discrimination against individual class members under § 706 of Title VII. See Serrano v. Cintas Corp., 699 F.3d 884, 904-05 (6th Cir. 2012) (reversing dismissal of 13 individual claimants on failure to

investigate and conciliate grounds; "class-wide" investigation and conciliation sufficient under § 706);[4] <u>EEOC v. Rhone-Poulenc, Inc.</u>, 876 F.2d 16, 17 (3d Cir. 1989) (ADEA case) (EEOC "is not required to provide documentation of individual attempts to conciliate on behalf of each potential claimant"); <u>EEOC v. UPS</u>, 860 F.2d 372, 374 (10th Cir. 1988) ("[T]he EEOC need not produce an injured party when seeking to challenge an allegedly discriminatory policy that may affect unidentifiable members of a known class."); <u>EEOC v. Keco Indus., Inc.</u>, 748 F.2d 1097, 1101-02 (6th Cir. 1984) (class-wide conciliation attempt sufficient; scope of investigation not reviewable); <u>EEOC v. Am. Nat'l Bank</u>, 652 F.2d 1176, 1184-86 (4th Cir. 1981); <u>see also</u> <u>EEOC v. UPS</u>, 94 F.3d 314, 318 (7th Cir. 1996) (dicta).  District courts in this circuit and elsewhere have reached the same conclusion, <u>see, e.g.</u>, <u>EEOC v. Thomas Dodge Corp.</u>, 524 F. Supp. 2d 227, 238 (E.D.N.Y. 2007) (collecting cases), and the Second Circuit has not held otherwise.

Although the Court concluded "that the statutorily-required investigation never occurred," ECF No. 557 at 24, EEOC's argument to the contrary was not without foundation.  It is undisputed that EEOC conducted an investigation of charges of "pervasive" pregnancy discrimination, ECF No. 127, Exh. 2 at 3, that those allegations were "echoed by a number of other female ... employees," ECF No. 127, Exh. 26 at 3, and that EEOC found cause to believe that the allegations were true, <u>see id</u>.  It is also undisputed that EEOC obtained a list of female employees who had been on maternity leave at the relevant time, including most of the 29 women at issue in the motion.  <u>See</u> ECF No. 127, Exh. 19.  EEOC thus had a basis for concluding that those women were likely subjected to the pervasive pregnancy discrimination that the agency had found to exist at Bloomberg.  Moreover, in discussing the same conciliation efforts, the Court had previously concluded that "the EEOC did what it is required to do."  ECF

---

[4] The court also rejected attorney's fees in circumstances similar to those here.  <u>See</u> <u>id</u>. at 905.

No. 168 at 12.  Thus EEOC had some foundation to argue that it satisfied Title VII's presuit requirements with respect to the claim for relief for the 29 women.  See generally ECF No. 556.

The Second Circuit has held that attorney's fees are unavailable under Christiansburg so long as there is at least room for "debate" about the validity of a plaintiff's position.  See Tancredi, 378 F.3d at 229-30.  In Tancredi, the existence of a single, out-of-circuit district court opinion supporting the plaintiff's position was sufficient to establish that it had "some foundation."  See id.  Given the extensive authority cited above, there is plainly some foundation for EEOC's position that its investigation and conciliation efforts were sufficient with respect to its class discrimination claim.  This is especially so in light of the fact that the nature and scope of the conciliation standard itself is presently under review by the Supreme Court.  See EEOC v. Mach Mining LLC, 738 F.3d 171 (7th Cir. 2013), cert. granted 134 S. Ct. 2872 (2014).

To be sure, one circuit has adopted an interpretation of EEOC's pre-suit administrative obligations that is inconsistent with the agency's position here.  See EEOC v. CRST Van Expedited, 679 F.3d 657 (8th Cir. 2012).  However, the existence of contrary persuasive authority does not make EEOC's position unsupportable.[5]  Furthermore, both CRST and the district court opinion it affirmed were decided well after conciliation efforts in this case had ended.  In Tancredi, the Second Circuit held that a citation to "a decision filed nine months *after* plaintiffs filed their complaint" could not support an award of fees to the defendant.  See 378 F.3d at 229 (emphasis in original).  Only "hindsight logic," Christiansburg, 434 U.S. at 422, could support assessing EEOC attorney's fees for failure to conform to a minority-view

---

[5] It is for this reason that the numerous out-of-circuit and district court cases from which Bloomberg has culled colorful quotations have little relevance to this motion.  "[T]he determination as to whether ... claims were frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof in light of the *controlling* principles of substantive law."  See LeBlanc-Sternberg, 143 F.3d at 770 (emphasis added).

interpretation of Title VII's pre-suit obligations that had not yet been announced.

Although the Court agreed with the Eighth Circuit and was not persuaded that EEOC's pre-suit efforts sufficed with respect to the class discrimination claim, that argument was amply supported.  It was plainly not frivolous, unreasonable, or without foundation.

### C.   The Pattern-or-Practice Claim of Pregnancy Discrimination Was Not Frivolous, Groundless, or Unreasonable Because It Was Supported By Evidence That, If Credited, Would Have Supported the Claim

EEOC offered statistical evidence to support its pattern-or-practice claim that women were adversely affected in compensation,[6] responsibilities, and job opportunities.  EEOC's expert, Dr. Lanier, conducted a regression analysis and found that class members received lower base pay increases, lower Equity Equivalence Certificate (EEC) grants, and lower increases in total intended compensation than non-class members, when he compared employees in the same year, in the same business unit, with the same amount of company tenure and pre-Bloomberg experience, and who were paid the same base pay and EEC grants in the previous year.[7]  See ECF No. 149, Exh. 15 (Tables 0, 1, & 2, lines 1, 2, & 3); ECF No. 149, Exh. 8 ¶¶ 25, 30;  ECF No.149, Exh. 10 ¶¶ 24-26.  These results were statistically significant at more than two standard deviations, and continued to be even after he further controlled for job codes and employees' performance ratings; for example, Line 3 of Table 0 in Dr. Lanier's corrected reply report

---

[6] Bloomberg emphasizes repeatedly that the language of the complaint refers to decreasing class members' pay rather than referring to decreasing their pay *or giving them smaller pay increases* because of pregnancy.  The extensive briefing by the parties and numerous expert reports produced in this case long ago made clear that the gravamen of EEOC's claims is that women who were pregnant experienced pay discrimination and a loss of job opportunity that "adversely affect[ed]" them.  Second Amended Complaint ¶ 8.  A narrow reading of the complaint that disregards the actual course of the litigation is not a basis for attorney's fees.

[7] Each of these is, of course, a measure of compensation.  Additionally, EECs reflect an individual's level of responsibility at Bloomberg and thus statistical evidence of EEC grants can be used as evidence of adverse effects on class members' level of responsibility and opportunity after pregnancy.  ECF No. 707, Exh. 15 at p. 385, lines 5-14.

showed that with all these controls an average annual disparity of 1.19% in total intended compensation changes remains unexplained and is statistically significant at 4.72 standard deviations.  See ECF No. 149, Exh. 15.[8]  This result is corroborated by Defendant's expert, Dr. Ward, who found a 1.22% disparity in total intended compensation, statistically significant at 4.8 standard deviations.  See ECF No. 149, Exh. 21 (Table 0, line 3).[9]

Although the Court held that these disparities were not admissible because they did not additionally control for leave history, Dr. Lanier had a solid evidentiary foundation for omitting leave history from his initial analysis.  Bloomberg itself admitted that it does not consider leave or leave duration when making compensation decisions.  ECF No. 191, Exh. 24 at 99-100 (Bloomberg 30(b)(6) testimony) ("Q:Would a leave of absence be taken into account in determining an increase or decrease in total compensation?  A: No;   Q:  It doesn't matter what the length of leave; it would not be taken into account?  A:  No.").  It was not unreasonable for EEOC to rely on statistical analyses that credited Bloomberg's testimony on this point.

Thus Bloomberg's assertion that EEOC "had no evidence" to support its pattern-or-practice claim is simply not correct.  ECF No. 599 at 11.  Given the Court's determination that EEOC's statistical evidence was inadmissible due to methodological flaws, Bloomberg appears to believe that in this motion  it may therefore proceed as if that evidence never existed.

Not so.  The Second Circuit has held that where an expert analysis, if it had been

---

[8] To respond to the objection that his analysis did not control for leave duration, Dr. Lanier performed an additional modification to his analysis to control for leave, using an "interaction model."  See ECF No. 149, Exh. 10; ECF No. 153 ¶ 6.  In the tables of Dr. Lanier's Corrected Reply Report, the results of this separate analysis are reported at lines 1a, 2a, and 3a.  For purposes of this motion, EEOC focuses on Lanier's regression analysis, unmodified by the "interaction model," as it suffices to show that EEOC's claim was not without foundation.

[9] Dr. Lanier's opening report is at ECF No. 149, Exh. 8, his rebuttal report is at ECF No. 149, Exh. 9, his reply report is at ECF No. 149, Exh. 10, and his corrections to his reply report — whose tables contain his most up-to-date numerical results — are at ECF No. 149, Exh. 15.

credited, would support a plaintiff's claim, that is enough to provide "some foundation" for the claim under Christiansburg.  See American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) v. County of Nassau, 96 F.3d 644, 652 (2d Cir. 1996).  This is true even if the district court disregarded the analysis based on "determinations concerning technical methodology, integrity, and validity."  See id.; compare Gerena-Valentin v. Kock, 739 F.2d 755, 761 (2d Cir. 1984) (fees allowable where "[a]t no time ... did [plaintiff] attempt to produce any evidence whatsoever in support of his retaliation and conspiracy claim").

AFSCME controls here.  In that case, the Second Circuit held that class claims of pay discrimination under Title VII were "not frivolous," even though the plaintiffs' only evidence was statistical analyses whose methodology the district court rejected as "so flawed as to render it unreliable and of no probative value."  See AFSCME, 96 F.3d at 652-53.[10]  Plaintiffs' statistical analyses controlled for various "gender-neutral" variables and found a disparity between wages of predominantly male and female jobs.  See id. at 647-48.  The defendant offered expert analyses that showed that the disparities could be eliminated by additionally controlling for market forces.  See id. at 648.  The district court gave the plaintiffs' statistical evidence "no weight"[11] and found the defendants' expert evidence "reliable and credible, and entitled to great weight."  See id.  It granted judgment to the defendant on all claims but one.[12]

---

[10] The plaintiffs in AFSCME had "alleged that the [defendant's] job classification system assigned lower salary grades to jobs that were predominantly held by women than to jobs that were predominantly held by men, in violation of Title VII."  Id. at 645.

[11] The district court saw no value in plaintiffs' expert analyses.  It found them "deeply flawed," and said that one was "a study in poor guidance, incomplete information, and inadequate time," and another had "serious methodological shortcomings" and was "flawed by selective departures from [its] stated methodology, deliberately omitted relevant variables, and failed to account for market forces."  Id. at 648 (internal quotation marks omitted, alteration in original).

[12] Based on an analysis of job duties, the court concluded that a single predominantly female job classification had substantially the same duties as a predominantly male job classification and

The Second Circuit held that the defendant was nevertheless not entitled to attorney's fees on the claims on which it prevailed, because:  (a) both plaintiffs' and defendant's studies showed there were disparities in pay that "were not explained by job specifications alone," (b) the district court's determination to reject the plaintiffs' statistical evidence was "arrived at with the benefit of effective cross-examination and the counterweight of the County's experts and studies," as well as "very able and experienced defense counsel."  See id. at 652-53.

The parallels between AFSCME and this case are clear.  Dr. Lanier's regression analyses, confirmed by Dr. Ward's, show that there is a disparity between class members and other employees that is not explained by their job titles, business units, performance ratings, recent compensation history or several other such factors.  The Court's decision that this evidence could not be of any probative value without an additional control for leave history was reached with the benefit of the "counter-weight" of a proliferation of defense expert reports and declarations, examination at depositions, and extensive briefing.[13]  In short, EEOC's pattern-or-practice claim is at least as well founded as were the plaintiffs' in AFSCME.[14]

EEOC's claim is further supported by anecdotal evidence that decisionmaking at Bloomberg was infected by pregnancy bias.  As set forth more fully in EEOC's opposition to

---

ordered backpay of $1.6 million covering a period of 14 years.  See id. at 649.  While the Second Circuit said the award of fees "arguably" would have presented a closer question if the plaintiffs not prevailed on the lone claim, it did not rest its decision on that ground.  See id. at 653.

[13] Moreover, in AFSCME, there was "[e]vidence ... that the County considered market forces in setting salary grades."  96 F.3d at 648 n.1.  In this case, by contrast, the evidence (Bloomberg's own testimony) supports omitting the additional variable (leave history) that its experts relied on.

[14] That AFSCME was decided after a trial rather than on a Daubert motion makes it no less applicable here.  Indeed the trial in that case was a bench trial conducted in 1989 and 1990.  See 799 F. Supp. 1370, 1373 (E.D.N.Y. 1992).  This was before Daubert was even decided, and thus before the Supreme Court made the task of screening expert evidence for reliability a pre-trial function.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  The decisions about methodological flaws and reliability of expert evidence made at trial by the AFSCME district court plainly would be decided on a Daubert motion today, as they were here.

Bloomberg's motion for summary judgment on this claim, EEOC offered evidence of pregnancy

bias on the part of numerous managers, some with company-wide responsibilities. To take just a

few examples: The Global Head of Human Resources once said that "women [do] not really

[have] a place in the workforce" but rather "belong at home raising the children"; a Chief

Executive Officer said "get rid of these pregnant bitches" and kept a list of women he did not

think should receive raises because they were pregnant or on maternity leave; and the head of

Global Data stated that a woman's "career is paused at Bloomberg" after having children. ECF

No. 671 ¶¶ 84, 85, 87.[15] Also, other evidence existed of discrimination against individual class

members, certain of which the Court itself stated "may be meritorious." ECF No. 557 at 29.[16]

### D.    The Other Matters Cited by Bloomberg Do Not Provide a Basis for Fees

Bloomberg's other criticisms of EEOC's case do not provide a basis for fees, either.

Title VII's attorney's fees provision "requires the court to assess the strength or weakness

of [a] *claim* viewing the case *as a whole*" and does not impose sanctions for "discrete filings."

Greenberg v. Hilston Intern. Co., 870 F.2d 926, 940 (2d Cir. 1989) (emphases added).

Therefore, Bloomberg's argument about the expert analysis of Dr. Eugene Borgida, a social

psychologist, is misplaced, since for the reasons set forth above, EEOC's opposition to the

---

[15] Although the Court did not credit most such evidence, in large part based on hearsay rulings, EEOC had an arguable basis for believing such statements were not inadmissible hearsay. See, e.g., ECF No. 328 at 7 & n.4. This is not a situation in which a plaintiff did not "attempt to produce any evidence whatsoever" in support of a claim. See Gerena-Valentin, 739 F.2d at 761.

[16] Although briefly asserting that EEOC's pattern-or-practice claim at least *became* unsupportable once EEOC's statistical evidence was excluded, Bloomberg does not cite any controlling authority that says this is so. Indeed, there is no categorical requirement for statistical evidence to show that a company is "regularly and purposefully" engaging in discrimination. See Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 335 (1977); see also U.S. v. City of New York, 717 F.3d 72, 102 (2d Cir. 2013) ("a plaintiff establishing a prima facie case of pattern-or-practice is *often* required to use statistics" (emphasis added)). Evidence that people in charge of the company harbor the views recounted above provides at least some foundation for the claim that pregnancy bias at Bloomberg was not "isolated" or "sporadic." See Teamsters, 431 U.S. at 336.

dismissal of each of its claims was well-founded, with or without testimony from Dr. Borgida. Attorney's fees are not available for an expert report.

Bloomberg's criticism of the voluntary dismissal of claimants and parts of individual claims for relief is particularly unwarranted.  Many of the voluntary dismissals were a result of the exclusion of EEOC's statistical evidence and the possibility of a pattern-or-practice finding. See Hollander v. American Cyanamid Co., 895 F.2d 80, 84 (2d Cir.1990) ("well-settled" that statistical evidence may be used to support individual claims); U.S. v. City of New York, 717 F.3d 72, 84 (2d Cir. 2013) (after pattern-or-practice finding, plaintiff "need not initially show discrimination against *any particular present or prospective employee*" (emphasis added)).[17]

Other voluntary dismissals were based on a strategic judgment about what the agency could realistically brief in the 100 pages it had in the final round of summary judgment.  EEOC's individual claimant supplement briefs often addressed multiple issues, and were as short as a single page.  E.g., ECF Nos. 355, 423.  With respect to other voluntary dismissals or items Bloomberg describes as "implicitly dismissed," Bloomberg artificially inflates the count of these items by counting *each year* in which an individual experienced the *effects* of a discriminatory pay decision as a separate dismissed "claim."  ECF No. 600 ¶¶ 37, 40.[18]  At best, Bloomberg has pointed to a modest number of allegations that, with the benefit of time and hindsight, it believes could have been dropped sooner.  Especially given the volume of information involved in this case, that type of fine-grained, *post hoc* analysis is not a basis for fees under Christiansburg.

## CONCLUSION

EEOC respectfully requests that Bloomberg's motion for attorney's fees be denied.

---

[17] Indeed, the dismissal expressly provided that it "was *without prejudice* to the reassertion of any claim for Pattern or Practice Relief" for the individuals identified in the order, in the event the pattern-or-practice claim was reinstated after appeal.  ECF No. 209 ¶¶ 3-4 (emphasis added).

[18] As EEOC has argued previously, that is simply incorrect.  See ECF No. 328 § V(e), at 24-25.

Dated:  February 5, 2015
        New York, NY

                              Respectfully submitted,


                              EQUAL EMPLOYMENT OPPORTUNITY
                              COMMISSION

                              Robert D. Rose
                              Regional Attorney

                              Raechel L. Adams
                              Supervisory Trial Attorney

                              Jeffrey Burstein
                              Supervisory Trial Attorney

                              New York District Office
                              33 Whitehall Street, 5th Floor
                              New York, NY    10004-2112
                              (212) 336-3707
                              (212) 336-3623 (fax)
                              raechel.adams@eeoc.gov


                              s/ Justin Mulaire
                              Justin Mulaire
                              Trial Attorney
                              500 W. Madison Ste., Ste. 2000
                              Chicago, IL  60661
                              (312) 869-8045
                              justin.mulaire@eeoc.gov